UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

| | |
|---|---|
| FRANK R. SAIA, individually and as Administrator of the FRANK R. SAIA DEFINED BENEFIT PENSION PLAN, LIMITED DIVIDEND CORPORATION OF WESTFIELD, and CITY VIEW COMMONS CONDOMINIUM TRUST, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF WESTFIELD, ZONING BOARD MEMBERS (John and Jane Does #1-10), CITY COUNCIL MEMBERS (John and Jane Does #1-10), CHARLES KELLOGG, (former Inspector of Buildings of the City), DONALD C. YORK (Superintendent of Buildings), JAMES BOARDMAN (Community Development Director), DAN REARDON (Director of Public Health), PAUL J. CASEY (Assistant City Solicitor), and PETER A. MARTIN (Assistant City Solicitor), all Defendants named individually and in their official capacity, <br><br> Defendants. | 04-30143-MAP <br><br> Civil Action No. _____ <br><br> PLAINTIFFS DEMAND A TRIAL BY JURY <br><br> RECEIPT # 305687 <br> AMOUNT $ 150.00 <br> SUMMONS ISS. ✓ <br> LOCAL RULE 4.1 ____ <br> WAIVER OF SERV. ____ <br> MCF ISSUED ____ <br> AO 120 OR 121 ____ <br> BY DPTY CLK MEL <br> DATE 8/4/04 |

## COMPLAINT

Plaintiffs allege upon information and belief and based upon the investigation conducted by counsel, as follows:

## NATURE OF THE ACTION

1.  Plaintiffs challenge the constitutionality of the City of Westfield's ("City") zoning scheme (including Ordinance 846, the Special Permit and the new zoning ordinance adopted in

West - Complaint Sec 1983 - US District Court - 08-02-04

September 1987, Article IV, *Rural Residential District*) ("Zoning Scheme"), and the City's enforcement action filed on October 5, 2000 which seeks to compel the abandonment of Plaintiff's property interests and the removal of all structures at City View Commons ("Enforcement Action"), on the grounds that they violate the Equal Protection, Due Process (Substantive and Procedural) and Takings (without just compensation) clauses of the United States Constitution. Through these mechanisms, the City seeks to compel the abandonment and removal of all structures at City View Commons depriving Plaintiffs of their property interest and reasonable economic expectations through economic coercion without legitimate government interests or just compensation in violation of M.G.L. c. 40A §§ 6, 9, 42 U.S.C. § 1983, and the Massachusetts Civil Rights Act pursuant to M.G.L. c. 12, §§ 11H and 11I.

2. The City's Zoning Scheme and its Enforcement Action are based on its claim that a five-year lapse provision (the "Construction Deadline") contained in the City's zoning Ordinance 846 *repealed* eight months after issuance of the Special Permit is applicable to the Special Permit issued to developers John and Thomas Liquori of City View Commons, Inc. ("CVCI"). *Regardless* of the alleged validity of this five-year Construction Deadline (a point not conceded by Plaintiffs), the Zoning Scheme and Enforcement Action violate Plaintiffs' constitutional rights depriving them of existing property interests all validly permitted by the City because i) the City repealed the Construction Deadline was repealed; hence it is unenforceable, ii) the repealed five year Construction Deadline, that operates to terminate vested property rights, especially those of a subsequent purchaser, is at odds with M.G.L. c. 40A §§ 6 and 9 and thus preempted by the laws of the Commonwealth of Massachusetts, iii) is constitutionally vague and ambiguous on its face, and/or in its application for an extension of the Construction Deadline by failing to identify adequate procedures and granting the City unfettered

discretion to grant or deny such extensions and thus unenforceable, and iv) violates Plaintiffs' constitutional rights by depriving Plaintiffs of their property rights without just compensation. Also, the City does not have a legitimate government interest because it i) seeks to enforce a *repealed* ordinance that contained both the five-year Construction Deadline and the means to seek extensions of that deadline, ii) failed to file a timely Enforcement Action and record such action in the registry of deeds within the applicable six-year statute of limitations for the issuance, as here, of valid permits in 1988 to enforce its repealed ordinance, and iii) impermissibly seeks to regulate the condominium form of ownership by mislabeling it a "use" despite knowing that the City issued building valid permits to construct single-family homes, the structures were built, and improved and used as *single-family homes* in accordance with the Special Permit and the building permits issued by the City.

