# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS
### WESTERN DIVISION

FRANK R. SAIA, individually and as
Administrator of the FRANK R. SAIA
DEFINED BENEFIT PENSION PLAN,
LIMITED DIVIDEND CORPORATION OF
WESTFIELD, and CITY VIEW
COMMONS CONDOMINIUM TRUST,

             Plaintiffs,

v.

CITY OF WESTFIELD, ZONING BOARD
MEMBERS (John and Jane Does #1-10),
CITY COUNCIL MEMBERS (John and
Jane Does #1-10), CHARLES KELLOGG,
(former Inspector of Buildings of the City),
DONALD C. YORK (Superintendent of
Buildings), JAMES BOARDMAN
(Community Development Director), DAN
REARDON (Director of Public Health),
PAUL J. CASEY (Assistant City Solicitor),
and PETER A. MARTIN (Assistant City
Solicitor), all Defendants named individually
and in their official capacity,

             Defendants.

Civil Action No. 04-30143-MAP

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY

       Plaintiffs submit this memorandum in opposition to defendants' motion to stay and to

correct the misstatements of the facts, the law and the procedural history of the Housing Court

action in defendants' motion.

## NATURE OF THE ACTION

       In the *Complaint*, Plaintiffs challenge the constitutionality of the City of Westfield's

("City") zoning scheme, including the construction deadline in Ordinance 846, ("Zoning

Scheme"), and the City's enforcement action filed on October 5, 2000 which seeks to compel the abandonment of Plaintiffs' property interests and the removal of all structures at City View Commons ("Enforcement Action"), on the grounds that the Enforcement Action violates the Equal Protection, Due Process (Substantive and Procedural) and Takings (without just compensation) clauses of the United States Constitution.  The Takings claims assert both a facial and "as applied" challenge to the City's Zoning Scheme.  The City seeks to compel the abandonment and removal of all structures at City View Commons, all *validly permitted* by the City and which have achieved protected status, depriving Plaintiffs of their property interests and reasonable economic expectations through economic coercion without any legitimate government interests or just compensation in violation of M.G.L. c. 40A §§ 6, 7, 9, 42 U.S.C. § 1983, and the Massachusetts Civil Rights Act pursuant to M.G.L. c. 12, §§ 11H and 11I.

The City's Zoning Scheme and its Enforcement Action are based on its claim that a five-year lapse provision (the "Construction Deadline") contained in the City's zoning Ordinance 846 *repealed* eight months after the City granted final approval of the project known as City View Commons and the issuance of the Special Permit in January 1987 remains applicable to the Special Permit issued to the former developers.  Neither the Special Permit nor any document of public record on file at the Hampden County Registry of Deeds contains the Construction Deadline that according to the City operates to extinguish existing property rights after the City granted final approval for the project, issued the Special Permit in January 1987 authorizing the project, and construction commenced within the two year statutory requirement of M.G.L. c. 40A § 9.  Plaintiffs are subsequent purchasers of the property interests at City View Commons and had nothing to do with the original project.

The City's case is quite simple but is contrary to well-established case law, which the Housing Court fails to apprehend despite its order upholding validity of the Construction Deadline.  Because the prior developers did not complete construction of *all* 25 single-family homes at City View Commons permitted by the City within the five-year Construction Deadline, *all* units fail to obtain protected status as pre-existing, nonconforming uses or structures.  The City maintains that this is the proper result: i) despite the void nature of a Construction Deadline in direct conflict with the vesting provisions of M.G.L. c. 40A § 9 which only requires *commencement of construction* to attain protected status; ii) despite its unanimous approval of the project and issuance of a Special Permit and numerous building permits; iii) despite the level of investment in the project (which is in excess of $2.5 million); iv) despite the stage of completion (15 of 25 units have been constructed with all 25 having a 4% interest in the common land which cannot be merged by the City, M.G.L. c. 183A); v) despite the number of single-family homes completed and/or occupied; and vi) despite the expiration of the six-year statute of limitations which applies to validly permitted projects under M.G.L. c. 40A § 7.  Even completed homes like Unit 4 which received a certificate of occupancy and has been continuously occupied since 1989, *never* attain protected status because the other 24 units were not completed.

*Regardless* of the alleged validity of the five-year Construction Deadline, the Zoning Scheme and Enforcement Action violate Plaintiffs' constitutional rights depriving them of existing property interests all validly permitted by the City 17 years ago.  Plaintiffs Takings (both a facial and an "as applied" challenge) and Equal Protection claims survive, because i) the Enforcement Action has an improper purpose directed at the Saia Defendants to coerce them into abandoning their property interests for the benefit of a developer other than Frank Saia (a clear equal protection violation), and ii) the current City officials are resurrecting a condition

previously *repealed in its entirety* by the City itself making it no longer applicable to the Special Permit, and enforcing that condition (void as a matter of law and not a matter of public record in any document on file at the Hampden County Registry of Deeds) against the Saia Defendants resulting in a taking by the City against those who had nothing to do with the original project.

