☐ Display Cross-Citations
**430 Mass. 637 / 57 Mass. App. Ct. 799 / 45 Mass. App. Ct. 748 / 1 Mass. App. Ct. 880**


Citation:        **424 Mass. 71**
Parties:         **HERITAGE PARK DEVELOPMENT CORPORATION vs. TOWN OF SOUTHBRIDGE &**
**another.**[1]
County:          **Suffolk**
Hearing Date:    **November 7, 1996**
Decision Date:   **January 8, 1997**
Judges:          **WILKINS, C.J., ABRAMS, LYNCH, GREANEY, & MARSHALL, JJ.**


Where a planning board had approved a definitive subdivision plan,      the
     developer was entitled to the benefit of the eight-year zoning "freeze"
     provided by G. L. c. 40A, s. 6, fifth par., and the board's subsequent
     rescission of its approval by operation of an automatic rescission
     provision in a performance covenant executed by the developer did not
     terminate the protection afforded by the statute. [74-76]
Where an action brought in the Land Court by a developer resulted      in the
     successful assertion of its entitlement to the benefit of the eight-year
     zoning freeze provided by G. L. c. 40A, s. 6, fifth par., and where, after
     the town's unsuccessful appeal, the eight-year period would have concluded
     within three months, the developer was entitled to an extension of the
     freeze for a period of time equal to the duration of the action. [76-77]

     CIVIL ACTION commenced in the Land Court Department on May 11, 1993.
     The case was heard by Peter W. Kilborn, J., on a motion for summary
judgment.
     The Supreme Judicial Court on its own initiative transferred the case from
the Appeals Court.
     Arthur P. Kreiger for the defendants.
     James M. Burgoyne for the plaintiff.
     MARSHALL, J. The town of Southbridge and its planning board (board) appeal
from a judgment of the Land Court holding that the board's rescission of its
approval of a definitive subdivision plan did not extinguish a zoning "freeze"
secured by the developer, Heritage Park Development Corporation (Heritage), under
G. L. c. 40A, s. 6 (1994 ed.).

-------------------------

    [1] The planning board of Southbridge.

424 Mass. 71                                                            Page 72

We transferred the case to this court on our own motion. We agree with the
decision of the Land Court judge, and we extend the statutory freeze for a period
equal to the duration of this action.
     The essential facts are not in dispute. In 1986, Heritage acquired a parcel
of undeveloped land in Southbridge that is the subject of this litigation
(property). In March, 1988, Heritage submitted for approval to the board a
preliminary subdivision plan to subdivide the property into 143 single and two-
family dwelling lots to be known as "Woodstock Heights." All the lots conformed
to the then applicable area and frontage requirements of the Southbridge zoning
by-law. The board granted its approval in May, 1988. In October, 1988, Heritage
sought approval of the definitive plan, which the board unanimously approved in
February, 1989, conditioned on Heritage's providing guarantees that the
groundwork necessary to serve each lot would be completed prior to the lot's

being built upon or conveyed.[2] That condition was satisfied on March 20, 1989, when Heritage and the board executed a covenant providing that no lot could be used, conveyed, or built upon until completion of the required groundwork. The covenant further provided that the board's approval of the plan would be automatically rescinded if the groundwork was not completed on or before March 20, 1991.[3] On the same day, the board endorsed the definitive plan, a copy of which was duly recorded.

------------------------

[2] The board's certificate of approval of the subdivision plan dated February 22, 1989, states as follows:

> "That a plan of subdivision called Woodstock Heights dated October 3, 1988 and . . . submitted for the Board's approval by Heritage Park Develop. Corp. owner, be and hereby is approved on condition that prior to the Board's endorsement of its approval thereon the subdivider shall furnish guarantees to the Planning Board as provided in [the board's subdivision regulations] that except as otherwise expressly provided in [G. L. c. 41 s. 81U] no lot included in such plan shall be built upon or conveyed until the work on the ground necessary to serve such lot has been completed in the manner specified by the Subdivision Regulations of the Town of Southbridge . . . ."

[3] Paragraph 9 of the covenant states in relevant part:

424 Mass. 71                                                              Page 73

     In the meantime, in October, 1988, Southbridge had amended its zoning by-law, increasing the area and frontage requirements in single and two-family zoning districts. Under the amended by-law the Woodstock Heights lots shown on the definitive plan would be too small.
     During the two years after it obtained subdivision approval, Heritage applied for and obtained certain approvals, permits, and agreements required for the subdivision. But by March 20, 1991, the groundwork called for in the covenant had not been completed. According to Heritage, this was due to the time required to obtain the permits, a downturn in the economy, and the developer's normal rate of work on a development the size of Woodstock Heights. On January 25, 1993, twenty-two months after the date of the automatic rescission of the board's subdivision approval of Woodstock Heights, Heritage appeared before the board and requested an extension of the covenant's construction deadline. The board denied the request. At the same hearing Heritage raised the possibility of refiling a subdivision plan for Woodstock Heights that complied with the pre-1988 zoning by-law. The board told Heritage that any resubmitted plan would have to comply with the then current zoning by-law. The board's decision was based in part on the ground that its approval of the definitive subdivision plan had been automatically rescinded on March 20, 1991, because the groundwork had not been completed. When the board not only refused to extend Heritage's construction deadline but also informed Heritage that any refiled subdivision plan would have to

