UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-30143-MAP

| | |
|---|---|
| FRANK R. SAIA, individually and as Administrator of the FRANK R. SAIA DEFINED BENEFIT PENSION PLAN, LIMITED DIVIDEND CORPORATION OF WESTFIELD, and CITY VIEW COMMONS CONDOMINIUM TRUST,<br>　　　Plaintiffs<br>vs.<br><br>CITY OF WESTFIELD ZONING BOARD MEMBER (John and Jane Does #1-10), CITY COUNCIL MEMBERS (John and Jane Does #1-10), CHARLES KELLOGG, (former Inspector of Buildings of the City), DONALD C. YORK (Superintendent of Buildings), JAMES BOARDMAN (Community Development Director), DAN REARDON (Director of Public Health), PAUL J. CASEY (Assistant City Solicitor), and PETER A. MARTIN (Assistant City Solicitor), all Defendants named individually and in their official capacity,<br>　　　Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## **MEMORANDUM IN SUPPORT OF DEFEDANTS' MOTION TO DISMISS**

### **I. STATEMENT OF FACTS**

Solely for the purposes of the instant motion, the defendants accept as true the facts, as distinct from conclusions, contained in the plaintiff's complaint.

### **II. STANDARD OF REVIEW**

In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a Court must take well-pled factual allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiff.  See *Watterson v. Page,* 987 F.2d 1, 3 (1st Cir. 1993).  The Court, however,

393967

need not credit "bald assertions, unsupportable conclusions, and opprobrious epithets." See *Chongris v. Board of Appeals,* 811 F.2d 36, 37 (1st Cir. 1987). Dismissal under Rule 12 (b)(6) is only appropriate if the complaint, so viewed, presents no set of facts justifying recovery. See *Cooperman v. Individual, Inc.,* 171 F.3d 43, 46 (1st Cir. 1999).

### III. ARGUMENT

**A.  The Statute Of Limitations Has Expired As To All Claims Alleged In The Plaintiff's Complaint.**

By the terms of the plaintiff's complaint, he seeks to "challenge the constitutionality of the City of Westfield's . . . zoning scheme (including Ordinance 846, the special permit and the new zoning ordinance adopted in September, 1987) . . . and the City's enforcement action filed on October 5, 2000". See Plaintiff's Complaint, ¶ 1. The defendants submit that, by its plain language the complaint, on its face, is subject to dismissal under the statute of limitations.

**1.  Factual Allegations Common To All Claims.**

First, the defendants note that, as alleged in the plaintiff's complaint, the City's Zoning Ordinance 846 allowing for the issuance of the original Special Permit is dated July 16, 1981. See Plaintiff's Complaint, ¶ 19. To attempt to attack the validity of said ordinance in 2004 is bordering on absurd.

Moreover, as also noted by the plaintiff, the Special Permit pursuant to which he claims rights was issued on or about January 20, 1987 in accordance with the provisions of Ordinance 846, which, according to the complaint, was repealed in September, 1987. See Plaintiff's Complaint, ¶¶ 27-32.

The plaintiff obtained his first interest in the subject property by purchasing what has been referred to as Unit 18 on or about November 16, 1993 <u>after</u> the expiration of the time allotted to his predecessors in interest for completion of the project both in accordance with the

393967

Special Permit and Ordinance 846. He thereafter applied for and was denied a building permit for the purpose of completing Unit 18. The plaintiff appealed that denial pursuant to M.G.L. c 40A to the City of Westfield Zoning Board of Appeals, which upheld the denial on or about May 18, 1994. See Plaintiff's Complaint, ¶¶ 68-70. The plaintiff appealed that decision by filing suit in the Hampden County Superior Court on or about May 25, 1994. The defendants attach hereto and incorporate by reference a copy of the Civil Action Cover Sheet and Complaint filed in said action and respectfully request that this Court take judicial notice of the pleadings filed in the state court.[1]

> The Civil Action Cover Sheet filed by the plaintiff states as follows:
>
> Plaintiff applied for a special permit pursuant to G.L. c. 40A, S. 6 in local ordinance for alteration of non-conforming, pre-existing structure. Plaintiff was denied said permit and appealed to the defendant, which upheld the denial of the special permit. Plaintiff seeks judicial review as the plaintiff was improperly denied said permit in violation of G.L. c. 40A, S. 6 and local ordinance 1500.3, **and in violation of state and federal constitutions. . . .**
>
> **The ZBA has taken a valuable property without compensation.**

See Civil Action Cover Sheet filed in Hampden County Superior Court, Civil Action No. 94-749, a copy of which is attached hereto and marked as Exhibit A. (Emphasis supplied).

