
RECEIVED
APR 10 2003
LAW

COMMONWEALTH OF MASSACHUSETTS
HOUSING COURT DEPARTMENT OF THE TRIAL COURT

| | |
|---|---|
| HAMPDEN, SS | WESTERN DIVISION<br>Civil Action No. 00-CV-0501A<br>and<br>Civil Action No. 02-CV-0045A |

CITY OF WESTFIELD, by and )
through its Superintendent of )
Building as Building Commissioner )
and Zoning Enforcement Officer )
and it's Board of Health, )
    Plaintiff )
 )
vs. )
 )
FRANK R. SAIA, individually )
and as Administrator of the )
FRANK R. SAIA DEFINED )
BENEFIT PENSION PLAN, )
LIMITED DIVIDEND )
CORPORATION OF WESTFIELD )
CITY VIEW COMMONS )
CONDOMINIUM TRUST, )
DAVID ALLEN and GENE SPEAR, )
    Defendants. )

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants, Frank R. Saia, individually and as Administrator of the Frank R. Saia Defined Benefit Pension Plan, Limited Dividend Corporation of Westfield and City View Commons Condominium Trust seek summary judgment to be entered against the plaintiff City of Westfield on the plaintiff's claim, as set forth in its amended complaint, for declaratory judgment and injunctive relief. After submission of memoranda from the moving parties

defendant[1] (hereinafter "defendants") and the City, including defendants' memorandum in reply to the City's opposition to summary judgment, a hearing was held before the Court on December 20, 2002. For the following reasons, defendants' motion is DENIED and a partial summary judgment shall be entered against the defendants and for the City.

In summary, the dispute centers on the efforts of the defendants to complete a condominium development that the City contends is an illegal use under the terms of the Westfield Zoning Ordinance. The parties agree on certain material facts:

1. On July 8, 1986 John Liquori and Thomas Liquori filed application with the proper City authorities for a special permit to allow the development of a condominium to be located on City View Road in Westfield, Hampden County, Massachusetts.

2. City of Westfield Ordinance Number 846 ("Ordinance 846"), an amendment to the City Zoning Code, was in effect on July 8, 1986 and required the grant of a special permit by the Westfield Planning Board in order to develop the condominium in question.

3. On January 20, 1987, the Westfield Planning Board issued a decision in which it approved the special permit application of John Liquori and Thomas Liquori for the property located on City View Road and granted, with conditions, a special permit ("Special Permit") for the development of the condominium with twenty-three (23) detached single family structures. The Planning Board reserved the authority to alter the Special Permit to allow up to 25 such structures if the applicant met certain requirements.

4. At some point in time after the grant of the special permit, John Liquori and Thomas Liquori sold the lands and all development rights to City View Commons, Inc. (CVCI),

---

[1] Two named defendants, Gene Spear, a tenant of the Frank R. Saia Defined Benefit Pension Plan and David Allen, an owner of certain condominium units for whom Defendant Saia claims to act did not participate in the summary judgment proceedings and neither has filed an answer to the City's complaint.

2

a corporation incorporated under the laws of the Commonwealth of Massachusetts on August 10, 1987.

5. In September, 1987 the City adopted a new codification of its zoning ordinance, repealing its former version, including Ordinance 846, in its entirety. Allowance of condominiums upon grant by the Planning Board of a special permit was deleted. The locus of the condominium changed from Agricultural District and became a Rural Residential District. Condominium development was not an allowed use in the Rural Residential District.

6. On June 9, 1988 CVCI recorded the Master Deed of the City View Commons Condominium at the Hampden County Registry of Deeds at Book 6861, Page 520 and following. The Master Deed at Section 8.2 reads as follows:

> The undivided interests as set forth in SCHEDULE B annexed hereto are based upon the Land submitted as set forth in Schedule A and twenty-three (23) Buildings and all Improvements constructed or to be constructed thereon. The undivided interests of twenty-five (25) proposed Units at the point of completion of both contemplated Phases are as set forth in SCHEDULE C annexed hereto and incorporated herein by reference. Upon the addition to the Condominium of the subsequent Phase, the undivided interest of each unit shall decrease proportionately ....

7. CVCI conveyed unit development rights, which constituted the "footprints" of the building structures, to various sub-developers on which the sub-developers were to build the single family structures each of which would have an undivided interest in the infrastructure and common areas of the condominium. CVCI was responsible for building the infrastructure.

8. In June, August and September, 1988 certain sub-developers or their agents applied for and received building permits from the City Building Department to construct the contemplated single family structures.

9. One structure, Unit 4, received a certificate of occupancy from the City Building Department on December 27, 1989.

10. Construction ceased. CVCI was dissolved on December 31, 1990 under the provisions of G.L. c. 156B, §101.

11. On November 16, 1993 the Frank R. Saia Defined Benefit Pension Plan acquired, via a foreclosure deed, City View Commons Unit 18. That was the first time that Frank R. Saia or any instrumentality of or related to Frank R. Saia acquired a property interest in City View Commons.