## PARTIES

3.  Plaintiff, Frank R. Saia, is an adult resident of the Town of Longmeadow, Hampden County, Massachusetts, who is employed as an attorney at law with his law offices located at 106 State Street, Springfield, Hampden County, Massachusetts. He is the Administrator of the Frank R. Saia Defined Benefit Pension Plan and is the sole individual responsible for the management of the plan.

4.  Plaintiff, Frank R. Saia Defined Benefit Pension Plan (the "Plan") is a business entity created by and solely controlled by Frank R. Saia, with its principal place of business located at 106 State Street, Springfield, Hampden County, Massachusetts.

5.  Plaintiff, Limited Dividend Corporation of Westfield ("Limited Dividend") is a corporation organized on October 3, 1997 under the laws of the Commonwealth of Massachusetts with, Frank R. Saia as its President, Treasurer and Agent/Clerk and with its

principal place of business located at 106 State Street, Springfield, Hampden County, Massachusetts.

6. Plaintiff City View Commons Condominium Trust ("Trust") is a condominium association created in accordance with the requirements of M.G.L. c. 183A by the recording of a trust instrument in Hampden County Registry of Deeds at Book 6861, Pages 555 *et seq.* Frank R. Saia claims control of the Trust.

7. Defendant City of Westfield ("City") is a duly constituted municipal subdivision of the Commonwealth of Massachusetts, invested with its own government, powers and home rule authority under the laws of the Commonwealth of Massachusetts.

8. Defendants the Zoning Board and its individual members John and Jane Does 1-10 are responsible for all zoning and permitting decisions for the City.

9. Defendants the City Council and its individual members John and Jane Does 1-10 are responsible for authorizing the Enforcement Action.

10. Defendant Charles Kellogg is the former Inspector of Buildings of the City who denied building permits Plaintiffs to complete construction claiming the project validly permitted by the City and constructed in furtherance of the Special Permit did not comply with repealed construction deadline and current zoning.

11. Defendant, Donald C. York, is the Superintendent of Buildings since February 10, 1997. His duties include administration and enforcement of the State Building Code within the City and the City's zoning ordinance.

12. Defendant, Dan Reardon is the Director of Public Health for the City of Westfield claims that I never authorized, approved or inspected the installation of an on-site subsurface sewage disposal system for Unit 4 of City View Commons because it cannot find a signature

from the Board of Health, despite the fact that i) the Board of Health signed the Building Permit for Unit 4 and issued a Certificate of Occupancy for Unit 4 in 1989, ii) Defendants know that Unit 4 has been continuously occupied since 1989, and iii) Defendants failed to take any action until October 5, 2000, 11 years after the purported violation and after the expiration of the statute of limitations.

13. Defendant, James Boardman is the Community Development Director for the City of Westfield.

14. Defendant, Paul J. Casey, is the First Assistant City Solicitor for the City of Westfield.

15. Defendant, Peter A. Martin, is the Assistant City Solicitor for the City of Westfield responsible for filing and maintaining the Enforcement Action despite the well-established law, among other things, that i) a construction deadline in a zoning ordinance is void as a matter of law, ii) the City cannot enforce a repealed ordinance, iii) the statute of limitations has clearly expired, iv) and the City cannot control the form of ownership.

16. By and through the City's Superintendent of Buildings as Building Commissioner and Zoning Enforcement Officer, its Health Department, members of the Zoning Board, City Council Members and the other named defendants acting under color of law in their official capacities and individually, the Defendants through its Zoning Scheme, systematic denial of permits and Enforcement Action directed at Plaintiffs seek to compel the condemnation of the subject property without legitimate government interest and without just compensation to Plaintiffs for which Defendants are collectively and individually liable.