The City commenced the action in the Housing Court in October 2000.  The Housing Court, however, is a court of limited jurisdictions which has asserted but continues to lack jurisdiction over the City's Enforcement Action, and lacks jurisdiction over Plaintiffs' *Counterclaim*, which like the *Complaint* in this action asserts violations of the Constitutions of the United States and the Commonwealth of Massachusetts, and related claims.  The assertion of jurisdiction by the Housing Court required Plaintiffs to bring the *Counterclaim* and naming the additional parties responsible for maintaining the Enforcement Action to prevent the expiration of the statute of limitations.  *See infra*.  The Housing Court's lack of jurisdiction and failure to properly take jurisdiction coupled with its predisposition to deny joinder of the individual defendants in the *Counnterclaim* who have violated Plaintiffs' constitutional rights by maintaining the improper Enforcement Action requires that Plaintiffs file a separate action in federal court to preserve these claims against the individual defendants.

The City seeks to deny plaintiff *any forum*, whether state or federal, to assert valid and timely Takings and Equal Protection claims alleged with particularity in the *Counterclaim* in Housing Court action, or in the *Complaint* against the City and the individual defendants for their unlawful conduct.  The motion to stay argues that Plaintiffs are claim splitting and failed to timely raise these issues, both of which are not true.  Conversely, in the Housing Court action, the City argues that the joinder of the individual defendants-in-counterclaim should be denied.  Such a ruling requires Plaintiffs to pursue their claims in federal court.  Despite claiming to this

court that it needed time to address the extensive case law set forth in **DX F**, the City in the Housing Court action fails to distinguish any of the well-established law and the specific allegations in the *Counterclaim* that make the City officials potentially individually liable. **DX F**[1] at Ex. 1 to *Defendants' Opposition to Plaintiff's Motion to Extend Time*, Housing Court *Order on Motions Before the Court* dated September 28, 2004.

The Housing Court still lacks jurisdiction over the entire matter, and is predisposed to deny the joinder of the individual defendants *requiring* that these claims be filed in federal court in order to preserve them. *Only after* alerting the Housing Court that it lacked jurisdiction over the entire action, *after* the Housing Court asserted but fails to properly have jurisdiction, *after* Plaintiffs alerted the City and the Housing Court to the well established law, *after* Plaintiffs learned of the Equal Protection violations, and *after* the Housing Court indicated that it was predisposed to deny joinder of the individual defendants, did Plaintiffs serve defendants with the *Complaint* in this action. This was done to preserve a forum for Plaintiffs' claims. If the Housing Court on January 4, 2005 refuses to join the individual defendants responsible for maintaining the Enforcement Action, Plaintiffs have no recourse but to pursue their claims here.

---

[1] **DX F** contains a number of submissions by the Saia Defendants in the Housing Court action that are directly relevant to the motion to stay, are summarized by the Plaintiffs' opposition to the stay, and set forth the well-established law that i) shows the City's Enforcement Action is contrary to well-established law, including that a construction deadline is void as a matter of law, and on the face of the pleadings the six year statute of limitations has expired, ii) shows that the individual City officials are necessary parties to afford the Saia Defendants complete relief because the Enforcement Action seeks to terminate all property interests at City View Commons all validly permitted by the City, and has an improper purpose to coerce the Saia Defendants into abandoning their property interests *for the benefit of another developer*; thereby, clearly violating the Takings and Equal Protection rights guaranteed by the United States and Massachusetts constitutions, *e.g, Complaint* at ¶¶ 93-94, 113-121 (alleging clear violations of Plaintiffs' equal protection rights, and iii) the individual defendants lose their qualified immunity for violating well established law as announced by the First Circuit allowing Plaintiffs' claims to proceed. The briefs with attached exhibits in **DX F** include: i) *Defendants' Opposition to Plaintiff's Motion to Extend Time*, with exhibits 1 through 4 (addressing the well-established law demonstrating that the law of the case is patently wrong); and ii) *Defendants' Opposition to "Defendant-in-Counterclaim," Peter A. Martin's Limited Motion to Dismiss Additional Parties Named in Counterclaim and Motion to Join Indispensable Parties*, with exhibits 1 through 3 (addressing the well-established law violated by the City officials, the loss of qualified immunity and why the City officials are necessary parties) herein after ("*Motion to Join Indispensable Parties*").

No stay is warranted and any so called claim splitting is the direct result of the Housing Court's lack of jurisdiction and its intent to deny joinder of persons directly responsible for maintaining the improper Enforcement Action.  Plaintiffs have repeatedly tried to educate the Housing Court and are simply trying to preserve their claims against the City and its officials for violating Plaintiffs' rights by bringing an Enforcement Action that is contrary to well-established law, especially the Equal Protection claims set forth with particularity in the *Complaint* against the individual defendants showing that the Enforcement Action has an improper purpose.  *See, e.g., Complaint* at ¶¶ 93-94, 113-21.

## PROCEDURAL BACKGROUND

On October 13, 2000, the City commenced the Enforcement Action in the Housing Court seeking to terminate Plaintiffs' property interests in City View Commons, all validly permitted by the City 13 years earlier.  Over a year later on January 4, 2002, City filed its *First Amended Complaint* ("FAC").