------------------------

> "Upon final completion of the construction of ways and installation of municipal services as specified herein, on or before March 20, 1991, or such later date as may be specified by vote of the Planning Board upon the written request of the applicant giving the reasons for such extension of time, the Planning Board shall release this covenant by an appropriate instrument, duly acknowledged. Failure to complete construction and

installation within the time specified herein . . . shall result in automatic
    rescission of the approval of the plan. Upon performance of this covenant
    with respect to any lot, the Planning Board may release such lot from this
    covenant ...."

424 Mass. 71                                                              Page 74

comply with the current zoning by-law, Heritage commenced this action.[4]
    The board argues, and Heritage appears not to dispute, that the board's
approval of Heritage's definitive subdivision plan was automatically rescinded on
March 20, 1991. We agree. We previously have recognized the validity of an
automatic rescission provision in performance covenants similar to the one
executed here. Costanza & Bertolino, Inc. v. Planning Bd. of N. Reading, 360
Mass. 677, 681 (1971). While the board's acknowledgment that Heritage "initially"
had obtained the benefit of the statutory zoning freeze is equivocal,[5] it argues
that, when the board's approval of the Subdivision plan was automatically
rescinded, the freeze terminated and did not retain "independent life." We do not
agree. We conclude that in 1989 Heritage secured the benefits of an eight-year
statutory zoning freeze for its Woodstock Heights

------------------------

    [4] Heritage filed a two-count complaint, seeking (1) a declaration that the
board's refusal to extend the construction deadline was for the improper purpose
of depriving Heritage of the benefits of the zoning freeze; (2) a declaration
that the property was subject to the zoning by-law in effect when the subdivision
plan had been submitted in March, 1988; and (3) relief in the form of costs,
fees, and other damages attributable to the board's "arbitrary and capricious"
refusal to extend the construction deadline. Count one sought relief under G. L.
c. 240, c. 14A (1994 ed.), and count two sought the same relief under G. L. c.
231A, s. 1 (1994 ed.). Heritage moved for summary judgment on both counts. The
Land Court judge granted summary judgment on the second count, and rendered no
judgment on count one. Neither party has appealed from the portion of the
judgment concerning count one.
    [5] The board also argues that its "approval" of the definitive subdivision
plan on March 20, 1989, may not be "final" as required by G. L. c. 40A, s. 6,
fifth par., because the "approval" was "conditional" on completion of the
groundwork by March 20, 1991. As a result, the board asserts, the zoning freeze
was never triggered. The board suggests that this reasoning is the "functional
equivalent" of its position that Heritage "initially" had the benefit of the
zoning freeze which it lost when the automatic rescission terminated approval of
the subdivision plan, relying on Costanza & Bertolino, Inc. v. Planning Bd. of N.
Reading, 360 Mass. 677, 681 (1971). We do not agree. We did say that "a provision
for automatic rescission where the initial approval was not final but rather
conditional is within the board's authority," id., but Costanza concerned the
refusal of a planning board to endorse a subdivision plan as "Approval Under the
Subdivision Control Law is Not Required," submitted after an earlier approval of
the plan had been rescinded automatically under the terms of a covenant. The
effect, if any, of that rescission on a zoning freeze was not considered, and
nothing in Costanza precludes the result we reach here.

424 Mass. 71                                                              Page 75

subdivision. We conclude further that the automatic rescission of the board's
approval of that subdivision did not deprive Heritage of that vested zoning
protection.
    We reach this conclusion for several reasons. First, the language of G. L.
c. 40A, s. 6, fifth par., supports this result. It reads in relevant part:

> "If a definitive plan, or a preliminary plan followed within seven
> months by a definitive plan, is submitted to a planning board for
> approval under the subdivision control law, and written notice of
> such submission has been given to the city or town clerk before the
> effective date of ordinance or by-law, the land shown on such plan
> shall be governed by the applicable provisions of the zoning
> ordinance or by-law, if any, in effect at the time of the first such
> submission while such plan or plans are being processed under the
> subdivision control law, and, if such definitive plan or an amendment
> thereof is finally approved, for eight years from the date of the
> endorsement of such approval ...."