Additionally, there is a specific count contained in the 1994 complaint which alleges as follows:

> 17. The defendant, by improperly denying the plaintiff a special permit for the Unit 18 property, **has denied the plaintiff equal protection of the laws as guaranteed by the Fourteenth Amendment to the United States Constitution and Part I, Article 1 of the Constitution of the Commonwealth of Massachusetts.**
>
> 18. The defendant's **improper denial of a special permit for the Unit 18 property amounts to a regulatory taking of property without just**

---

[1] The defendants recognize that the Court has the option of converting this motion to one under Fed. R. Civ. P. 56 where documents are appended, but believes that the same is not necessary in light of this Court's ability to take judicial notice of pleadings filed in other courts. See Fed. R. Evid. 201.

393967

>    **compensation, in violation of the Fifth Amendment to the United States Constitution and Part I, Article 10 of the Constitution of the Commonwealth of Massachusetts.**

See Exhibit A.  (Emphasis supplied).

The plaintiff voluntarily dismissed this case, with prejudice in December, 1996.  See Plaintiff's Complaint, ¶ 70.

Further, the defendant, City Solicitor Peter Martin, documented the City's position with regard to the status of Ordinance 846, specifically as it relates to City View Commons by way of correspondence dated January 28, 1994.  See Plaintiff's Complaint, ¶ 41.

Some three years thereafter, again, fully aware of the position of the defendants in connection with the status of the City View Commons, the plaintiff acquired his interests in the remaining units.  See Plaintiff's Complaint, ¶¶ 66-72.

The enforcement action about which the plaintiff complains was filed on October 5, 2000.  See Plaintiff's Complaint, ¶ 86.

Suit was filed herein on August 4, 2004 and served on or about November 29, 2004.

> i. **As To 42 U.S.C. § 1983.**

Claims under 42 U.S.C. § 1983 are subject to a three year statute of limitations.  See *Doty v. Sewall,* 784 F.2d 1, 11 (1st Cir. 1986).  The statute begins to run "upon the invasion of the plaintiffs' interests."  *Gilbert v. Cambridge,* 932 F.2d 51, 57 (1991).  More specifically, in a § 1983 case concerning the unlawful taking of property, the statute of limitations begins to run on the date of the wrongful appropriation.  *Altar Corp. v. Pesquera de Busquets,* 769 F.2d 30, 32 (1st Cir. 1985).  Abrogated on appeal by *Carreras-Rosa v. Alves-Cruz,* 127 F.3d 172 (1st Cir. 1997).

The Plaintiff's Complaint specifically alleges that the "enactment and enforcement of the City's Zoning Schemes, including Ordinance 846, Article IV, *Rural Residential District,* and the Special Permit) and the Enforcement Action" are the activities which allegedly result in the

393967

taking in violation of law. See Plaintiff's Complaint, ¶ 106. More specifically, ¶ 108 of the Plaintiff's Complaint articulates the acts which allegedly resulted in the wrongful appropriation. That paragraph states as follows:

> 108. As a result of their own action, including Defendants i) denial of permits to complete the construction of City View Commons for single-family structures and uses that were validly permitted by the City and constructed in reliance upon such permits, ii) enforcement of a repealed Ordinance 846, including the five-year Construction Deadline, outside the statute of limitations for validly permitted uses, iii) claim that it has outlawed condominium ownership which it repeatedly mislabels as a "use" to advance its claim and for which it has no authority to regulate the form of ownership, iv) denial of building permits to complete the project properly begun within the time limits of M.G.L. c. 40A §§ 6 and 9, and in harmony with the City's current zoning ordinance, and v) objective to have the property leveled by Plaintiffs without just compensation, rezoned and developed by a developer other than Plaintiffs, *and* in violation of clearly established law, the City's Zoning Scheme and its Enforcement Action along with its systemic denial of building permits constitute government action and acts of lawlessness that are impossible to relate to any legitimate government objectives.