12. As of November 16, 1993, thirteen (13) structures (including Unit 4) existed at City View Commons and concrete foundations for two (2) others had been poured. A paved access road existed from City View Road to the structures. No unit except Unit 4 had a system of sewage disposal.[2]

13. As of the date of filing the amended complaint, Unit 4 was occupied by a tenant, Gene Spear, a defendant named in the amended complaint. The condominium was in substantially the same state of completion as it was on November 16, 1993.

14. By application for building permit dated September 21, 2001, submitted to the City Building Department and later denied by Donald C. York, as Building Commissioner of the City, Frank Saia sought to do certain work on the structures located at the condominium.

In opposing the motion, the City argues that the focus of defendants' motion is too narrow to dispose of all three claims as stated in the City's amended complaint and in the defendants' statutory appeal of the City's denial of the building permit that constitutes Case No. 02-CV-0045A which, by order of the clerk-magistrate, was previously joined with the City's case. Defendants argue that the resolution of one issue, namely, whether a time limit applied to

---

[2] Whether a City approved septic system design for the condominium exists is a point of contention which need not be addressed for purposes of this motion. Unit 4 had, whether approved or not, a private on site sewage disposal system (septic tank). The remaining 12 structures had, in fact, no means of sewage disposal.

4

completion of the condominium, is dispositive. While the Court acknowledges that there are matters outside the scope of defendants' motion, the Court recognizes that the validity of the construction deadline is central and the Court has been provided sufficient evidence and argument to address that one issue conclusively.

Throughout defendants' course of dealing with the City, the City has maintained that the right of defendants, or any person, to construct the condominium in question exists, if at all, by virtue of the special permit granted by the Planning Board under City Ordinance 846, now repealed but in effect in January, 1987 when the Planning Board issued the Special Permit. That Ordinance contains within it, at section 4.J., the following wording:

> If the condominium project is to involve the phasing overtime of individual buildings within the project being proposed, then a firm schedule of phasing, including construction dates and projected owner "turnover" times, is required. If the owner fails to show reasonable progress towards the completion of the project, then the Planning Board reserves the right to call a hearing to consider revocation or suspension of the Special Permit. The project must be completed within five (5) years from date of application for the Special Permit.

The City maintains that as the condominium was not completed by July 8, 1991 (five years from the date John and Thomas Liquori filed application for special permit) the special permit was no longer in effect after that date. Thus, as of November 16, 1993, the first date upon which defendants acquired an interest in the property, defendants were bound by the terms of the September, 1987 zoning code, a code which provided that a condominium use was not an allowed use in the Rural Residential District into which the locus of the project was placed.

Defendants' counter that assertion by citation to Bernstein v. Chief Building Inspector, 52 Mass. App. 422 (2001). Defendants cite Bernstein for the proposition that:

> Where a developer anticipates completing work in stages, has begun construction within two years, and/or a substantial use has commenced, authority to complete the project continues absent express language to the contrary in the special permit.

Defendants read the Planning Board's January 20, 1987 decision setting forth the Special Permit as lacking an express completion date or construction deadline. Defendants further argue that i) any construction deadline, including the five year time limit contained in Ordinance 846, is an *ultravires* provision preempted by the terms of the Zoning Act, M.G.L. c. 40A, §9, which must be incorporated into every zoning ordinance and requires only that a substantial use be commenced or construction has begun for substantive rights to attach, ii) the time limit only applies to condominium projects to be built in "phases" and that City View Commons was not a phased community, and is inconsistent with other aspects of the City's zoning scheme which adopted the provisions of 40A, §9; and iii) the five year time limit violates M.G.L. c. 40A, §4 by conferring on the City broad and unguided discretion to determine whether or not a project is complete, and/or to delay or prevent, as here, the issuances of permits necessary to complete the project within the specified time frame contrary to the doctrine of SCIT, Inc. v. Planning Board of Braintree, 19 Mass. App. 101 (1984).

To a certain degree, the Court's determination of the issue presented requires interpretation of Ordinance Number 846. The court's primary task is to determine the legislative intent of the Westfield City Council when it enacted the ordinance. If the ordinance is clear on its face, no further interpretation is required. The final sentence of Section 4.J. of the Ordinance which states that "the project must be completed within five (5) years from the date of application for the Special Permit" is quite clear. Defendants argue that because the sentence is located in section 4.J. headed "Phasing" which specifies, in its first sentence, that projects proposed to be built "overtime" (sic) require a firm schedule of phasing, the five year time limit applies only to projects permitted as phased projects. Courts are required, when faced with ambiguity in statutory language, to interpret ambiguous provisions so as to avoid an

6

unreasonable result when the language is susceptible to a sensible meaning. The challenged provision should be interpreted so as to render the ordinance of which it is a part a consistent and harmonious whole. It would make no sense for the five year time limit to apply only to projects permitted as phased projects but to allow projects not designed or permitted as phased projects to be exempt from the five year time limit. Certainly the City officials required to apply and enforce this ordinance have consistently interpreted the ordinance as placing a five year time limit on construction and their reasonable interpretation is entitled to some deference from a reviewing court. Defendants' argument in this regard is further undercut by the facts. Although the Planning Board approved construction of 23 units, it left the door open for an expansion provided certain conditions were met. The Master Deed as recorded contemplates an initial phase of 23 buildings and a final project of 25 buildings with the undivided interests of the respective units in the common areas subject to two different schedules of undivided interests. The term "contemplated phases" is used in the Master Deed to distinguish between the 23 and 25 unit project.