## FACTUAL BACKGROUND

17. Prior to January 20, 1987, John Liquori and Thomas Liquori owned a 25 acre parcel of land located at 136 City View Road, Westfield, Hampden County, Massachusetts and recorded in the Hampden County Registry of Deeds in Book 6596, Page 445 (hereinafter "City View Commons").

18. Presently, City View Commons is a 25 acre un-subdivided lot of 23-25 clustered detached single-family homes in a condominium form of ownership. Fifteen units have been built (including 13 buildings and 2 foundations) with a 2,500 foot private road, underground utilities and septic systems.

19. The City's Zoning Ordinance No. 846 dated July 16, 1981 allowed for the construction of Condominiums by Special Permit pursuant to M.G.L. c. 40A § 9 ("Ordinance 846"). By its terms, Ordinance 846 also requires that the condominium organization *"shall be retained in the control of the developer no longer than until a majority of the dwelling units are conveyed to permanent owners ..."*

20. City View Commons was developed pursuant to a valid special permit condominium Zoning Ordinance 846 of the City ("Special Permit"). The approved plan contained three separate leaching systems. Units 1 through 6 are individual systems with a) leaching pit and b) reserve/overflow tank. Units 7 through 15 are a separate group system, and Units 16 through 25 are a separate group system. All Units have a sewerage system for eventual connection to the public sewer once the City makes public sanitary sewerage available to the site.

21. Section 4, *New Condominiums*, of Ordinance 846 pursuant to which the Special Permit in this action was issued sets forth the requirements that apply to new condominiums.

22. Section 4(J), *Phasing*, of Ordinance 846 contains a five-year Construction Deadline where the developer contemplates the construction overtime of individual buildings within the project. If the project is to be constructed overtime, then a *"firm schedule of phasing, including construction dates and projected owner 'turnover' times, is required."* This Construction Deadline operates to deprive Plaintiffs' of their property interests in violation of their constitutional rights without just compensation.

23. The City never required nor has any "phasing" plan been submitted to the City. At all times, CVCI and the Developers defined herein intended to complete the project as expeditiously as possible.

24. The five-year Construction Deadline contained in Ordinance 846 does not serve any legitimate government interest and operates to terminate property interests without just compensation.

25. A Construction Deadline is void as a matter of well established law because is not within their authority to enact, is void and unenforceable because it is facially inconsistent with the statutory provisions of M.G.L. c. 40A § 9. *See, e.g., Heritage Park Development Corporation v. Town of Southbridge*, 424 Mass. 71 (1997) (holding a construction deadline or any automatic rescission that modifies or terminates the statutory protections of M.G.L. c. 40A for the vesting of property rights is void).

26. Ordinance 846 is unconstitutionally vague or ambiguous, and violates Plaintiffs' property rights because it fails to identify adequate procedures and grants the City unfettered discretion to grant or deny waivers from any requirements of the ordinance thereby depriving Plaintiffs of equal protection of the law and property interests without due process of law. In relevant part it states as follows:

The Planning Board may grant waivers from any requirement in this ordinance [including the five-year construction deadline] as it deems appropriate ....

27. On or about January 20, 1987, John Liquori and Thomas Liquori received a Special Permit by unanimous vote of the Planning Board of the City to construct "twenty-three (23) *single family homes* as a private condominium association" at City View Commons.

28. By its terms, the Special Permit contains various conditions. Condition Number 10 provides that:

All conditions must be satisfactorily met within the mentioned time frame or this decision will expire. The petitioner may request extensions of time, in writing, from the Planning Board should it become necessary. In any case, no extension of time will exceed thirty (30) days.

29. The Special Permit does not expressly contain a "mentioned time frame" for the project to expire.

30. The Special Permit does not expressly contain any specific condition for completion of the project within five years for the project to expire. Accordingly, Condition 10 is vague and ambiguous with respect to the time frame for the Special Permit to expire.