On February 20, 2002, the Saia Defendants represented then by attorney John Pearson filed an answer to the FAC asserting among other things a counterclaim against the City for violating the Saia Defendants' constitutional rights under 42 U.S.C. § 1983.  Attorney Stephen V. Saia was not involved in the action until sometime in the middle of 2002.

On July 30, 2002, **DX A**, the Housing Court dismissed the Saia Defendants' counterclaim because Attorney John Pearson failed to appear.  Attorney Pearson explained to the court his failure to appear and the court revisited the motion to dismiss the counterclaim.  Contrary to the City's representation, the court then dismissed these claims **without prejudice** despite the fact that the Enforcement Action sought to terminate vested property rights and the counterclaim to the FAC sought compensation for this taking without compensation.  *See, e.g., Anderson v.*

*Seeman*, 252 F.2d 321, *cert. denied* 358 U.S. 820 (C.A. Tex. 1958) (for the purposes of a motion

to dismiss complaint, or as here a counterclaim, allegations that defendant would condemn and

take plaintiffs' lands unless enjoined must be take as true).

On March 13, 2003, the Housing Court issued its *Memorandum and Order on*

*Defendants Motion for Summary Judgment* dated March 13, 2003 at **DX B** upholding the validity

of the City's five year construction deadline.  As discussed below, this order is patently wrong

and contrary to well-established law from the Supreme Judicial Court of Massachusetts and the

Appellate Division.  Regardless of the validity of the construction deadline, Plaintiffs who had

nothing to do with the original project still can i) assert their Takings claims both facial and "as

applied" challenges to the City's Zoning Scheme because, among other things, the City is

enforcing a repealed condition that is not a matter of public record that results in a total loss of

the existing property rights, and ii) maintain their Equal Protection claims.  *See e.g., Leonard v.*

*Brimfield*, 423 Mass. 152, 154, *cert. denied*, 117 S. Ct. 582 (1996) (setting forth the criteria for

facial and "as applied" challenge to takings claims); *CHR General, Inc. v. Newton,* 387 Mass.

351, 439 N.E.2d 788 (1982) (finding that zoning deals basically with use, without regard to

ownership, and that neither the form of ownership or the one who is the operator of that use are

in the city's power to regulate).

In any event, on or about October 3, 2003, the Saia Defendants filed their *Motion to*

*Amend the Counterclaim*.  The *Motion to Amend* and the attached counterclaim named only the

City as a defendant.  The papers, however, alerted the court to the issue of individual liability for

Attorney Martin and other City officials as potential defendants.  This counterclaim had specific

allegations related to Attorney Martin and other City officials showing that the Enforcement

Action had an improper purpose to violate not only the Saia Defendants' property interests, but

that the City wanted a developer other than Frank Saia to develop his property because Mr. Saia had made too many enemies at the City.[2]  *See also Complaint* ¶ 93 (same allegation against defendant Martin).  This is a clear equal protection violation because the City and its officials have no power to determine ownership or development rights.  *CHR General, supra*.  This violation of well-established law subjects City officials responsible for maintaining the Enforcement Action, including Attorney Martin, to individual liability.  *See Mihos v. Swift*, 358 F.3d 91 (1st Cir. 2004) (applying the three part test and rejecting qualified immunity for violations of well-established constitutional law by city or state officials at the complaint stage). The Housing Court never acted on this motion.

Sometime in early 2004, a second incident confirmed that the Enforcement Action had an improper purpose to violate Mr. Saia's Equal Protection and property rights.  Defendant York, the Superintendent of Buildings, had a conversation with David Wroblenski while at the property site City View Commons.  *Complaint* at ¶ 94.  Defendant York stated to Mr. Wroblenski that Defendants would approve the development of the site for anyone *other than* Frank R. Saia.  *Id.*

On or about April 1, 2004, the Saia Defendants filed a supplemental memorandum number 1 in support of *Defendants' Motion to Transfer to Land Court and Petition for Judicial Determination of Validity of Zoning Ordinance* previously filed in December 2003.  The motion argued that the Housing Court lacked jurisdiction over the Enforcement Action, in addition to summarizing the well-established law.

---

[2]  Paragraph 83 of the counterclaim attached to the *Motion to Amend* states: "Sometime in late 2002, Attorney Peter Martin, the City Solicitor, had a discussion with Defendants' Attorney John Pearson.  During the discussion, **Attorney Martin stated that because Defendant Frank R. Saia has made too many enemies, the City wants the project rezoned and developed by a developer *other than* Frank R. Saia**.  Accordingly, the systematic denial of permits and the Enforcement Action is targeted at Defendant Frank R. Saia and his property interests in City View Commons amounting economic coercion to deprive Defendants of their property interests without just compensation for the benefit of another and therefore serves no legitimate government interest." (Emphasis added).