Once a definitive subdivision plan is "finally approved," as was the case here,
the eight-year zoning freeze is secure. Nothing in the statute suggests that the
continued vitality of a freeze is coextensive with subdivision approval. We
caution against confusing the rights and obligations of a planning board under
the subdivision control law and its rights and obligations under the zoning laws.
Whatever subdivision control the board may exercise cannot operate to deprive
Heritage of the zoning protection it secured in 1989. See Patelle v. Planning Bd.
of Woburn, 20 Mass. App. Ct. 279, 284 (1985).[6]

The purpose of the statutory zoning freeze also supports

------------------------

[6] It makes no difference whether a subdivision approval is rescinded
"automatically" by operation of a performance covenant or whether a board
rescinds its approval under its powers of the subdivision control law, G. L. c.
41, s. 81W (1994 ed.), which provides that a planning board possesses the power
to "modify, amend or rescind its approval of a plan of a subdivision, or to
require a change in a plan as a condition of its retaining the status of an
approved plan." We note, as well, that G. L. c. 40A, s. 6, ninth par., provides
that a landowner may submit an amended plan or a further subdivision of all or
part of the land at any time after an initial filing, and that the later
submission will not constitute a waiver of a zoning

424 Mass. 71                                                           Page 76

our conclusion. That purpose is to protect landowners from "the practice in some
communities of adopting onerous amendments to the zoning by-law after submission
of a preliminary plan which is opposed by segments within the community." 1972
House Doc. No. 5009, at 38, Report of the Department of Community Affairs
Relative to Proposed Changes and Additions to the Zoning Enabling Act. This
practice has been of sufficient concern to the Legislature that the protection of
a statutory zoning freeze has been extended from an initial three-year period to
five years then to seven years, see Doliner v. Planning Bd. of Millis, 349 Mass.
691, 694-695 nn.3, 4, 696 (1965), and finally to the current eight-year period.
G. L. c. 40A, s. 6. We have recognized that G. L. c. 40A, s. 6, and its
predecessors afford broad protection to developers. See Nyquist v. Board of
Appeals of Acton, 359 Mass. 462, 465-466 (1971). The Appeals Court has held that
developers can invoke a zoning freeze with inconsistent subdivision filings, or
with plans filed with no intent other than to invoke the freeze. See, e.g., Long
v. Board of Appeals of Falmouth, 32 Mass. App. Ct. 232, 233 (1992); Patelle v.
Zoning Bd. of Woburn, supra at 284. There is a common thread among these
decisions. The statutory zoning freeze provides landowners with protection from
amendments to zoning laws that would unpredictably and unfairly burden the
development of their land. We recognize the responsibility of a town planning
board to respond to community concerns about development and its impact on the
quality of a town or neighborhood, but under our system of law a board cannot act
at the expense of a vested property right created by the Legislature.

We turn now to the question of relief. Heritage has drawn our attention to

the imminent end (March 19, 1997) of the eight-year zoning freeze that it
secured. It requests that we modify the judgment of the Land Court and extend the
freeze for a period equal to the duration of this action. The controlling
statute, G. L. c. 40A, s. 6, eighth par., provides in rele-
--------------------------

freeze secured when a plan was filed initially, nor will it extend the freeze. It
would be anomalous to conclude that a zoning freeze terminated where, as here, a
developer must refile a plan (perhaps the same plan) because approval of the plan
was rescinded, while a developer who chooses to submit one or more different
plans continues to have the protection of the zoning freeze. See Chira v.
Planning Bd. of Tisbury, 3 Mass. App. Ct. 433, 439 (1975).

424 Mass. 71                                                            Page 77

vent part that "[i]n the event that any lot shown on a plan endorsed by the
planning board is the subject matter of any appeal or any litigation, the
exemptive provisions of this section shall be extended for a period equal to that
from the date of filing of said appeal or the commencement of litigation,
whichever is earlier, to the date of final disposition thereof, provided final
adjudication is in favor of the owner of said lot."

       The board argues that Heritage should not have the benefit of the extension
because the Land Court declined to reach the issue, and Heritage did not cross
appeal from any part of the judgment of the Land Court. We disagree. In Cape Ann
Land Dev. Corp. v. Gloucester, 371 Mass. 19, 23 n.5 (1976), we considered whether
the failure to ask for an extension of the zoning freeze during trial precluded
an extension at a later phase of litigation. We noted there that at the time the
judgment was entered, more than one year of the zoning freeze remained of the
three-year period and the question of the running of the period was "not
important." Id. By the time the matter was decided, the running of the statutory
period was significant, and this court ordered that the amended judgment be
revised to reflect the suspension of the running of the three-year period. Id. In
this case, when summary judgment was entered, on May 5, 1995, almost two years
remained of the eight-year zoning freeze, and the running of the statutory period
was then not significant. Now, the time remaining of the zoning freeze is
significant. It would be an empty victory for Heritage were we to affirm the
judgment of the Land Court and decline to give effect to the statutory protection
afforded by the Legislature for just these circumstances. Heritage is entitled to
an extension of the zoning freeze.

       We hold that the automatic rescission of an approval of a definitive
subdivision plan does not terminate a zoning freeze secured by G.L. c. 40A, s. 6.
We hold further that in this case the running of the statutory freeze shall be
extended for a period equal to the period from the date the complaint was filed
until the rescript is entered in the Land Court.

       The judgment of the Land Court is to be modified in accordance with this
opinion and, as so modified, is affirmed.

So ordered.

End Of Decision