It is thus clear, by the terms of the plaintiff's own complaint that the actions which resulted in the alleged wrongful appropriation all occurred well in excess of three years prior to the filing of this case.

Again, it is indisputable that the plaintiff knew or should have know of the existence of Ordinance 846 and the repeal thereof prior to his original purchase of Unit 18 on November 16, 1993. See Plaintiff's Complaint, ¶ 66. The plaintiff admits knowledge of the City's position as of January 28, 1994, as alleged in paragraph 68 of his complaint, and, at the very latest, May 18, 1994, the date of the denial of the permit sought in connection therewith. See e.g., *Gilbert, supra,* 932 F.2d at p. 57.

Perhaps more importantly, the Complaint alleges that the plaintiff not only knew of the City's position but availed himself of the opportunity to advance the identical allegations as set forth in this complaint approximately <u>10 years</u> prior to the institution of this litigation.

393967

That the plaintiff chose, in the face of this knowledge, to subsequently obtain additional interests in City View Commons does not afford him the opportunity to extend the statute of limitations with regard to his claims. Even assuming one were to look at the last date of purchase as alleged, the plaintiff himself acknowledges that this occurred on October 29, 1999 in excess of three years prior to the filing of this litigation. See Plaintiff's Complaint, ¶ 72.

The plaintiff also alleges that the filing of the enforcement action in the Hampden County Housing Court on October 5, 2000, somehow provides him with the basis for this litigation. Again, however, he proffers no explanation whatsoever as to why he should be allowed to pursue claims in this Court in excess of three years after the filing of said enforcement action. In fact, in a hearing before the Housing Court in connection with identical claims the plaintiff attempted to file therein, the plaintiff admitted, by and through counsel, that the statute of limitations would preclude him from pursuing the very claims which he filed herein.[2]

    ii.  **As To The Massachusetts Civil Rights Act.**

The statute of limitations for claims brought pursuant to the Massachusetts Civil Rights Act, M.G.L. c. 12, § 11I *et seq.* is three years. See M.G.L. c. 260, § 5B. The same arguments as set forth above apply with equal force as to those claims.

**B.** *Res Judicata* **Mandates Dismissal Of This Action.**

As noted above, a Stipulation of Dismissal with Prejudice was filed in the Hampden County Superior Court in connection with an action filed by the plaintiff in 1994 alleging, *inter alia,* violations of M.G.L. c. 40A, and the State and Federal Constitutions. It is well settled under both state and federal law that a voluntary Stipulation of Dismissal with Prejudice operates

---

[2] The defendants attach hereto and mark as Exhibit B the sealed tape recording of the hearing before the Housing Court.

393967

as a final adjudication on the merits of the claims. *Lawlor v. National Screen Service Corp.,* 349 U.S. 322, 327 (1955); *Bagley v. Moxley,* 407 Mass. 633, 637 (1990).

Further, the doctrine of claim preclusion bars further litigation of all matters that "were or should have been adjudicated in the action." *Heacock v. Heacock,* 402 Mass. 21, 23 (1988). As noted by the *Bagley* Court:

> The gravamen of the plaintiffs' complaint in both *Bagley II* and *Bagley III* was the same; the plaintiffs claimed ownership of the disputed land. Because this was the primary issue in dispute, it was incumbent on the plaintiffs to present to the court in *Bagley II* all of the legal theories on which they based their claim of ownership. The plaintiffs were not entitled to pursue their claim of ownership through piecemeal litigation, offering one legal theory to the court while holding others in reserve for future litigation should the first theory prove unsuccessful. Claim preclusion applies "even though the claimant is prepared in a second action to present different evidence or legal theories to support his claim." *Heacock v. Heacock,* 402 Mass. 23, 520 N.E.2d 151. This is so because "the party to be precluded has had the incentive and opportunity to litigate the matter fully in the first lawsuit."
>
> Were we to allow the plaintiffs' claim to continue, we would have to turn a blind eye to "[c]onsiderations of fairness and the requirements of efficient judicial administration [which] dictate that an opposing party in a particular action as well as the court is entitled to be free from continuing attempts to relitigate the same claim." *Wright Mach. Corp. v. Seaman-Andwall Corp.,* 364 Mass. 683, 688, 307 N.E.2d 826 (1974). This we will not do.