    It is true that the Special Permit issued by the Planning Board on January 20, 1987 does not expressly state the construction deadline but it is also true that the Special Permit directly references the ordinance. Section 3.A. of the ordinance authorizes the Planning Board to grant waivers from the requirements of the ordinance. The Planning Board's January 20, 1987 grant of the special permit specifically states that no waivers were requested and none were granted. Given the opportunity to seek exemption from the five year time limit, the original permit applicants chose not to request a waiver.

    However, even were the five year time limit not implicit in the Special Permit as granted, the five year time limit of the ordinance would preclude construction after July 8, 1991 whether

referenced in the permit or not. Unlike a variance, a special permit is granted only for uses in conformity with the zoning district in which the locus is located. As noted by the Court in Bernstein, "a developer's mischief may run rampant absent the imposition of some time limits." Bernstein v. Chief Building Inspector, supra at 428. An indefinite warehousing of a permit for a project may create significant problems as the zoning changes to reflect the development of the community, with what was once a use harmonious with the district at the time allowed being contrary to the district when actually built years later after changes in zoning. Under section 9 of the Zoning Act, municipalities are granted discretion to determine the zoning districts and the types of uses subject to issuance of a special permit when crafting their zoning ordinance. Section 9 provides that special permits shall be subject to the provisions of the zoning ordinance. The special permit is, therefore, derivative of the ordinance. It is reasonable to conclude that in adopting the ordinance, the City Council, mindful of the potential for "developer's mischief," adopted the five year time limit as the maximum time it thought prudent for completion of the construction.

Defendants contend that as construction and a substantial use had commenced within two years after the permit was issued, section 9 of the Zoning Act requires a ruling that the special permit remains viable. Defendants point to that portion of section 9 that provides that:

> Zoning ordinances ... shall provide that a special permit granted under this section shall lapse within a specified period of time, not more than two years ... from the grant thereof, if a substantial use thereof has not sooner commenced except for good cause or, in the case of permit for construction, if construction has not begun by such date except for good cause.

The codified City ordinance in effect on January 20, 1987, and of which Ordinance No. 846 was a part, adopted two years as the time for lapse of the permit upon a failure to engage in substantial use or construction. It does not follow, however, that a limit of five years within which to finish the construction is contrary to or in any way inconsistent with the stated statutory

8

language as incorporated in the codified zoning ordinance. Section 9 states limitations on time or use are expressly allowed.

Reference to <u>Bernstein</u> does not assist defendants' argument. As of October, 2000, when the present case was initiated, it had been over 13 years since the special permit was issued. The <u>Bernstein</u> case presents a different picture. That was a case where the developers returned to the local authorities for modifications to their special permit and the local authorities made express determinations to grant allowances to the developer. In the present case, the developer neither sought nor was granted modifications. In <u>Bernstein</u>, the decision of the local authorities to decline to interfere with the building of the final phase of the condominium was upheld by Land Court and the Appeals Court in the face of a challenge by a condominium resident and the condominium trustees. The impetus behind the decision was the deference to, and validation of, the reasonable decision made by local officials regarding land use. The reasonableness of the local decision was manifest in light of the fact that, in <u>Bernstein</u>, there was an up and running, used and lived in condominium. In the present case, there is one unit that has had a tenant or tenants. Nobody has ever lived in any of the remaining units. The City View Commons Condominium Trust, is, to the extent it is viable at all, an instrumentality of the latest apparent developer, the Frank R. Saia Defined Benefit Pension Plan.

The <u>SCIT</u> case cited by defendants has no application to the facts of the present matter. The holding of <u>SCIT</u> is that a zoning ordinance may not require a special permit for all uses within a zoning district. The ordinance at issue does not.

For the foregoing reasons, defendants' motion for summary judgment is DENIED. The Court hereby enters a partial summary judgment for the plaintiff and, in so doing, hereby declares as a Judgement of the Court:

9

That notwithstanding the fact that construction had commenced at the condominium within two years after the Planning Board's issuance of a Special Permit on January 20, 1987, as the condominium was not completed within 5 years of the date of application, the Special Permit expired and the rights granted pursuant thereto lapsed as of July 8, 1991.

The Court does not reach the question of the status of the existing units.

ORDERED and ADJUDGED this 12ᵗʰ day of March, 2003.

*William H. Abrashkin*
William H. Abrashkin
First Justice

(Signed 4/8/0 nunc pro tunc to 3/12/03)

10