31. Condition 10 and Ordinance 846 are also vague and ambiguous, and does not provide any guidelines or adequate procedure by which the Planning Board would evaluate any request for an extension of time to prevent the Special Permit from expiring. Moreover, Defendant Attorney testified before the State Building Code Appeals Board on December 7, 2000 in a decision rendered January 22, 2001 "*extensions are granted if conditions shown warrant an extension of the special permit.*" Accordingly, they empower the City with unfettered discretion subjecting cognizable property interests at City View Commons to arbitrary and capricious government action and/or deprivation of that property interest without constitutionally adequate procedure.

32. At the time the City issued the Special Permit, the City's overall zoning scheme included *both* i) a five-year Construction Deadline (to the extent it is valid at all) set forth in the "Phasing" section of Ordinance 846 which further required the submission of an approved phasing plan to trigger the application of the Construction Deadline, and ii) the relevant sections, virtually identical to M.G.L. c. 40A § 9, concerning the lapse provisions that *either a substantial use must commence within two years, or construction must begin.*

33. The City approved a plan showing proposed structures and septic systems.

34. On August 10, 1987, City View Commons, Inc. ("CVCI") was incorporated under the laws of the Commonwealth of Massachusetts. CVCI's shareholders were Robert A. DeSimone and Emile J. Barbero.

35. On August 18, 1987, John Liquori and Thomas Liquori transferred their interest in City View Commons to CVCI by deed recorded in the Hampden County Registry of Deeds in Book 6596, Page 445.

36. In September 1987, eight months after approving the Special Permit to construct City View Commons and *prior* to the issuance of any building permits for the construction of City View Commons, the City *repealed* zoning Ordinance 846, including the five-year Construction Deadline and any requirement to seek an extension of the Construction Deadline from the City rendering the Construction Deadline a nullity.

37. In September 1987 and simultaneously with the repeal of Ordinance 846, the City adopted a new zoning code, Article IV *Rural Residential District*. Article IV *Rural Residential District, Section 400, Intent* and *Section 401 Permitted Uses*, specifically allow "single family detached dwellings." Article IV, Sections 400, 401(3). The structures and the use permitted by

the City, and constructed in accordance with the Special Permit and building permits are single-family detached dwellings.

38. Article IV, *Rural Residential District, Intent*, is intended to accommodate not only single-family detached dwellings but also other land uses that preserve or respect the City's Open Space. City View Commons as permitted by the City is a clustered development of 23-25 single-family homes on 25 acres with a brook and wetlands, thereby preserving the "City's Open Space" and minimizing the impact on the acquifer. Thus, it is in harmony with the intent of Article IV, *Rural Residential District*.

39. Pursuant to the Affidavit of Paul J. Casey, the First Assistant City Solicitor of the City of Westfield, dated December 2, 2002, the City maintains that "condominium development nor traditional multifamily housing is, or ever has been a use as of right in such a rural residential district" despite the fact that i) the structures and use permitted by the City at City View Commons are detached single-family homes, and ii) Article IV, Section 401(3) specifically allows "single family detached dwellings."

40. The Affidavit of Paul J. Casey maintains that i) "because the condominium project was not completed with 5 years of the application for the special permit ... it became an unlawful use," and ii) the "zoning code adopted in September 1987 [and the repeal of Ordinance 846], therefore, provided no mechanism for allowing City View Commons as a condominium project." Thus, the City asserts that the single-family structures and condominium form of ownership that *it* permitted, are now unlawful uses despite the fact that the City cannot regulate the form of ownership, and the use as single-family homes has not changed. This view is repeated by Peter Martin in a letter dated January 28, 1994 James Boardman, the Community Development Director, of the City of Westfield.