On or about April 5, 2004, the Saia Defendants filed a supplemental memorandum number 2 in support of their motion to dismiss and *Motion to Transfer* filed in December 2003. This supplemental memorandum alerted the court, the City and the City officials (including defendant Martin) to the SJC decision in *Heritage Park Development Corporation v. Town of Southbridge*, 424 Mass. 71 (1997). **Ex. 1**. The SJC squarely holds that a construction deadline or any automatic rescission that modifies or terminates the statutory protections of M.G.L. c. 40A for the vesting of property rights is void and not within the City's authority to adopt. The vesting provisions of M.G.L. c. 40A § 9 under which the City granted the Special Permit require only commencement of construction not completion for the vesting of property rights and protection as a non-conforming use. The Housing Court failed to address this controlling case law despite the fact that its prior order on defendants' motion to dismiss upholding the validity of the construction deadline is contrary to *Heritage Park*. The Housing Court's order is also contrary to *Cohasset Heights, LTD v. Zoning Board of Appeals of Cohasset*, 53 Mass. App. Ct. 116 (2001) (holding the *issuance* of special permit under M.G.L. c. 40A § 9 marks beginning of protection as a prior non-conforming use), and contrary to *Champagne v. The Members of the Board of of the North Attleborough Zoning Board of Appeal*, CA C99-0057 slip op. (Superior Court Feb. 2, 2000) (holding a "city or town cannot adopt a new or amended zoning ordinance or by-law which conflicts with pertinent enabling legislation of general application"). **Ex. 1.**

On or about April 27, 2004 after a hearing, the Housing Court asserted, but continues to lack jurisdiction over the Enforcement Action and also now the *Counterclaim* stating only that "The Housing Court may issue declaratory judgments regarding those subjects *as are within its jurisdiction*." **Ex. 2**. The Appellate Division in *Mastriani*, the SJC in *Ryan*, and M.G.L. c. 231A are clear, both the Superior Court and the Land Court are included among those courts that have

jurisdiction over M.G.L. c. 231A zoning matters. The Hampden County Housing Court does not have such jurisdiction. *Mastriani v. Building Inspector of Monson*, 19 Mass. App. Ct. 989, 990, 475 N.E.2d 408, 409 (1985); *Ryan v. Kehoe*, 408 Mass. 636 (1990) (finding that the Housing Court lacks jurisdiction to adjudicate product liability claims). Thus, the Housing Court lacks jurisdiction over the Enforcement Action and has not properly taken jurisdiction. It also lacks jurisdiction over the *Counterclaim*, which is unrelated to housing or tenant issues.

On May 24, 2004, the City filed its *Second Amended Complaint* ("SAC") replacing the *First Amended Complaint*.

On June 11, 2004, the Saia Defendants filed an extensive 41 page motion to dismiss the SAC summarizing the status of the law and again alerting the Housing Court as well as the City and its officials that they may be individually liable losing qualified immunity for violating well-established law citing to the above case law, and to the First Circuit's recent decision in *Mihos v. Swift,* 2002 WL 31455257 (D. Mass. 2002) (applying the three part test and rejecting qualified immunity for violations of well-established constitutional law by city or state officials at the complaint stage), *affirmed*, 358 F.3d 91 (1st Cir. Feb. 13, 2004) (same). Again, the Housing Court failed to address this body of law. The City and its officials, however, were clearly on notice of potential violations, including individual liability in light of *Heritage Park* (construction deadline void)*, Champagne* (city cannot adopt any by-law or ordinance that conflicts with statutory protections), *Cohasset Heights* (issuance of special permit marks the **beginning** of protection as a prior non-conforming use making a subsequent construction deadline as here void), and M.G.L. c. 40A § 7 (six year statute of limitations applies to validly issued permits regardless of validity of the construction deadline). Furthermore, the City and its

officials were aware of their Equal Protection violations and maintaining an Enforcement Action that sought to have a developer other than Mr. Saia develop the property.

The Housing Court's order dated September 4, 2004 allowed Plaintiffs to file a counterclaim as of right. **DX F** at ¶ 7 ("Saia is permitted to file and [sic] amended answer and counterclaim as of right to plead a counterclaim under 42 U.S.C. § 1983." Moreover, all steps relative to this *Counterclaim* have been bifurcated previously and now stayed pending further order of the Housing Court dated September 28, 2004. **DX F at** ¶ 7.

On October 7, 2004, Plaintiffs filed their *Answer* and *Counterclaim*. The *Counterclaim* named numerous additional parties necessary to provide Plaintiffs complete relief for their claims that the Enforcement Action is an unconstitutional taking of Plaintiffs' property and has an improper purpose to deprive Plaintiffs of their property and Equal Protection rights contrary to well-established law as described above. The violation of well-established law subjects the named defendants in this action and in the *Counterclaim* to individual liability. Thus, there has been no delay in asserting the claims, no prejudice to the City or the individual defendants and no misdeeds on the part of Plaintiffs. Any defense, whether in law or fact, may be raised by answer and the defenses set out in Rule 12(b)(1)-(9), including the failure to join indispensable parties under 12(b)(7). 6 Mass. Prac. § 12.6.