*Bagley v. Moxley, supra,* at 638.

It is, thus, clear that the Stipulation of Dismissal with Prejudice entered in the 1994 litigation mandates dismissal of this case.

C.    **The Abstention Doctrine Mandate Dismissal Of This Action.**

It is the position of the defendants that the abstention doctrine established by *Younger v. Harris,* 401 U.S. 37 (1971), and its progeny, mandate dismissal of this action. The abstention doctrine initially established in *Younger* and later extended in *Huffman v. Pursue, Ltd.,* 420 U.S. 592 (1957), and *Trainor v. Hernandez,* 431 U.S. 434 (1977), admonishes the federal courts, with limited exceptions,to refrain from interfering in ongoing state court litigation. *Maymo-Melendez*

393967

*v. Alvarez-Ramirez,* 364 F.3d 27, 31 (1st Cir. 2004). It has long been held that the federal courts "do not review state court civil proceedings under the guise of the Civil Rights Act." *Fortune v. Mulherrin,* 533 F.2d 21, 22 (1976). Stated differently:

> A complaint under the Civil Rights Act does not provide the springboard for an unhappy state litigant to raise his federal claims *de novo* in the federal court.

*PI Enterprises, Inc. v. Cataldo,* 457 F.2d 1012, 1015 (1972).

The identical claims which the plaintiff seeks to litigate in this case have already been determined by the state court in which the enforcement action is presently pending. The state court has already ruled in favor of the City of Westfield on the viability of Ordinance 846 which the plaintiff seeks to collaterally attack herein, explicitly finding that "the Special Permit expired and the rights granted pursuant thereto lapsed as of July 8, 1991". The Court's Memorandum and Order on Defendants' Motion for Summary Judgment is attached hereto and marked as Exhibit C.[3]

To the extent a state court appeal exists, this Court must necessarily abstain from hearing the plaintiff's claims. As recently noted in this district, "'once a state judicial proceeding [has] begun,' *Younger* requires the 'exhaustion of state judicial remedies' even though a final state judgment would likely preclude any new federal lawsuit." *John v. Board of Bar Overseers,* 324 F. Supp. 2d 276, 285 (D. Mass. 2004), *quoting, Maymo-Melendez v. Alvarez-Ramirez,* 364 F.3d at 34-35.

The application of the foregoing doctrine mandate dismissal of the plaintiffs' complaint in its entirety or, minimally, requires abstention by this Court until such time as a final determination has been made by the state court on the matters pending therein.

---

[3] The defendant in the Hampden County Housing Court case is the plaintiff herein.

393967

**D.    The Substantive Allegations Of Each Claim Cannot Withstand A Motion To Dismiss.**

To the extent that any of the plaintiff's claims survive the foregoing arguments, the same must be dismissed on substantive grounds.

**1.    Claims Under § 1983.**

It is beyond dispute that 42 U.S.C. § 1983 does not, in and of itself, create substantive rights. Rather, it simply provides a vehicle by which claims may be brought for alleged violations of rights secured by the United States Constitution. To proceed with a claim under 42 U.S.C. § 1983, a plaintiff must first establish that a defendant is acting under color of state law. The plaintiff must next prove that the alleged wrongful conduct resulted in a deprivation of rights secured by the United States Constitution or federal law. Most important in this regard, mere violations of state law do <u>not</u> create constitutional claims. *Creative Environments, Inc. v. Estabrook,* 680 F.2d 822 (1st Cir. 1982).