41. In a letter dated January 28, 1994 from Peter Martin to James Boardman, the Community Development Director of the City of Westfield concerning property interests at City View Commons, the City concedes that the Construction Deadline operates to extinguish property rights and eliminating investment expectations. Specifically, it maintains that:

> The property interests that arguably could have been created by these actions [*i.e.* the completion of the City View Commons project within the timeframe] were always derivative of the lawfulness of the developer's use of the property. Once the developer lost his lawful right to develop (expiration of the special permit) the derivative rights would evaporate as well [*i.e.* the property interests created in reliance on valid permits issued by the City itself, and the loss of one's investment], leaving the injured parties (if any) with a remedy, if any, against the developer.
>
> [Ordinance 846 states] The Planning Board may grant waivers from any of the requirements in this ordinance as it deems appropriate ...

42. The City maintains that one's property interests "evaporate" into thin air *regardless* of the level of investment, the stage of completion or whether a subsequent owner who has purchased any unit (with or without notice of the *repealed* Construction Deadline), including those that have been completed and occupied, like Unit 4, because its regulatory scheme imposes a Construction Deadline that *demands completion in its entirety and subject to the whims of the City* for property interests to be created.

43. According to the City, (as evidenced by the letter dated January 28, 1994 from Peter Martin, its Enforcement Action and systematic denial of permits), the result of its Zoning Scheme leaves the residual owner and any subsequent owner who could *never* have notice of a *repealed* ordinance containing a Construction Deadline i) without the ability use, develop or enjoy his property; ii) requires, as the City does here through its Enforcement Action, that a subsequent owner without notice, as here, abandon his property, including his investment, and level his property at his own expense; iii) requires the various owners of the Units to now comply with new zoning requirements, including increased lot size, which as here is functionally

impossible due to wetlands and which would extinguish certain unit owners' property interests; and iv) leaves the owners with only the obligation to pay taxes, while denying all use.

44. In connection with the repeal of Ordinance 846, the City did not authorize that the five-year Construction Deadline continued to apply to projects permitted but not constructed or those in the process of construction.

45. As a result of the repeal of Ordinance 846 either 40A § 6 (Non-conforming use) or 40A § 9 (Special Permits) applies to the development of City View Commons, including the structures and use of those structures as single-family homes.

46. As a result of the repeal of Ordinance 846 and the absence of any Construction Deadline in the Special Permit itself (or anywhere else for that matter), Plaintiffs could not have actual or constructive notice of the existence or the applicability of the five-year Construction Deadline and its purported effect to terminate property interests and abandon the property without just compensation.

47. CVCI was the developer of City View Commons and as such CVCI stepped into the shoes of the Liquoris.

48. The Special Permit for a condominium is a covenant running with the land and not personal to the Liquoris.

49. On or about June 8 or June 9, 1988, in furtherance of and in reliance upon the Special Permit to construct City View Commons, CVCI recorded a Master Deed for City View Commons Condominium and Declaration of Trust ("Condominium Trust") identifying 23 to 25 Units to be built at City View Commons in Hampden County Registry of Deeds at Book 6851, pages 521 *et seq.* According to the Master Deed, CVCI is the owner of City View Commons.

50. The Condominium Trust is signed by Robert A. DeSimone and Emile J. Barbero in their capacity as officers of CVCI, demonstrating that at all times the City knew that it was dealing with CVCI and no longer with the Liquoris who obtained the Special Permit.

51. During 1988, after the repeal of Ordinance 846, CVCI transferred Unit development rights to various developers including City View Contemporaries, Inc. (Units 2, 3, 8, 9, 10 and 15); SBH Development Corp. ("SBH") (Units 4, 5, 6, 7, 11, 12, 13 and 14); Hills Bros. Builders, Inc. (Units 16 and 20); A.M.Y. Development Corporation (Units 17 and 19); Dane Builders, Inc. (Unit 18) (hereinafter the "Developers").

52. Pursuant to the typical Purchase and Sale Agreement between CVCI and the various Developers, the Developer would construct the Units and upon completion of the Unit "re-convey" the premises to CVCI to be then conveyed along with a percentage interest in the common land to a third party.