It is clear from i) this procedural background documented by numerous papers on file with the Housing Court, ii) the City's own conduct, including specific allegations of Equal Protection violations directed at Frank Saia by City officials Martin, York and others that occurred in 2002 and again in 2004 supporting the allegations that the Enforcement Action has and improper purpose, and iii) the efforts by counsel to advise the Housing Court and City

officials of their individual liability for violating well established law, that City's claim that

Plaintiffs have failed to timely raise these issues is *pure fiction*.

Moreover, the City's attempt to distract this court by claiming that Plaintiffs have known

about the City's conduct since 1994 is equally without any merit.  It was the City who filed the

Enforcement Action in October 2000 to terminate Plaintiffs' vested property rights.  It is the City

who has maintained the Enforcement Action for an improper purpose directed at Mr. Saia.  It is

the City who has continued to maintain the Enforcement Action contrary to well-established law

from the SJC and the Appellate Division that a construction deadline is void and that the six year

statute of limitations in M.G.L. c. 40A § 7 has long since expired.  Plaintiffs' *Complaint* springs

from this Enforcement Action and the City's improper conduct as demonstrated by the well

plead allegations in the *Complaint* and the status of the law.  Plaintiffs have cited numerous

controlling authorities.  The City has never and continues not to cite a single case contrary to this

authority from the SJC, the Appeals Court and First Circuit, which demonstrates that the

Housing Court's order is contrary to the law and the City officials are individually liable.

## ARGUMENT

1.    <u>Summary of the Law and the City's Equal Protection Violations</u>

The City and its officials are enforcing a **condition repealed by the City itself in**

**September 1987** (*i.e.* the five year construction deadline) **making it impossible to enforce**,

which is **not contained in the Special Permit** issued by the City in January 1987 and **not a**

**matter of public record** on file at the Hampden County Registry of Deeds.  Because the City

removed the condition, all property interests are not subject to the condition.  The construction

deadline condition is also in **direct conflict** with the vesting provisions of M.G.L. c. 40A § 9

governing special permits **which only requires the commencement of construction not**

**completion** rendering it void as a matter of law.  *See* **Ex. 1** *Heritage Park Development Corporation v. Town of Southbridge*, 424 Mass. 71 (1997) (holding a construction deadline or any automatic rescission that modifies or terminates the statutory protections of M.G.L. c. 40A for the vesting of property rights is void); *Cohasset Heights, LTD v. Zoning Board of Appeals of Cohasset*, 53 Mass. App. Ct. 116 (2001) (applying § 9 and the first sentence of § 6 holding the issuance alone qualifies a special permit as a prior non-conforming use); *Champagne v. The Members of the Board of of the North Attleborough Zoning Board of Appeal*, CA C99-0057 slip op. (Superior Court Feb. 2, 2000) (a "city or town cannot adopt a new or amended zoning ordinance or by-law which conflicts with pertinent enabling legislation of general application" finding void a town by-law that shortened the two year time period for abandonment set forth M.G.L. c. 40A § 6 to one year because the city's one year abandonment provision directly conflicted with the two year provision in M.G.L. c. 40A § 6).[3]

---

[3] *See also* **DX F**, *Defendants' Opposition to "Defendant-in-Counterclaim," Peter A. Martin's Limited Motion to Dismiss Additional Parties Named in Counterclaim and Motion to Join Indispensable Parties*, **at 5-10** *citing Heritage Park Development Corporation v. Town of Southbridge*, 424 Mass. 71 (1997) (Supreme Judicial Court finding a construction deadline after the granting of final approval, like the Special Permit here, is void as a mater of law because it is expressly inconsistent and in direct conflict with the vesting provisions of M.G.L. c. 40A §§ 6, 9. Section 9 only requires only the commencement of construction to achieve protected status); *Champagne v. The Members of the Board of of the North Attleborough Zoning Board of Appeal*, CA C99-0057 slip op. (Superior Court Feb. 2, 2000) (holding a "city or town cannot adopt a new or amended zoning ordinance or by-law which conflicts with pertinent enabling legislation of general application" finding void a town by-law concerning abandonment in one year conflicted with the two year provision in M.G.L. c. 40A § 6); *Cohasset Heights, LTD v. Zoning Board of Appeals of Cohasset*, 53 Mass. App. Ct. 116 (2001) (applying § 9 and the first sentence of § 6 holding the "issuance alone qualifies a special permit as a prior non-conforming use); *Bernstein v. Eladio R. Gore*, Misc. Land Ct. No. 242004 (Jan. 12, 1999) (quoting M.G.L. c. 40A § 9 as it applied to construction of a condominiums despite an extended pause in construction and finding that "Section 9 does not require that construction under a special permit, once commenced, be prosecuted continuously to completion; again, if the Legislature had wished to include such a requirement, it certainly knew how to do so.); *Janes v. Holton,et al (Members of the Essex Board of Appeals*), Misc. Case No., 222034 (January 14, 2000 Land Ct.) *citing Lord v. Zoning Bd of Somerset*, 30 Mass. App. Ct. 226, 228 (1991) and *Cape Resort Hotels, Inc. Alcoholic Licensing Bd. of Falmouth*, 385 Mass. 205, 221 (1982) (referring to M.G.L. c. 40A § 7 regarding the statute of limitations and finding that the 6 year statute of limitations applies where, as here, there is a validly issued Special Permit and the terms "original building permit" in the statute refers to the initial permit "issued with respect to a particular improvement of real property" – in this case the Special Permit issued in January 1987. *See also* **DX F**, *Defendants Opposition to Plaintiff's Motion to Extend Time* at 4-8 (same setting forth the well-established law).