While under very limited circumstances land use claims have been allowed to proceed under 42 U.S.C. §1983, they have done so only where there are specific constitutional violations alleged. Categories into which those violations fall include regulatory takings, see, *Agins v. City of Tiburon*, 447 U.S. 255 (1980); *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992); claims relating to procedural or substantive due process, see, *Chiplin Enterprises, Inc. v. City of Lebanon*, 712 F.2d 1524, 1527 (1st Cir. 1983); *Creative Environments v. Estabrook, supra*; see also, *Amsden vs. Moran*, 904 F.2d 748 (1st Cir. 1990), and claims wherein violations of equal protection are alleged. See, *Cordeco Development Corp. v. Santiago Vasquez*, 539 F.2d 256 (1st Cir. 1976). *Yerardi's Moody Street Restaurant & Lounge, Inc. v. Board of Selectmen of Town of Randolph*, 932 F.2d 89 (1st Cir. 1991); see also, *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000).

393967

      **i.**      **As To The "Taking" Claim.**

First, to the extent that the plaintiff has alleged a "taking," there is simply no basis upon which an allegation of regulatory taking can be sustained under the Fifth Amendment of the United States Constitution. The Fifth Amendment guarantees that private property shall not be "taken for public use, without just compensation." A violation of the Fifth Amendment may exist where a local government has actually taken physical possession of private property or through overregulation, commonly referred to as a "regulatory taking." The United States Supreme Court has articulated two scenarios in which a regulatory taking may exist. Such a taking may be found where the plaintiff is denied just compensation for the taking and either the government actions do not substantially advance legitimate state interests or denies the owner <u>all</u> economically viable use of the land. *Agins v. City of Tiburon,* 447 U.S. 255, 262-263 (1980); see also, *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003 (1992); *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency,* 535 U.S. 302 (2002).

Traditionally, the Court has been called upon to analyze the applicability of the Fifth Amendment to regulatory takings where the regulatory action at issue occurred <u>after</u> the plaintiff had purchased the subject property. Here, as meticulously detailed by the plaintiff in his complaint, the change in the status of the land occurred <u>prior</u> to the purchase by the plaintiff of any interest in City View Commons. The plaintiff thus knowingly purchased the property aware of the City's position with regard to the development thereof and the applicability of the ordinance thereto. Under such circumstances, a "taking" cannot be deemed to have occurred. See *Leonard v. Brimfield,* 423 Mass. 152, 155, *cert. denied,* 519 U.S. 1028 (1996). It must also be noted that there is no effort to "take" away or regulate the rights afforded pursuant to the

393967

terms of the Special Permit as originally issued. Rather, the holders of said permit simply failed to exercise those rights in a timely fashion.

> A property owner cannot reasonably rely on an assumption that zoning will forever remain the same, and that the government will refrain indefinitely from valid changes in zoning to enhance the public interest…. Simply stated, a developer with designs on improving its property consistent with an existing zoning framework had best get its shovel into the ground. That the zoning change prevents the owner from exploiting the investment potential of the property to the fullest does not make it a taking."

*Zanghi v. Bedford,* 61 Mass. App. Ct. 82, 88 (2004).

Moreover, the plaintiff continues his full ownership rights in the land in question and is in the process of availing himself of the judicial system in order to determine whether he will be permitted to use the land in the manner he desires. The defendants submit that, to the extent that it is still not known whether the plaintiff will, under state law, be entitled to develop the land as he desires, and/or whether there is other economically viable use of the property available to the plaintiff, no allegation of regulatory taking can be sustained. See *Lakeside Builders, Inc. v. Planning Board of Franklin,* 56 Mass. App. Ct. 842, 851 (2002). In light of the foregoing, there is nothing to support a cause of action that the acts complained of constitute a regulatory taking under the Fifth and/or Fourteenth Amendments to the United States Constitution.[4]

      **ii.**    **As To Procedural And Substantive Due Process.**

With regard to denial of procedural and substantive due process, again, the plaintiff's Complaint must fail. As to both, proof of denial of due process in connection therewith is lacking.

In *Creative Environments, Inc. v. Estabrook*, the plaintiff alleged:

---

[4] The defendants reserve the right, should the Court desire, to brief the Fifth Amendment arguments under either a categorical or "Pre-Lucas" analysis. The defendants submit that they should not be put to this burden until such time as the Court has ruled on the preliminary dispositive theories set forth *supra*.