53. Pursuant to the typical Purchase and Sale Agreement, CVCI was responsible for completing the infrastructure.

54. By its terms the Condominium Association, now controlled by Plaintiffs, has the ability to repair any property which must be repaired.

55. In 1988, the Developers or their agents applied for and received Building Permits from the City to construct City View Commons, and began construction pursuant to M.G.L. c. 40A § 9 and within the time frame set forth by 40A § 9.

56. In 1988, CVCI or its agents began construction of the infrastructure and installed a private paved road, storm drains, utilities (including water, cable television, telephone lines), certain septic systems and sub-base of road into all areas of the development pursuant to M.G.L. c. 40A § 9 and within the time frame set forth by 40A § 9.

57. On June 10, 1988, Developer SBH received from the City Building Permit No. 359 to construct Unit 4 at City View Commons.

58. In a letter dated June 10, 1988 from Daniel Reardon, the Director of Public Health of the City of Westfield Health Department, to Emile Barbero of CVCI, the City approved the sewage disposal plan and the results of percolation tests for System #2 (Units 1-6) and System #3 (Units 7-15) at City View Commons. Pursuant to the terms of this letter, approval of the *"plans expires two years from the date of approval unless construction of the system is begun before that date."* System 1 had to be revised and resubmitted because it was too close to the brook running through the property.

59. Sometime after June 10, 1988, as evidenced by the Building Permit No. 359 dated June 10, 1988, the City Building Inspector or the Board of Health performed an inspection of the septic system on Unit 4 and noted "Ok / Separate System."

60. Sometime after June 10, 1988, on the signature line of Building Permit No. 359 titled "Certificate of Occupancy," a representative of the City affixed his signature indicating that Unit 4 is approved for occupancy.

61. On July 14, 1989, the City through the Westfield Conservation Commission issued a Cease and Desist enforcement order to Emile Barbero concerning City View Commons stopping further activity affecting the wetland portion of the property due to unauthorized excavation near the brook ("Cease and Desist Order").

62. On December 27, 1989, SBH completed the construction of Unit 4 and Unit 4 received and continues to have a valid Certificate of Occupancy approved by the Board of Health as evidenced by Building Permit No. 359.

63. By late 1989, CVCI and the Developers had constructed at City View Commons, a 25 acre 23-25 lot condominium project, comprising 15 Units (13 buildings and 2 foundations) and infrastructure with an investment greater than $2,000,000.

64. On December 31, 1990, CVCI was dissolved under the provisions of Chapter 156B, Section 101. By operation of law all interests, including the development interests in the common areas of City View Commons, pass to the shareholders Richard A. DeSimone and Emile Barbero.

65. As a result of the recession in the early 1990's, the Resolution Trust Corporation and the FDIC acquired interests in a number of Units in City View Commons.

66. Frank R. Saia as Trustee of the Frank R. Saia Defined Benefit Pension Plan ("the Plan") acquired interests in Unit 18. The ownership interest includes the fee simple and a 4% undivided interest in the common areas of City View Commons.

67. On January 28, 1994 in a letter from Peter Martin to James Boardman, the Community Development Director, of the City of Westfield maintains that City View Commons under the new zoning ordinance, Article IV *Rural Residential District*, is now an unlawful use, and that any property rights of the developers or owners "evaporate." Accordingly, the City's Zoning Scheme operates as a taking of Plaintiffs' property, including reasonable investment backed expectations to use and develop the property, without due process or just compensation.

68. In late 1993 or early 1994, Charles Kellogg serving as the Inspector of Buildings of the City of Westfield, denied Frank Saia a building permit to perform repair work at City View Commons. According to his affidavit, Mr. Kellogg denied the permit because the "use and structures were not allowed under zoning and had not obtained protected status as pre-existing, nonconforming uses or structures." The City Zoning Board of Appeals upheld this decision

despite the fact that i) the City *repealed* Ordinance 846 containing the Construction Deadline rendering it a nullity, ii) the City issued building permits in 1988 in furtherance of the Special Permit issued in 1987, and iii) construction had commenced within the time frames of 40A § 9 with over $2 million invested in infrastructure and buildings.