The City cannot change the time period for the vesting of property rights under § 9, designed to protect developers, from the commencement of construction within two years as guaranteed by the Legislature in § 9 to completion of construction set forth in the City's by-law. The five year construction deadline, *even if* it survived the City's repeal and remained incorporated by reference into the Special Permit, is in direct conflict with the provisions of M.G.L. c. 40A § 9. If a city or town cannot through a by-law shorten the time period for abandonment from two years to one year, it cannot change the vesting provisions of M.G.L. c. 40A § 9 from commencement of construction to completion of construction.

The SJC and Appellate decisions in *Heritage Park* and *Cohasset Heights*, and the Superior Court decision in *Champagne* make the Housing Court's, *Memorandum and Order on Defendants Motion for Summary Judgment* dated March 13, 2003 at **DX B**, patently wrong. Contrary to the Housing Court's order at **DX B** p 10, *Cohasset Heights* makes clear that commencement of construction within the two year time frame of M.G.L. c. 40A § 9 marks the beginning of protection as a non-conforming use and property rights vest. These vested property rights are protected non-conforming uses and cannot then be taken by the City or extinguished by the operation of a five year construction deadline which has been repealed and is in direct conflict with the vesting provisions of § 9. *Heritage Park*. Despite the Saia Defendants best efforts to educate the Housing Court through numerous submissions, the Housing Court has failed to address let alone distinguish this case law. Moreover, the City and current counsel for the City have never cited a single case that distinguishes this case law.

Even assuming that the construction deadline is not void, the City's Enforcement Action was filed in October 2000 patently on the face of the pleadings **outside the six year statute of limitations** proscribed by M.G.L. c. 40A § 7 which expired in January 1993 (six years after the

issuance of the Special Permit) and no later than 1997 (six years after the expiration of the five year construction deadline in 1991 as argued by the City).  The City's action seeks to terminate vested property rights which achieved non-conforming use protection upon the issuance of the Special Permit and commencement of construction.  *Cohasset Heights, supra.*

Significantly, the *Complaint* here and the *Counterclaim* in the Housing Court action allege that the individual defendants have engaged in Equal Protection violations seeking to have the property interests owned by the Saia Defendants developed by another developer more to the City's liking, a clear equal protection violation.  *CHR General, supra*; *see also Complaint* at ¶¶ 93-94, 113-121 (specifically alleging that the Enforcement Action has an improper purpose to violate Plaintiffs' Equal Protection rights based on conversations in 2002 with defendant Martin and recently in early 2004 with conversations with defendant York making them and others responsible for maintaining the Enforcement Action individually liable under the law of the First Circuit.  *See Mihos v. Swift*, 358 F.3d 91 (1st Cir. 2004) (rejecting qualified immunity for violations of well-established constitutional law by city or state officials at the complaint stage).

### 2.    The Housing Court Lacks Jurisdiction Over the Enforcement Action

The Housing Court is a court of limited jurisdiction which lacks jurisdiction over the City's Enforcement Action, and Plaintiffs' *Counterclaim*.  The *Counterclaim* like the *Complaint* in this action asserts violations of the Constitutions of the United States and the Commonwealth of Massachusetts, and related claims *requiring* that Plaintiffs file a separate action in federal court.  Pursuant to M.G.L. c. 231A § 1, the Hampden County Housing Court does not have subject matter jurisdiction to make binding declarations of right, duty, status or other legal relations sought by the City concerning zoning issues.  *Mastriani v. Building Inspector of Monson*, 19 Mass. App. Ct. 989, 990, 475 N.E.2d 408, 409 (1985); *Ryan v. Kehoe*, 408 Mass.

636 (1990).  The Appellate Division in *Mastriani*, the SJC in *Ryan*, and M.G.L. c. 231A are

clear, both the Superior Court and the Land Court are included among those courts that have

jurisdiction over M.G.L. c. 231A zoning matters.  *Id.*  The Hampden County Housing Court does

not have such jurisdiction.  *Id.*  Similarly, the Housing Court does not have jurisdiction over

Plaintiffs' constitutional claims set forth in the *Counterclaim*.[4]

The Enforcement Action and the *Counterclaim* action do not fall within the original

jurisdiction of the Housing Court over matters related to the "health, safety and welfare" of

housing occupants, G. L. c. 185C, Section 3.  The SJC "has consistently construed this provision

narrowly, strictly limiting the jurisdiction of the Housing Court lest we 'dilute the expertise of

that court and . . . delay the resolution of disputes properly before it.'"  *Ryan v. Kehoe*, 408 Mass.