393967

> [t]hat its right to due process was violated by the Town's overall 'distortion of the existing statutory and regulatory scheme'. <u>This argument rests not on any failure to have provided adequate procedures, but on the alleged arbitrary misapplication of state law resulting, plaintiffs assert, in denying them their 'right' to conduct a legitimate business and make a profit</u>.

*Creative Environments, Inc. vs. Estabrook*, 680 F.2d at 831. [Emphasis supplied.]

After assuming that the "town engaged in adversarial and even arbitrary tactics," the First Circuit rejected the foregoing claim, noting that, if such a claim were to be accepted:

> any hope of maintaining meaningful separation between federal and state jurisdiction in this and many other areas of law would be jettisoned. Virtually every alleged legal or procedural error of a local planning authority or zoning board of appeal could be brought to a federal court on the theory that the erroneous application of state law amounted to a taking of property without due process. Neither congress nor the courts have, to date indicated that section 1983 should have such a reach.

*Id.*

Further distinguishing the alleged wrongful acts of the defendants, the Court noted "<u>even if it could here be shown that the Board Members strayed willfully</u> from the 'proper ends of the governmental duties' <u>their digression was not of 'constitutional portions'</u>." *Id.* at 832, n.9 [citations omitted]. See also, *Freeman v. Planning Bd. of West Boylston*, 419 Mass. 548 555-556 (1995); *Chiplin Enterprises, Inc. v. City of Lebanon*, 712 F.2d at 1526-1529 (collecting relevant cases and stating that dismissal under Fed. R. Civ. P. 12(b)(6) proper in action by local planning Board alleging similar constitutional violations).

Finally, the *Estabrook* court noted that the claim, as alleged, and taken in the light most favorable to the plaintiff was:

> too typical of the run of the mill dispute between a developer and a town planning agency, regardless of [CEI's] characterizations of it and of the defendant's alleged mental states, to rise to the level of a due process violation. The authority cited by [CEI], as well as other cases, all suggest that the conventional planning dispute - at least when not tainted with fundamental procedural irregularity, racial animus, or the like - which takes place within the framework of an admittedly valid state subdivision scheme is a matter primarily of concern to the state and does not

393967

implicate the constitution. <u>This would be true even were planning officials to clearly violate, much less 'distort' the state scheme under which they operate</u>.

*Creative Environments, Inc. v. Estabrook,* 680 F.2d at 833. [Emphasis added.]

The laws of the Commonwealth, notably M.G.L. c. 40A, provide a mechanism for appealing the decisions of which the defendants complained. The plaintiff has availed himself of these rights. The foregoing analysis clearly precludes the due process claims from proceeding in the instant action, particularly where the plaintiff clearly has remedies under state law to vindicate his claims absent resort to allegations of federal constitutional violations. See *Chiplin Enterprises, Inc. v. City of Lebanon,* 712 F.2d at 1527.

   **iii.**  <u>**As To The Equal Protection Claim**</u>**.**

A viable equal protection claim requires proof of two elements: (1) that a plaintiff was treated differently than others similarly situated, and (2) that such a difference was based on an impermissible consideration. See *Macon v. Town of Wakefield,* 277 F.3d 1, 3 (1st Cir. 2002) citing, *Rubinovitz v. Rogato,* 60 F.3d 906, 909-910 (1st Cir. 1995) and *Yerardi's Moody St. Rest. & Lounge, Inc. v. Board of Selectmen,* 878 F.2d 16, 21 (1st Cir. 1989). While the United States Supreme Court has recently held that a distinction between similarly situated individuals that is "irrational and wholly arbitrary" may be actionable, not a single fact alleged by the plaintiff supports such a distinction in this case. *Village of Willowbrook v. Olech,* 528 U.S. 562, 565 (2000). Quite to the contrary, as noted above, the change in Ordinance 846 occurred long before the plaintiff purchased any interest in City View Commons. There is not a single fact alleged to indicate that the plaintiff herein has been treated differently than those "similarly situated." Nor can the actions of the defendants as alleged in the complaint be deemed "irrational and wholly arbitrary", particularly in light of the state court's order in connection therewith.