69. In 1994, Plaintiff Frank R. Saia and the Plan appealed the City's denial of a building permit to repair Unit 18, Frank R. Saia, Administrator Frank R. Saia Defined Benefit Pension Plan v. City of Westfield Zoning Board of Appeals, Hampden County Superior Court Civil Action No. 94-749.

70. On December 11, 1996, Plaintiffs Frank R. Saia and the Plan agreed to dismiss with prejudice case No. 94-749 concerning Unit 18 in exchange for Frank R. Saia proceeding to obtain control of City View Commons, directly or indirectly, from all the condominium unit owners. After which, the City through its First Assistant City Solicitor, Paul J. Casey, agreed in accordance M.G.L. c. 40A § 9 to allow Defendants to complete the construction of the 25 Units in accordance with the Special Permit (the "Settlement Agreement"). Plaintiffs completed all the conditions precedent to this Settlement Agreement and obtained additional property interests in and control of City View Commons. Defendants, however, have failed to honor its commitment to allow completion of the project pursuant to this Settlement Agreement, despite the fact City View Commons has at all times had final approval from the City, been validly permitted by the City and acted upon by the original developers.

71. On December 13, 1995, the Plan acquired interests in Unit 2. The ownership interest includes the fee simple and a 4% undivided interest in the common areas of City View Commons.

72. On October 29, 1999, the Plan by Assignment of a Note and Mortgage from the RTC Mortgage Trust as holder of a Note and Mortgage executed by SBH, Susan B. Hansen and John G. Hansen and payable to Comfed Savings Bank in the original amount of $996,000 acquired the mortgage, property interest and assignment of rents in Units 4, 5, 6, 7, 11, 12, 13, 14.

73. Donald C. York, is currently employed as Superintendent of Building of the City of Westfield a position he has held continuously since February 10, 1997. As Superintendent of Building, his duties involve serving as the City Building Commissioner and as the City's zoning enforcement officer.

74. On October 5, 2000 by letter dated the same, York in his capacity as Building Commissioner notified in separate letters addressed to Defendants Frank R. Saia and David Allen that the he had conducted an investigation of the property finding "thirteen (13) buildings and two (2) foundations abandoned, uninhabited and dangerous. (Units #2, 3, 4, 5, 6, 7, 12, 13, 14, 15, 16, 17, 18, 19, 20)." He further concluded that the entire City View Commons "project to be abandoned, unused, uninhabited and a danger to public safety." He "further order[ed] the owner[s] to remove all structures, foundations and debris and to make lot level to conform with adjacent grades as set forth in MA State Building Cod 780 CMR Section 121." He further indicated that failure "to remove the said violation will result in the City of Westfield taking appropriate action to make this property safe to the public and conform to MA State Building Code 780 CMR and Westfield Zoning Ordinance." Accordingly, the City's conduct constitutes a taking of Plaintiffs' property without just compensation.

75. Contrary to the statements by York in his October 5, 2000 letter, Unit 4 was neither abandoned nor dangerous, had a valid certificate of occupancy and was currently occupied, and has been continuously occupied since receiving an occupancy permit in 1989.

76. Any purported danger or failure to complete City View Commons, including the existing structures, has been caused by the Defendants' repeated and systematic failure to issue building permits to complete the project under either 40A § 6 (Non-conforming use) or 40A § 9 (Special Permits) by claiming as York has in his October 5, 2000 letter that the *condominium* "use is no longer allowed in the current zone, so no permit can be granted for the completion of this project."

77. In his October 5, 2000 letter, York acknowledges that the property was given a Special Permit by the Westfield Planning Board on January 20, 1987 and received final approval to develop City View Commons.