636 (1990) *quoting Haas v. Breton*, 377 Mass. 591, 601 (1979); *accord LeBlanc v. Sherwin*

*Williams Co.*, 406 Mass. 888, 897 (1990) (finding that M.G.L. c. 185C § 3 does not confer

subject matter jurisdiction on the Housing Court adjudicate product liability claims, even where

that claim involves the health, safety, and welfare of housing occupants, *Id.* at 891, 895).  The

SJC in *Ryan* could not be clearer after reviewing the legislative and judicial history of M.G.L. c.

185C § 3 in *LeBlanc*, "we construe Section 3 in light of the Legislature's clear intent in enacting

it, that is, to create a 'vigilant enforcer of the laws relating to housing conditions and the physical

environment within the immediate vicinity of tenants' homes."

---

[4]  In *Mastriani*, a case squarely on point, plaintiffs filed a complaint in Hampden County Housing Court alleging
that a zoning by-law as amended was invalid.  Plaintiffs sought to have the court make a binding declaration that the
zoning by-law is invalid and that the action of the special town meeting exceeded its authority.  *Mastriani*, 19 Mass.
App. Ct. at 989, 475 N.E.2d at 408.  After a trial in the Housing Court, the judge declared that the action of the
special town meeting was a nullity because the amendment constituted spot zoning.  *Mastriani*, 19 Mass. App. Ct. at
990, 475 N.E.2d at 409.  On appeal, the court on its own motion found that both the Superior Court and the Land
Court are included among those courts that have jurisdiction over M.G.L. c. 231A matters.  *Id.*  The Hampden
County Housing Court does not have such jurisdiction.  *Id.*  The appeals court then in light of the lack of jurisdiction
vacated the judgment entered by the Hampden County Housing Court.

The Enforcement Action is a zoning action that seeks to terminate all existing property rights.  Similarly, the *Counterclaim* has nothing to do with housing conditions.  It asserts constitutional claims over which the Housing Court lacks jurisdiction.  Plaintiffs filed the amended *Answer and Counterclaim* in the Housing Court as a matter of right in direct response to the City's *Second Amended Complaint* to prevent the lapse of the statute of limitations in an action over which the Housing Court asserts, but does not have jurisdiction.  All steps relative to this *Counterclaim* have been bifurcated previously and now stayed pending further order of the Housing Court dated September 28, 2004, but the court continues to lack jurisdiction.

    **3.**    **The Housing Court Lacks Jurisdiction Over the Counterclaim and is Predisposed to Deny Joinder of the Individual Defendants Requiring <u>Plaintiffs to File in Federal Court to Preserve Their Claims</u>**

The Massachusetts and Federal rules of civil procedure require that Plaintiffs file their claims in federal court.  Where a compulsory counterclaim, regardless of how intimately related to the City's Enforcement Action, seeks relief beyond the Housing Court's subject matter jurisdiction, then the counterclaim, will not be considered compulsory.  6 Mass. Prac. (Smith and Zobel) § 13.11, *Compulsory Counterclaims – Subject Matter Jurisdiction*.  Thus, the Housing Court lacks subject-matter jurisdiction over the *Counterclaim* and Plaintiffs are not compelled to assert it.  *Id.*  However, the Housing Court has asserted jurisdiction.  **Ex. 2**.  Also, the statute of limitations for Plaintiffs to assert counterclaims may have begun to run with the filing of the Enforcement Action, despite the Housing Court's lack of jurisdiction.  *See* M.G.L. c. c. 260 § 36 (by statute, counterclaims generally are considered to have been commenced "at the time the plaintiff's action was commenced"); 6 Mass. Prac. § 13.31, *Testing the Sufficiency of the Counterclaim – Statute of Limitations.*

Furthermore,

> **If the counterclaim**, although sharing a common factual origin with the main claim, **depends for complete adjudication upon the presence in the litigation of a person not at present a party** [as here the individual defendants named in the *Complaint*, including Attorney Martin, who are maintaining the Enforcement Action contrary to well-established law], **the court cannot give the counterclaimant the relief he seeks**.

*Id.* at § 13.17, *Compulsory Counterclaims – Exceptions – Absence of Essential Party* (emphasis added).  The Housing Court not only lacks subject-matter jurisdiction over the constitutional and related claims in the *Counterclaim* or *Complaint*, it is predisposed not to join the parties necessary for a complete adjudication of this matter under Rule 19(a) – *Joinder of Necessary Parties*, despite the fact that the *Counterclaim* and *Complaint* contain specific allegations against the named individuals for violating Plaintiffs' well-established constitutional rights.  It has already dismissed Attorney Martin as a necessary party and it is highly unlikely that it will join the necessary parties identified by the Saia Defendants in the upcoming hearing on January 4, 2005 to address the joinder of these necessary parties.  Both the *Counterclaim* and the *Complaint* have specific allegations against defendant Martin, defendant York and other City officials named individually and in their official capacities for violating well-established law making them potentially individually liable, but also indispensable parties to afford Plaintiffs complete relief for claims that spring directly from the Enforcement Action.