393967

Furthermore, the *Wakefield* court noted that the First Circuit has been extremely reluctant "to entertain equal protection challenges to local planning decisions" stating that "every appeal by a disappointed developer from an adverse ruling by a local Massachusetts planning board necessarily involves some claim that the board exceeded, abused, or "distorted" its legal authority in some manner, often for some allegedly perverse (from the developer's point of view) reason." *Macone v. Town of Wakefield,* 277 F.3d at 10. The *Wakefield* court continued:

> "It is not enough simply to give these state law claims constitutional labels such as 'due process' or 'equal protection' in order to raise a substantial federal question under § 1983." *Id., citing Creative Env'ts, Inc.,* 680 F.2d at 833; *see also Néstor Colón Medina,* 964 F.2d at 44-45, *citing Vill. of Belle Terre v. Boraas,* 416 U.S. 1, 12, 94 S. Ct. 1536, 39 L.Ed.2d 797 (1974) (Marshall, J., dissenting) ("If disgruntled permit applicants could create constitutional claims merely by alleging that they were treated differently from a similarly situated applicant, the correctness of virtually any state permit denial would become subject to litigation in federal court. Limiting such claims is essential to prevent federal courts from turning into 'zoning board[s] of appeals.' ").

*Macone v. Town of Wakefield,* 277 F.3d at 10.

The defendants submit that the equal protection claims are nothing more than local land disputes necessitating dismissal theory.

### iv.  As To The Defendant, City Of Westfield.

As to the claims under 42 U.S.C. § 1983, it is settled that a municipality cannot be liable on a theory of *respondeat superior*, but, rather, may only be liable upon allegations and proof of impermissible policy or custom. *Monell v. Dept. of Social Services,* 436 U.S. 658, 690-695 (1978). The defendant, City, submits that the 99 paragraph complaint, does not allege facts in support of a claim of any policy or custom of the City in violation of the law. In the absence of any allegation that the City employed an unconstitutional municipal policy or custom, there can be no municipal liability under § 1983. See *Monell v. Dept. of Social Services,* 436 U.S. 658, 690-695 (1978); *Baron v. Hickey*, 242 F. Supp. 2d 66, 75-76 (D. Mass. 2003).

393967

Based upon the foregoing, to the extent that the complaint purports to allege federal constitutional violations against the municipality, judgment for the defendant, City of Westfield, must enter.

Nor is there any law in the Commonwealth or in this Circuit which authorizes a claim pursuant to M.G.L. c. 12, § 11I against a municipality and, as such, to the extent that such claims are deemed to be alleged, judgment for the defendant, City of Westfield, must enter.

  v. **As To The Individual Defendants**.

  a. **Qualified Immunity Precludes The Imposition Of Liability**.

In addition to the foregoing, the individual defendants submit that they are protected by qualified immunity which is intended to shield public officials in the course of performing discretionary acts "from civil damages liability as long as their actions could reasonably have been thought constant with the rights they are alleged to have violated." *Anderson v. Creighton,* 483 U.S. 635, 638 (1987). The qualified immunity defense is favored early in the proceedings so that costs and expenses of trial can be avoided where the defense is dispositive. See, *Saucier v. Katz,* 533 U.S. 194, 200 (2001).

Qualified immunity shields government officials from liability for civil damages when their actions "do not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). Qualified immunity provides protection to "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986). The relevant question, then, is "whether a reasonable official could have believed his actions were lawful in light of

393967

clearly established law and the information the official possessed at the time of his allegedly unlawful conduct." *McBride v. Taylor,* 924 F.2d 386, 389 (1st Cir. 1991).

Additionally, to the extent that the facts alleged fail to articulate any cause of action cognizable under state or federal law, the claims against the individual defendants must be dismissed.

The decision by the state court renders it clear that the actions of the individual defendants were reasonable and they are, therefore, entitled to immunity.