78. As grounds for the condemnation of the entire project and removal of all structures, York states that the five-year Construction Deadline contained in Ordinance 846 at the time of the issuance of the Special Permit expired as of July 8, 1991. The City, however, *repealed* Ordinance 846 in September 1987. Because a repealed ordinance as a matter of law cannot have the force of law, the five-year Construction Deadline on which the City grounds the condemnation of the property no longer applied to the development of City View Commons.

79. As further grounds for the condemnation of City View Commons, the City has maintained that the condominium "use is no longer allowed in the current zone, so no permit can be granted for the completion of this project."

80. At all times, Defendants know that as a matter well-established law that a Construction Deadline is not within their authority to enact, is void and unenforceable because it

is facially inconsistent with the statutory provisions of M.G.L. c. 40A § 9. *See, e.g., Heritage Park Development Corporation v. Town of Southbridge*, 424 Mass. 71 (1997) (the Supreme Judicial Court of Massachusetts squarely holds that that the City cannot adopt or enforce any provision, *including a construction deadline, a performance deadline or automatic rescission*, that modifies or terminates the statutory protections of M.G.L. c. 40A §§ 6 or 9 for vested property rights); *Dona v. Town of Sutton*, Misc. Land Court Case No. 193324, (July 1, 1994) (discussing a similar argument advanced by the Town of Sutton and noting the void nature of any by-law that conflicts with the express provisions of M.G.L. c. 40A § 6); Massachusetts Continuing Legal Education, Inc., *Massachusetts Zoning Manual*, § 2.2.1 (Supp. 2002).

81. At all times, the Defendants know as a result of clearly established law that it cannot enforce a *repealed* ordinance, including Ordinance 846 which purportedly contains the five-year Construction Deadline.

82. At all times, the Defendants know that in connection with its repeal of Ordinance 846 in its entirety, it failed to state that the Construction Deadline continued to apply to existing projects, including City View Commons.

83. At all times, the Defendants know as a result of clearly established law that a condominium is a form of ownership and not a use, and that the structures built in accordance with the Special Permit are used as single-family homes.[1]

84. At all times, the Defendants know as a result of clearly established law that it has no authority to regulate the form of ownership.[2]

85. At all times, as evidenced among other things by the unanimous approval by the Zoning Board of the Special Permit in 1987, the approval of the plan to construct City View

---

[1] *CHR General, Inc. v. Newton*, 387 Mass. 351, 439 N.E.2d 788 (1982).

[2] *CHR General, Inc. v. Newton*, 387 Mass. 351, 439 N.E.2d 788 (1982).

Commons, the issuance of building permits 1988, the commencement of construction (including infrastructure and homes), and the issuance of a Certificate of Occupancy for Unit 4, the Defendants know the property has been validly permitted, constructed and used as single-family homes in accordance with an in reliance upon the permits. Accordingly, City View Commons received final approval, achieved protected status, and has been improved and used as single-family homes.

86. On October 5, 2000, the City, through Defendant Attorney Peter Martin (who has a responsibility to investigate whether the Enforcement Action could be brought and maintained) and at the direction of the City, its Zoning Board, Council Members and other Defendants, filed the Enforcement Action which seeks to compel the abandonment of Plaintiffs' property interests and the removal of all structures at City View Commons thereby depriving Plaintiffs of their property interests and reasonable economic expectations through economic coercion without any legitimate government interests or just compensation.

87. On September 5, 2001, the City through its Building Inspector, Donald C. York, and having purportedly condemned the entire property, including Unit 4, issued Building Permit No. 383 to Frank R. Saia granting permission to re-roof; replace front door; and repair siding on Unit 4 at City View Commons, thereby discrediting the City's arguments, including statements by Attorney Martin and the Affidavit of Donald C. York, that the City lacked the power to issue building permits due to the "unlawful" nature of the condominium complex.

88. David Allen not a party to this action owns units 3, 8, 9, 10, 15. His ownership interest includes the fee simple in each Unit and a 4% undivided interest in the common areas of City View Commons.