During the hearing on November 23, 2004, the Housing Court misapprehends the rules of civil procedure believing that compulsory joinder under Rule 19 *only* applies to adding additional *defendants*.  Rule 19 contains no such limitation, and necessary persons may be joined as "plaintiff-type" or "defendant-type."  In fact, Rule 19 even *required* that the City, as the plaintiff in the Housing Court who started the Enforcement Action,

> must induce all persons with *plaintiff-potential* to join the pleading [*i.e.* Attorney Martin, the Zoning Board, etc. those additional necessary parties named in Plaintiffs U.S. District Court *Complaint*] and must name all persons with *defendant-potential* as defending parties, *or (in either case) explain on the face of the complaint his failure to do so*.

7 Mass. Prac. § 19.5 *Pleading – Plaintiff's Obligation* (emphasis added). "Plaintiff-potential' or "defendant potential" means a relation to the subject of the litigation falling within any one of the various tests prescribed in Rule 19(a). *Id.* Thus, the City was required but failed to name all parties with "plaintiff-potential" in its *Second Amended Complaint* who would be liable to the Saia Defendants as a result of its Enforcement Action that plainly seeks to terminate vested property rights at City View Commons, enforce a condition that is in direct conflict with M.G.L. c. 40A § 9, and has an improper purpose to have a developer other than Frank Saia develop his property. Obviously, the City and the additional necessary parties named in the *Counterclaim* would not have named themselves in the Enforcement Action as "persons with plaintiff-potential" for violating the Saia Defendants constitutional rights and taking his property subjecting themselves to potential liability. However, they are necessary parties in the *Counterclaim* despite the Housing Court's predisposition not to allow the Saia Defendants to join them because these individual defendants have violated well-established law making them individually liable to the Saia Defendants and losing their qualified immunity.

Similarly, the rules require the Saia Defendants to name in the *Counterclaim all* parties with defendant-potential. Furthermore, "a defending party [Saia Defendants] who believes that the pleading stating a claim [*i.e.* the City's Enforcement Action] fails to name an essential party, **whether plaintiff-type** or defendant type," can raise the issue, as they have done in the Housing Court, **in an answer, or at a later stage by motion for judgment on the pleadings or at the trial itself**. *Id.* at § 19.6, *Pleading – Raising the Non-Joinder Issue*; *see also* 6 Mass. Prac. § 12.6, *Defenses Presented by Answer* ("Any defense, whether in law or fact, may be raised by answer;" including 12(b)(7) failure to join an indispensable party. Plaintiffs have timely raised the issue of joinder of necessary parties both in their *Answer and Counterclaim* to the SAC and

by a motion under rule 12(h)(2).  **DX D (Counterclaim)** and **DX F,** *Motion to Join Indispensable Parties*.  Further, numerous papers filed in the Housing Court have alerted the court and City of these claims.  *See supra*.

The Housing Court has already indicated that it believes that the rules only allow the Saia Defendants to join other *defendants* not persons that are "plaintiff-type."  As a result, the Housing Court likely will not join the City officials responsible for bringing the Enforcement Action which seeks to take Plaintiffs' property without compensation and who are necessary parties to afford the Saia Defendants complete relief in their *Counterclaim*.  Because the Housing Court i) lacks jurisdiction over the Enforcement Action, ii) lacks jurisdiction over the *Counterclaim*, and iii) misapprehends the rules of civil procedure making it highly unlikely that it will join the individual defendants, a second litigation in the United States District Court is necessary and will remain necessary for claims against the individual defendants.

To preserve the Saia Defendants rights and to prevent the expiration of the statute of limitations for their claims over which the Housing Court asserts but still lacks jurisdiction, the Saia Defendants brought the *Counterclaim* naming the individual defendants in the Housing Court action, and filed the *Complaint* in this action.  There have been no misdeeds by the Saia Defendants and no claim splitting as argued by the City.  The Saia Defendants have been forced to take these actions to preserve their claims due to the conduct of the City and rulings by the Housing Court, including its failure to take jurisdiction.

## <u>CONCLUSION</u>

In view of the arguments made and authorities cited above, as well as in their previous briefs, Plaintiffs respectfully request that this Court deny defendants' motion to stay and require defendants to answer, move or otherwise respond to the *Complaint*.

Dated: January 3, 2005

Attorney for Saia Defendants

Stephen V. Saia, BBO No. 562009
Law Offices of Stephen V. Saia
70 Old Cart Path Lane
Pembroke, MA 02359
(781) 826-8401

## CERTIFICATE OF SERVICE

I hereby certify that on January 3, 2005, I delivered a copy of the above document to:

Nancy Frankel Pelletier
Robinson Donovan, P.C.
1500 Main Street, Suite 1600
P.O. Box 15609,
Springfield, MA 01105

Electronic Notification and First Class Mail

David M. Rosen, Esq.,
Harmon Law Offices, P.C.,
150 California Street
P.O. Box 610389
Newton, MA 02458

First Class Mail

Dated: January 3, 2005

Stephen V. Saia

21