    **b.**    **The Defendants, Peter Martin and Paul J. Casey, Are Entitled To Absolute Immunity.**

The plaintiff in his complaint acknowledges that, at all times material hereto, the defendants, Peter Martin and Paul J. Casey, were acting in their capacity as the Solicitors of the City of Westfield. See Plaintiff's Complaint, § 15. It is axiomatic that the defendant, Peter Martin, did not owe any duty to the plaintiff. See *Williams v. Ely,* 423 Mass. 467 (1997); *Kurker v. Hill,* 44 Mass. App. Ct. 189-190 (1998). Thus, any assertion that Mr. Martin was under any obligation to the plaintiff cannot be supported.

To the extent that the complaint is read to allege wrongdoing relating to statements made or actions taken during the course of litigation, absolute immunity applies. See *Doe v. Nutter McClellan & Fish,* 41 Mass. App. Ct. 137, 139-140 (1996). Even if statements made by an attorney are uttered with maliciousness or in bad faith, the privilege in the context of litigation is absolute and protects an attorney from any civil liability. *Id.*, citations omitted. See also, *Frazier v. Bailey,* 957 F.2d 920, 932 (1st Cir. 1992) (claims for intentional infliction of emotional distress, violation of the Massachusetts Civil Rights Act and others are barred by immunity).

393967

> **2.    State Law Claims.**
>
>    **i.    As to Violation of Massachusetts Civil Rights Act.**

It is beyond dispute that a claim brought pursuant to M.G.L. c. 12, § 11I requires proof that the alleged civil rights violation occurs by way of "threats, intimidation, or coercion." See M.G.L. c. 12 § 11I; *Bally v. Northeastern Univ.*, 403 Mass. 713, 717 (1989); *Bell v. Mazza*, 394 Mass. 176 (1985). The courts have defined 'threat' as "act of language by which another is placed in fear of injury or damage"; 'intimidation' as "creation of fear to compel conduct"; and 'coercion' as "the active domination of another's will." See, *Delaney v. Chief of Police of Wareham*, 27 Mass. App. Ct. 398, 409 (1989). The defendants submit that the plaintiff cannot point to a single case to support the allegation that the acts, even assuming they occurred as alleged, rise to the level of threats, intimidation, or coercion. Quite to the contrary, the Courts have consistently held that actions by municipal officials, such as those alleged herein, do not constitute such acts. See e.g., *Freeman v. Planning Bd. of West Boylston*, 419 Mass. 548 555-556 (1995) (where planning board exceeded its authority by seeking a concession from the landowner, there was no "coercion"); *Murphy v. Town of Duxbury*, 40 Mass. App. Ct. 513, 519 (1996) (adverse administrative actions denying the plaintiff a right to build on property does not qualify as "threats, intimidation or coercion"). Again, the state court findings mandate dismissal of these claims.

> **b.    As To Count I "Violation Of Vested Rights Under c. 40A, §§ 6 or 9.**

The plaintiff purports to allege that the defendants have breached their authority to enact or enforce a construction deadline citing some global statutory protection under c. 40A, §§ 6 and/or 9. The plaintiff fails, however, to set forth a civil cause of action cognizable in the Commonwealth and/or provided for under this statute as cited.

393967

Additionally, as is acknowledged in the 99 paragraphs of facts as set forth in the plaintiff's complaint, the plaintiff has availed himself of the provisions of M.G.L. c. 40A and/or the other laws of the Commonwealth on more than one occasion rendering this action duplicative and/or outright barred.

## CONCLUSION

Based upon all of the foregoing, the defendants respectfully request that the Plaintiff's Complaint be dismissed, and that they be awarded attorney's fees and costs and for such other and further relief as this Court deems just and proper.

> THE DEFENDANTS
> CITY OF WESTFIELD, CHARLES
> KELLOGG, DONALD C. YORK, JAMES
> BOARDMAN, DAN REARDON, PAUL J.
> CASEY AND PETER A. MARTIN
>
>
> By    */s/ Nancy Frankel Pelletier*
> Nancy Frankel Pelletier, Esq., of
> Robinson Donovan, P.C.
> 1500 Main Street, Suite 1600
> Springfield, Massachusetts 01115
> Phone (413) 732-2301  Fax (413) 785-4658
> BBO No.:  544402

393967