# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS
### WESTERN DIVISION

|  |  |
|---|---|
| FRANK R. SAIA, individually and as Administrator of the FRANK R. SAIA DEFINED BENEFIT PENSION PLAN, LIMITED DIVIDEND CORPORATION OF WESTFIELD, and CITY VIEW COMMONS CONDOMINIUM TRUST, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF WESTFIELD, ZONING BOARD MEMBERS (John and Jane Does #1-10), CITY COUNCIL MEMBERS (John and Jane Does #1-10), CHARLES KELLOGG, (former Inspector of Buildings of the City), DONALD C. YORK (Superintendent of Buildings), JAMES BOARDMAN (Community Development Director), DAN REARDON (Director of Public Health), PAUL J. CASEY (Assistant City Solicitor), and PETER A. MARTIN (Assistant City Solicitor), all Defendants named individually and in their official capacity, <br><br> Defendants. | Civil Action No. 04-30143-MAP |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Stephen V. Saia, Esq.
Law Offices of Stephen V. Saia
70 Old Cart Path Lane
Pembroke, MA 02359
(781) 826-8401

*Attorney for Saia Defendants*

## PRELIMINARY STATEMENT

Only the claims with respect to the Individual Defendants' conduct are before this Court. Plaintiffs' claims against the City have been asserted as a *Counterclaim* in the action filed in the Housing Court on October 5, 2000 ("Enforcement Action").  **Ex. 1.**

The Individual Defendants without any basis in law seek to condemn the same property interests that the City and its Zoning Board unanimously approved and created 17 years ago in January 1987 when the City issued a valid Special Permit for the construction 23 single-family homes on 25 acres in a condominium form of ownership and issued numerous valid building permits in 1988 in furtherance of the Special Permit.  **Ex. 1.**  The construction deadline and the Housing Court's order upholding that deadline *even if valid* (which it is not) still operates as a categorical and "as applied" taking without compensation of Plaintiffs' and *all* the condominium property interests at City View Commons, including other banks with security interests in the condominium units, resulting in the complete forfeiture of the investment in the property of over $2.0 million.  *Cpl.* ¶63. The City has no legitimate interest in issuing valid permits, inducing reliance on those permits, having the developers enter into irrevocable financial commitments for construction, and having banks mortgage those condominium interests only to have those property interests confiscated by the operation of a construction deadline resulting in the eviction of tenants, the loss of mortgaged collateral and destruction of the homes by subsequent bonafide purchasers who had nothing to do with the original project and who seek only to complete the homes as originally permitted by the City.  *See Wheeler*, *Acorn Ponds*, *infra.*

Finally, the *Complaint* has specific allegations related to the Individual Defendants responsible for authorizing and maintaining the Enforcement Action showing that the action has a malicious motive and an improper purpose directed at Mr. Saia to violate his property and equal protection rights, including economic coercion.  *Cpl.* ¶¶ 93, 94.

**ARGUMENT**

**A.    A Construction Deadline Violates Well-Established State and Federal Law.[1]**

The Enforcement Action is i) moot because the City repealed the construction deadline in September 1987, ii) predicated on a condition not expressly set forth in the Special Permit or a matter of public record, iii) contrary to well-established law statutory and decisional law from the SJC, the Appellate Division of Massachusetts, and Federal Law, and iv) patently time barred.

First, the Enforcement Action has no jurisdictional basis and is contrary to prior City policy which *repealed* Ordinance 846 in its entirety in September 1987 rendering the deadline, which is not a matter of public record in any document in the Hampden County Registry of Deeds, no longer applicable to the Special Permit and unenforceable.  A change or amendment to a zoning ordinance renders enforcement of the prior ordinance moot, and deprives the court of jurisdiction to hear the City's Enforcement Action.  *Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d, 1310 (11th Cir. 2000).  The change in the status of the land repeatedly referenced by Defendants *repealed* the condition in September 1987 *waiving* the onerous condition and granting the prior developers *more* rights. [2]  After September 1987, the condition no longer exists and cannot as Defendants contend continue to run for the limited purpose of expiring in 1991.  The Special Permit, however, remained valid and does not contain the condition.  The City issued Building Permits in 1988 in furtherance of the Special Permit and the prior developer acted on those permits without

---

[1]  As a preliminary matter, the City Council Members were served on November 29, 2004 at the City Council Members office at Westfield City Hall, 59 Court Street, Westfield, MA 01805.  **Ex. 2**.  They have not responded to the *Complaint* and are not represented by Attorney Pelletier.  The proof of service returned and filed with this court states the Deputy Sheriff was "unable to locate the City Council Members" at their offices and that an attorney at City Hall "would not accept service."  **Ex. 2**.  The attorney improperly rejected service on the City Council Members, even though service can be made by "leaving such copies at the office of the said entity with the person then in charge thereof."  Mass. R.Civ.Proc. 4(d)(5).  Plaintiffs request that this Court order them to accept service.

[2]  M.G.L. c. 40A §§ 6 and 9 "*provide a floor*" of protection.  Nothing prevents a city or town from providing *more generous protection to landowners* than is required by G.L. c. 40A § 6 [or § 9], so long as the local provision is consistent with the overall purpose and intent of the Zoning Act.  *Dona v. Town of Sutton*, Misc. Land Court Case No. 193324, (July 1, 1994).  *See also DeSalvo v. Chatis*, Misc. Land Court Case No. 149615 (1991), at 7 ("paragraph 4 of G.L. c. 40A § 6 '*provides only a floor* and... a municipality is *free to grant more liberal treatment* to the owner of a nonconforming lot'").  *Werner v. Board of Appeals of Harwich*, 2 Mass. App. Ct. 647 (1974).

regard to the repealed condition by commencing construction within the two year timeframe of M.G.L. c. 40A § 9 to prevent lapse of the Special Permit.  The prior developers did not warehouse or fail to exercise their rights, DM 11, they actively prevented lapse of the Special Permit by commencing construction within two years and investing over $2.0 million in the property in reliance on the permits.  Nonetheless, the *current* Individual Defendants without any jurisdictional basis whatsoever have proceeded to enforce a *repealed* law to terminate vested property rights.

Second, the decisions in *Heritage Park* and in *Cohasset Heights* court make the Housing Court's, court's order patently wrong.[3]  In *Heritage Park Dev. Corp. v. Town of Southbridge*, 424 Mass. 71 (1997), the SJC squarely holds that a construction deadline after the grant of final approval as here approval is void.  Chapter 40A affords broad protection to developers and "under our system of law a board *cannot act at the expense of a vested property right created by the legislature*." *Heritage Park*, 424 Mass. at 76.  (Emphasis added).  In *Cohasset Heights, LTD v. Zoning Board of Appeals of Cohasset*, 53 Mass. App. Ct. 116 (2001), the Appeals Court held that the *issuance* of special permit and *commencement of construction* under M.G.L. c. 40A § 9 (not completion) marks the beginning of protection as a prior non-conforming use.  Property rights vest and the Special Permit does not lapse.  *"Section 9 does not require that construction under a special permit, once commenced, be prosecuted continuously to completion; again, if the Legislature had wished to include such a requirement, it certainly knew how to do so."  Bernstein v. Eladio R. Gore*, Misc. Land Ct. No. 242005 (Jan. 12, 1999) (emphasis added).  Thus, the construction deadline for the vesting of property rights is *facially invalid* under state law.  The City cannot change the time period for the vesting of property rights from the commencement of construction within two years as guaranteed by the Legislature to completion of construction.  The construction deadline, *even* if it survived the City's *repeal* and remained incorporated by reference into the Special Permit, is void

---

[3]  Decisions by a state's highest and intermediate courts are controlling, and a federal court is not to disregard them unless it is convinced by other persuasive data.  *See West v. American Tel. & Tel. Co.*, 311 U.S. 223, 236-7 (1940).

under § 9, *Heritage Park*, *Cohasset Heights* and *Bernstein*. The City's has no authority to enact such a condition under the Home Rule Amendment, which requires that by-laws be consistent with the constitution and general laws of the state. Thus, Plaintiffs have protected property rights created by state law under the federal and state constitutions. *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).

Third, regardless of the alleged validity of the deadline or the Housing Court's order, the *six year statute of limitations has expired* making the Enforcement Action filed 13 years later on October 5, 2000 time barred. *See* M.G.L. c. 40A § 7 (six year statute of limitations applies to valid permits and commences upon the issuance of the permit); *Lord v Zoning Bd. of Appeals of Somerset*, 30 Mass. App. Ct. 226, 227 (1991). The six year statute of limitations **expired in January 1993** (six years after the issuance of the Special Permit in January 1987).

Fourth, under federal law, where the regulation amounts to a permanent physical occupation *or confiscation of property* previously authorized, there is a categorical taking. *Steinbergh v. City of Cambridge*, 413 Mass. 736, 741 (1992) *citing Wheeler v. City of Pleasant Grove*, 664 F.2d 99, 100 (5th Cir. 1981), *cert. denied*, 456 U.S. 973 (1982) (an ordinance that confiscated landowner's right to construct *previously authorized* apartment complex *is an unconstitutional categorical taking* for which the city must compensate, and that such an ordinance is also clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare); *Wheeler v. City of Pleasant Grove,* 896 F.2d 1347, 1351 (11th Cir. 1990) (same); *Acorn Ponds at North Hills v. Inc. Vill. Of North Hills*, 623 F. Supp. 688, 692 (E.D.N.Y. 1985) (finding that the issuance of numerous building permits to construct a condominium complex and that some of its buildings were completed and others were substantially started in accordance with the permits issued by the Village created a property right protected by the Constitution); *Maher v. City of New Orleans*, 516 F.2d 1051, 1065, *reh. denied*, 521 F.2d 815 (5th Cir.1975), *cert. denied*, 426 U.S. 905 (1976) (if a regulatory undertaking is confiscatory in nature, it is a taking). Like *Wheeler* and *Acorn Ponds*, the prior developers here received a valid Special Permit, Building Permits and a Certificate of

Occupancy from the City to construct the project authorized by the City. *Cpl* ¶27, 55-6, 62-3. The prior developers acted on these permits, invested $2.0 million is the project and commenced construction. These vested property rights are protected non-conforming uses under state law. Finally, the deadline *even if valid* as upheld by the Housing Court violates the Fifth Amendment because it results in the confiscation of Plaintiffs' property. *Cpl.* ¶43 (stating property rights "evaporate.").

Fifth, a purchaser is entitled to rely on the public records and that any restriction on the use or a condition that runs with the property must be recorded in the registry of deeds. *M. Dematteo Construction Co. v. Bd. of Appeals of Hingham*, 3 Mass. App. Ct. 446 (1975). This is true even where the landowner knows that the planning board had approved the plan based on those conditions, but the town failed to record the conditions. *Id.* at 459 *citing Pembroke v. R&P Realty Corp.*, 348 Mass. 120 (1964). Defendants should have recorded the restriction. Also, Chapter 40A § 7 is clear and requires strict compliance for notice. If Defendants wanted to prevent subsequent purchasers from relying on the repeal of an ordinance and the public record, they should have *filed and recorded* their action in 1991 when the Special Permit allegedly expired, and certainly before the statute of limitations expired in 1993.

Sixth, the opinion of the City solicitor in 1994, DM 5, is not the status of the law and landowners rely on it at their peril, especially here where his position is legally untenable. *Building Inspector of Malden v. Werlin Realty, Inc.*, 349 Mass. 623 (1965). Neither Plaintiffs nor the prior developer can violate, or have actual or constructive notice of a deadline in an ordinance that i) is void, ii) has been *repealed* or *waived* by the City itself in September 1987 making it no longer applicable and unenforceable, iii) is not a matter of public record, and iv) time barred. Finally, Individual Defendants are powerless to merge and terminate the condominium property interests. *See* M.G.L. c. 183A (they do not have the power under § 5(c) to compel the dissolution the condominium interests, and under § 15, subdivision control law does not apply).

**B.    A Subsequent Purchaser Can Challenge the City's Zoning Ordinance.**

In *Americo Lopes v. City of Peabody*, 417 Mass. 299 (1994), the SJC squarely rejected Defendants' argument that a subsequent purchaser cannot challenge the validity of an *existing* City ordinance, especially one enacted in 1981 and *repealed* in 1987.  DM 2.  A subsequent purchaser of land subject to a zoning restriction *at the time* of his purchase, *has every right to challenge the continued applicability of the restriction* to his property interests.  *Lopes*, 417 Mass. at 303.  Such a rule advanced here would "threaten the free transferability of real estate."  Plaintiffs may also challenge the validity of a zoning ordinance here and as a defense in an enforcement action.  The validity of a by-law or a taking involves the *City* as distinguished from the ZBA.  *Meuse v. Town of Reading*, Misc. Case No. 227190, ¶17 (July 23, 1997). **Ex. 5.**

**C.    The Three Year Statute of Limitations Commenced on January 2, 2002.**

Defendants improperly lump together different plaintiffs (the Trust and Limited Dividend) and different defendants (the Individual Defendants) named in *this action* to assert that the statute of limitations commenced in 1994.  In 1994, Plaintiff the Plan *only* had an interest in Unit 18 and Plaintiff the Trust was controlled by other entities.  *Cpl.* ¶72.  Hence, the Plan could not exhaust administrative remedies on behalf of the Trust or any other property interests at City View Commons.  The Trust is a Plaintiff separate and distinct from the Plan under M.G.L. c. 183A.  The Trust controls the common land and has the ability under the trust by-laws to complete and repair Units for the benefit of the Trust where the owners are unable or unwilling to perform such construction. **Ex. 3**, § 5.2, *Maintenance and Repair of Units.*  The Plan gained effective control over the Trust in 1999.  *Cpl.* ¶72.

First, a § 1983 claim is not ripe and the three year statute of limitations does not commence until Plaintiffs exhaust all administrative remedies *and* a final decision has been made regarding the application of the regulations to the property at issue.  *Daddario v. Cape Cod Commn*, 425 Mass. 411, 414, *cert. denied*, 522 U.S. 1036 (1997); *Williamson County Regional Planning Commn. v.*

*Hamilton Bank,* 473 U.S. 172, 186 (1985). A final decision by a regulatory agency is an essential

element and a jurisdictional prerequisite of federal damages action under the Taking Clause. *Ochoa*

*Realty Corp. v. Faria*, 815 F.2d 812, 817 (1st Cir. 1987). Until that time, the court does not know if a

taking has been established or whether the regulation has gone "too far" unless it knows how far the

regulation goes. *Palazzolo v. Rhode Island*, 533 U.S. 606, 620-1 (2001). Fifth Amendment and §

1983 claims do not commence upon *enactment* of an ordinance or upon learning of the City's legally

untenable position in 1994. DM 2. Exhaustion and a final decision are jurisdictional prerequisites. [4]

Second, Plaintiffs i) exhausted their administrative remedies and received a final decision

from the ZBA on January 2, 2002 commencing the running of the statute of limitations for all units

other than Unit 18, and ii) filed a timely appeal on February 1, 2002, CA02-CV-0045A, in the

Housing Court ("ZBA Appeal), **Ex. 4**, pursuant to a bench order requiring that Plaintiff file his ZBA

Appeal in the Housing Court because the Individual Defendants had already commenced the

Enforcement Action. *See* **Ex. 1** ¶¶34, 36-38, *Second Amended Complaint* (showing the application

for building permits for all units other than unit 18, the denial of the building permits by Defendant

York, Plaintiffs appeal and the ZBA upholding that denial on January 2, 2002 refusing the appeal and

issuing its final decision). Thus, the statute of limitations for Plaintiffs' Takings claims, including

the Trust, commenced upon the ZBA's denial of permits for all other units on January 2, 2002 and

expired no earlier than January 2, 2005, not in 1994.

Third, in late 2002 and early 2004, Plaintiffs learned of the improper conduct by the

Individual Defendants and malicious motives for commencing the Enforcement Action directed at

Mr. Saia. *See Cpl.* ¶¶ 93, 94 The *Complaint* for all claims against the Individual Defendants in this

action is timely because it was filed on August 4, 2004 and served on November 29, 2004 within the

---

[4] Defendants improperly cite *Gilbert v. City of Cambridge*, 932 F.2d 51 (1st Cir. 1991), DM 4, that the "limitation period begins to run upon the invasion of the plaintiffs' interest." DM 4. *Gilbert* like *Daddarrio, Ochoa Realty* and *Palazzolo* clearly holds that a takings claim for damages "*can only arise* when a property owner *has sought, and been denied, a permit.*" "It is *only at this point* that one's property is *meaningfully burdened* by the law, *bringing an actual controversy* between the owner and the government into being." *Gilbert*, 932 F.2d at 57.

three year statute of limitations which expired *no earlier* than then January 5, 2005 and has yet to expire for conduct that that occurred in 2004.

> **D.     The Principles of Res Judicata Do Not Apply Because This Action Involves Different Parties and Different Claims that Matured in 2002.**

Res Judicata comprises both claim preclusion and issue preclusion.  Claim preclusion makes a valid, final judgment conclusive on the *same parties* and their privies, and bars further litigation of all matters that were or should have been adjudicated in the action.  *See Meuse v. Town of Reading*, Misc. Case No. 227190 (July 23, 1997), *citing Bendetson v. Building Inspector of Revere*, 36 Mass. App. Ct. 615, 618 (1994), **Ex. 5**; *Heacock v. Heacock*, 402 Mass. 21, 23 (1988).  The examination reduces itself to an inquiry whether the party against whom preclusion is asserted participated in the prior proceeding, either by himself or a representative.

Defendants contend the 1994 action and the stipulation of dismissal with prejudice precludes *all* Plaintiffs in this action (the Plan, the Trust and Limited Dividend) from asserting claims purportedly decided on the merits in the 1994 action.  This argument again improperly lumps together i) separate condominium property interests and different parties for which those claims did not exist, were not in privy with the Plan and were not ripe in 1994 (*e.g.* all property interests other than Unit 18 and the Trust), and ii) different defendants to this action, including the City and Individual Defendants, who plainly were *not* parties to the 1994 action.  Claim preclusion principles simply do not reach such contingent or unmatured claims against different parties.  *Steinbergh v. City of Cambridge*, 413 Mass. 736 (1992).

A simple review of the captions of the actions reveals that the parties in the 1994 action (the Plan - Unit 18 only - versus only the ZBA) are different from this action (the Plan, the Trust and Limited Divided versus the City and Individual Defendants).  Plaintiffs' claims in this action, unlike the 1994 action, are against the Individual Defendants.  Similarly, the parties in the Enforcement Action are also different (the City versus the Plan, the Trust, Limited Dividend and others).  **Ex. 1.**

Next, the *Complaint* alleges the Individual Defendants' conduct and other unnamed City officials authorized the Enforcement Action because they wanted the project rezoned and wanted a developer other than Frank Saia to develop his property. *Cpl.* ¶¶93, 94. The claims against Defendants arose in connection with the Enforcement Action filed October 5, 2000. These claims were discovered after Plaintiffs exhausted their administrative remedies for all Units other than Unit 18, and a final decision by the ZBA on January 2, 2002. The improper motives for the Enforcement Action then led to the systematic denial of permits by the Individual Defendants in November 2001 upheld by the ZBA on January 2, 2002. The equal protection claims accrued in 2002 and 2004. *Cpl.* ¶¶93, 94.

Conversely, the prior action, **DX A,**: i) concerned only the Plan's ownership of Unit 18; ii) did not nor could it involve other condominium property interests, which are distinct properties under M.G.L. c. 183A with separate ownership; and iii) did not involve the common areas or any interests of the Trust, a separate plaintiff under M.G.L. c. 183A. The 1994 action involved only an appeal of the ZBA's denial of building permits pursuant to M.G.L. c. 40A § 17 solely for Unit 18. The caption refers only to the ZBA, ¶3 asserts jurisdiction *only* under M.G.L. c. 40A § 17 to annul the ZBA decision, and Count I seeks to annul the ZBA decision. *See* **DX A.**

No claims were required to be asserted or were asserted against the City, and no claims could be asserted against the Individual Defendants. "A claim as to validity or taking involves the town" as distinguished from the ZBA. *Meuse* ¶17; *see also Lopes*, 417 Mass. at 302 (SJC stating "the question whether the zoning restriction is valid is different from the question whether [Plaintiffs have] a valid claim for damages because of an alleged taking." There also is no requirement that Plaintiffs join the City in the 1994 action. *Meuse* ¶17. *Meuse* and *Lopes* confirm that the ZBA and the City are "different parties," and that Plaintiffs are not barred by claim preclusion. The ZBA named in the prior action is different than the City which did not file until October 2000, and different than the Individual Defendants in this action.

Next, in 1994 the Plan did not have an interest in any other Units and it was not in control of the Trust. Privity requires that the party to the present action "possessed effective control over a party's conduct of the earlier litigation as measured from a practical, as opposed to a purely theoretical, standpoint." *Gonzalez v. Banco Central Corp.*, 27 F.3d 751, 759 (1st Cir. 1994) (plaintiffs in a later litigation did not exert substantial control over the plaintiffs in an earlier litigation despite the fact that the two proceedings involved overlapping claims arising out of the same acts of the defendant). The Plan in the 1994 action simply did not have effective control over the Trust and could not name the Individual Defendants in the 1994 action because the claims did not mature on all other property interests until the ZBA issued its final decision on January 2, 2002, and/or the Individual Defendants' conduct was discovered in 2002 and 2004.

On December 11, 1996, the 1994 action was dismissed with prejudice based upon an agreement between the parties whereby Attorney Casey recognized the legal impropriety of their position because the deadline is void, § 9 only requires commencement of construction and under § 7, the statute of limitations expired. Attorney Casey agreed to allow completion of the project as originally permitted if Mr. Saia acquired control of the Condominium Trust, which is necessary to complete construction. *Cpl.* ¶70. Claim preclusion if it applies at all, *only* applies to the Plan's interest in Unit 18. It does not apply to the Plan's interest in any other Unit. It does not apply to the interests of the Trust which has the right to repair *all* Units for the benefit of the Trust. It does not apply to Limited Dividend. And it does not apply to claims against the Individual Defendants.

Similarly, the doctrine of res judicata "does not apply with equal force to issue preclusion" in the context of a settlement agreement and stipulation of dismissal with prejudice. *Jarosz v. Palmer*, 436 Mass. 526, 535-536 (2002). "A party may have an incentive to settle the underlying case [as here relying on the well-established law] even if that party believes that it has a meritorious issue on appeal." *Id.* "When a losing party foregoes the right to challenge the ruling [*i.e.* the ZBA ruling in 1994] because a settlement [of the ZBA appeal in Superior Court] is in his best interest, it would be

unfair to bar the party from relitigating the determination in subsequent proceedings against different parties." *Id.* Thus, where a case ends by stipulation of dismissal, issue preclusion will not be accorded preclusive effect. *Id.* Defendants have failed to meet their burden that the principles of res judicata apply to the Defendants in this action.

> ### E.     Abstention is Improper Because the Housing Court Lacks Jurisdiction and Plaintiffs have Separate Claims Against the Individual Defendants.

*Younger* abstention has been applied sparingly in civil cases only in those situations in furtherance of the fundamental workings of a state's judicial system. *Younger* applies only where the claims "have been or could be presented in ongoing state judicial proceedings." *Younger v. Harris*, 401 U.S. 37 (1971). Further, it applies only when the relief asked of the federal court interferes with the state proceedings. *Quackenbush v. Allstate Ins., Co.*, 517 U.S. 706, 716 (1996). "[I]t has never been suggested that Younger requires abstention in deference to a state judicial proceeding reviewing legislative or executive action." *Wexler v. Lepore*, ___ F.3d ___ No. 04-12826, p6, n5 (11th Cir. Sep. 27, 2004) *citing New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 109 S. Ct. 2506, 2518 (1989). And, a federal court is not required to defer to a pending state court determination of whether the state law violates the federal constitution, or where the claims are not part of the prior action. *Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 236-39 (1984).[5]

First, the Housing Court lacks jurisdiction over Plaintiffs' claims. *See Mastriani v. Building Inspector of Monson*, 19 Mass. App. Ct. 989 (1985) (Housing Court lacks jurisdiction to hear challenges to the validity of a zoning ordinance)*.* Second, Plaintiffs' claims against the Individual Defendants, especially in their *individual capacity*, in this action are not in i) the Enforcement Action, ii) Plaintiffs' 2002 ZBA Appeal, and iii) Plaintiffs' *Counterclaim* against the City in the Housing Court action. Plaintiffs' claims for violating well-established law and engaging in equal

---

[5] Moreover, both of the established exceptions to the Younger doctrine "bad faith" and "extraordinary circumstances" are satisfied here because they are brought with an intent to harass, and are grounded on an illegitimate motive to deter the exercise of state and constitutionally protected property rights. *Cpl.* ¶¶ 93, 94.

protection claims have not been nor will they be decided by the Housing Court. Plaintiffs sought, but the Housing Court refused to amend or join Plaintiffs' claims against the Individual Defendants. The Individual Defendants cannot now complain about claim splitting because they argued that the claims against them were unrelated to the Housing Court action precluding the Housing Court from adding them to the consolidated action. Plaintiffs are not collaterally attacking the Housing Court's order, DM 8. Rather, Plaintiffs were forced to bring their claims here by Defendants and by the Housing Court which lacks jurisdiction, and to prevent the expiration of the statute of limitations. Any claim splitting is the direct result of Defendants' conduct and the Housing Court's refusal to add the Individual Defendants to the Housing Court action. Because Plaintiffs gave the Housing Court the opportunity to adjudicate his property rights or constitutional claims against the Individual Defendants, and because the Housing Court was not open to adjudicate his claims, *Younger* abstention is improper. *Wexler*, ___ F.3d at p7, n5; *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 18 (1987).[6] Thus, neither the claims nor the relief requested interferes with the Housing Court action.

Third, regardless of the validity of the Housing Court order, **DX C**, federal constitutional law itself is sufficient to determine that i) the Individual Defendants have engaged in equal protection violations, ii) a repealed construction deadline is void, and iii) a deadline that operates to "evaporate" and compel the destruction of the condominium property rights created by the City *even if valid* is a categorical taking because it is confiscatory and fails to substantially advance a legitimate local interest related to zoning, and iv) as applied to Plaintiffs such a repealed and unrecorded deadline interferes with reasonable investment backed expectations.

      **F.**    **Plaintiffs Have Stated a Claim Under Section 1983.**

To state a section 1983 claim, a plaintiff must allege i) conduct by a person acting under color of state law and ii) that this conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Macone v. Towne of Wakefield*, 277 F.3d 1,

---

[6] *See also Plaintiffs' Opposition to Defendants Motion to Stay.*

9 (1st Cir. 2002); *Parratt v. Taylor*, 451 U.S. 527 (1981). First, the Individual Defendants i) commenced the Enforcement Action to terminate Plaintiffs' condominium property rights, and ii) systematically denied permits to complete construction of the project previously authorized in January 1987; thus, they acted under color of law. Next, *Monell v. Department of Social Services,* 436 U.S. 658 (1974) does not provide a defense. Municipalities and municipal officials acting in their official capacity enjoy no immunity for their constitutional torts. A municipality can be liable for a violation of § 1983 if one of its municipal official's decision constituted an execution or implementation of official policy. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 477-81 (1986). The municipality will not be liable on a theory of respondeat superior, but rather, the municipality is liable directly for its action. *Id.* at 477. Municipal and official liability under § 1983 may be imposed for a *single decision* by municipal officials. Where the decision to deny a permit, as here, was an "officially sanctioned" act of "authorized decision makers," the municipality itself is considered to have acted, and therefore, is liable under § 1983. *Id.* at 480-81; *Bateson v. Geisse*, 857 F.2d 1300, 1303 (9th Cir. 1988) (cause of action under § 1983 existed where plaintiff was denied substantive due process by zoning authority's refusal to issue building permit to which plaintiff was entitled). Thus, in Takings and related claims for violation of Plaintiffs' property rights against the municipality or City officials, the "official policy or custom" requirement of *Monell* provides no protection because there is no question that the decisions represent government policy.

Second, Massachusetts state and decisional law discussed above establishes that the prior developers properly exercised their rights to prevent lapse of the Special Permit by commencing construction within two years; thus, Plaintiffs have vested rights to the condominium. Unlike the cases cited by Defendants, there is no question that the City granted final approval and issued valid permits to construct City View Commons. The City has also admitted that Plaintiffs have property rights, and at all times has taxed the development as condominium. **Ex. 1** ¶43; *Cpl.* ¶91. These rights cannot be terminated by a construction deadline without compensation.

**1.     Plaintiffs Have Stated a Takings Claim Under The Fifth Amendment.**

Where the City's regulation and the Individual Defendants' conduct in enforcing that regulation amount to a permanent physical occupation *or confiscation of property*, there is a categorical taking. *Steinbergh*, 413 Mass. at 741 *citing Wheeler 5th Cir.* In *Wheeler 5th Cir.*, the court found that an ordinance that confiscated landowner's right to construct *previously authorized* apartment complex *is an unconstitutional categorical taking* for which the city must compensate, and that such an ordinance is also clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare. *Wheeler 11th Cir., supra* (same); *Acorn Ponds*, *supra* (finding that the issuance of numerous building permits to construct a condominium complex and that some of its buildings were completed and others were substantially started in accordance with the permits issued by the Village created a property right protected by the Constitution); *Maher*, *supra* (if a regulation is confiscatory, it is a taking).

Here, the prior developer received valid permits and acted on them within the two year time frame to prevent lapse of the Special Permit; thus, the condominium is a protected non-conforming use. By the City's own admission, its deadline results in a confiscation without compensation of Plaintiffs' and all condominium property interests, including other banks (*i.e.* Beal Bank) with interests in the property. **Ex. 1.** Whether there is another viable use of the property is irrelevant, DM 11. The Enforcement Action seeks to terminate and compel the abandonment of all the *condominium* property interests created by the City. This is not the typical regulatory taking claim in the cases cited by Defendants[7] where the plaintiff alleges that the zoning officials adopted an ordinance that reduced the value of one's property, denied the approval of a definitive subdivision plan, or denied a

---

[7] Defendants case law claiming that there is no categorical taking or that there is some other economically viable use to the property simply does not apply citing *Zanghi v. Bedford*, 61 Mass. App. Ct. 82 (2004) and *Lakeside Builders, Inc. v. Planning Board of Franklin*, 56 Mass. App. Ct. 842 (2002). DM 11. These cases and others cited by Defendants concerning Takings and Due Process violations dealt with conduct *prior* to the grant of final approval by the zoning board for which there was no vested right. *See* DM 10-12 *citing Creative Environments, Inc. v. Estabrook*, 680 F.2d 822 (1st Cir. 1982); *Freeman v. Planning Bd. of West Boylston*, 419 Mass. 548 (1995). Finally, *Zanghi* also recognized that there is not a Massachusetts case addressing a categorical taking.

waiver requested by the land owner.  Here, like *Wheeler* and *Acorn Ponds* the prior developer requested and the City *issued valid permits* to commence construction of City View Commons with the investment of over $2.0 million in reliance on those permits.  In *Wheeler*, the town enacted legislation that sought to revoke the previously authorized permits.  Here, the repeal of the construction deadline actually granted Plaintiffs and the prior developers *more* rights by removing the restriction.  Like *Wheeler*, the Individual Defendants no longer want the project.  Here, they seek to extinguish those vested property rights by enforcing a repealed construction deadline that i) the Massachusetts Legislature and SJC have already determined is void as matter of law and time barred, and ii) federal law has ruled is confiscatory.  The transgressions here are of constitutional proportions because they involve terminating the vested condominium property rights and engaging in clear equal protection violations.

> **2.     Plaintiffs Have Stated Procedural and Substantive Due Process Claims.**

To establish a claim for a violation of procedural due process, Plaintiffs must prove by a preponderance of the evidence that (1) they have a protected property interest, (2) of which they were deprived without due process, (3) by persons acting under color of state law.  *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652 (1950).  As set forth above, Plaintiffs have a legitimate protected property interest under both state and federal law, and the Defendants are acting under color of law.  The theory of due process invoked here is that the construction deadline in Ordinance 846 "goes so far that it has the same effect as a taking by eminent domain [as such it] is an invalid exercise of the police power, violative of the Due Process Clause of the Fourteenth Amendment."  *Williamson County Regional Planning Commn. v. Hamilton Bank,* 473 U.S. 172, 197 (1985); *Pennsylvania Coal v. Mahon*, 260 U.S. 393, 415 (1922) (regulation that goes too far will be recognized as a taking); *Smithfield Concerned Citizens for Fair Zoning v. Town of Smithfield*, 907 F.2d 239, 242 (1st Cir. 1990).

The City admits that the effect of the repealed and unrecorded construction deadline, *even if valid*, results in the complete destruction and confiscation of all condominium property interests validly permitted and created by the City itself in 1987.  The City maintains that this is the proper result, regardless of the level of completion, regardless of the level of investment, and regardless of circumstances beyond the control of the prior developers, including the real estate and banking crises of the late 1980s and early 1990s.  Even *completed* homes like Unit 4 must be destroyed by subsequent bonafide purchasers like Plaintiffs who had nothing to do with the original project because *all* 25 units were not completed within the deadline.

The construction deadline goes too far and is void under Massachusetts law precisely because it operates to terminate vested property interests destroying their marketability.  Similarly, the construction deadline under federal law goes too far because it confiscates Plaintiffs' right to complete construction of the condominium project previously authorized by the City resulting in an unconstitutional taking.  *Wheeler 11th Cir.*, 896 F.2d at 1351 (ordering a damage award against town for confiscating plaintiffs' right to complete a previously authorized apartment complex).  Plaintiffs' condominium property interests are not simply diminished in value by the construction deadline, they are extinguished without just compensation, making it an invalid exercise of the City's police power. Additionally, the construction deadline violates substantive due process and must be struck down because it is clearly arbitrary and unreasonable having no substantial relation to the public health, safety, morals, or general welfare.  *Wheeler 5th Cir.*, 664 F.2d at 100 *citing Euclid v. Ambler Realty Co.*, 272 U.S 365, 395 (1926).

As applied to Plaintiffs, there is also a Taking without just compensation.  *See, e.g., Leonard v. Brimfield,* 423 Mass. 152, 154, *cert. denied*, 117 S. Ct. 582 (1996) (setting forth the interrelated factors for an as applied regulatory taking i) validity of the ordinance as applied to defendants' property, ii) the defendants' reasonable investment-backed expectations, iii) the economic impact on defendants' property, and vi) the character of governmental action).

First, the ordinance as discussed above is not valid on its face, is contrary to well-established statutory and decisional law, and fails to substantially advance legitimate state interests. Second, the contested ordinances interfere with Plaintiffs' reasonable investment-backed expectation and that the enforcement of such a *repealed* regulation frustrates the primary expectations of the property owner. A purchaser is entitled to rely on the public records and that any restriction on the use or a condition that runs with the property must be recorded in the registry of deeds, even if one knows about the restriction. *M. Dematteo Construction Co.,* Mass. App. Ct. at 459. Here, it is undisputed that the construction deadline is not expressly stated in the Special Permit or in any document of record at the Registry of Deeds. **DX C** at 7. The construction deadline, if it is valid at all, can only be found in an ordinance that the City *repealed* in September 1987. Plaintiffs at the time of their purchase in 1993 and thereafter were entitled to rely on the recorded instruments, that no Enforcement Action had been filed, the repeal of the ordinance, and the expiration of the statute of limitations in 1993. The Plan, the Trust and Limited Dividend do not and could not have notice that such a condition remained applicable. Third, Plaintiffs can show severe economic impact. The ordinance results in a complete loss of the existing condominium property rights and merger of all condominium interests. Fourth, the character of the governmental action is confiscatory and results in a physical invasion of Plaintiffs' condominium property at his own expense and without compensation.

### 3. Plaintiffs Have Stated an Equal Protection Claim.

To state an equal protection claim requires alleging: i) that plaintiff was treated differently than others similarly situated, and ii) that such a difference was based on an impermissible consideration. *Macone v. Town of Wakefield*, 277 F. 3d 1, 3 (1st Cir. 2002). *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) makes clear that Plaintiffs may bring a "class of one" Equal Protection Claim by alleging that the agency has "intentionally treated [him] differently from others similarly situated and that there is no rational basis for the difference in treatment." Plaintiffs have clearly alleged equal protection claims and that the Enforcement Action has an improper purpose directed at

Mr. Saia because he has made "too many enemies" and the "City wants the project rezoned and developed by a developer other than Frank R. Saia." *Cpl.* ¶¶ 93, 94. Plaintiffs' have alleged that the Individual Defendants conduct in maintaining a time barred Enforcement Action is not based on any *existing* or *valid ordinance*, but rather the Enforcement Action is directed at Mr. Saia and motivated by an illegitimate government interest to have the project rezoned for the benefit of another developer. *CHR General, Inc. v. Newton,* 387 Mass. 351, 439 N.E.2d 788 (1982) (City cannot control the form of ownership or the developer). These allegations are sufficient to withstand a motion to dismiss.

### G.    Plaintiffs Have Stated a Violation of the Massachusetts Civil Rights Act.

To establish a claim under the Massachusetts Civil Rights Act, Plaintiffs must establish that i) his exercise or enjoyment of rights secured by the Constitution or law of either the United States or of the Commonwealth, ii) has been interfered with, or *attempted* to be interfered with, and iii) that the interference is by "threats, intimidation or coercion." *See* M.G.L. c. 12, Section 11H. Plaintiffs need not allege "State action" in order to make out a claim for relief against a private person. *Bell v. Mazza*, 394 Mass. 176, 181 (1985). "Sections 11H and 11I, like other civil rights statutes, are entitled to liberal construction of their terms." *Id.* at 182. Moreover, "*economic coercion alone* [as alleged here] *may constitute 'threats, intimidation or coercion' in violation of the act.*" *Buster v. Moore*, 438 Mass. 635, 637 (2002) (emphasis added).

The *Complaint* specifically alleges that Frank Saia has created "too many enemies" among the Individual Defendants. As a result, the Individual Defendants want the project rezoned, eliminate the condominium and want a developer other than Frank Saia to develop his property. Furthermore, the *Complaint* alleges that "*Defendants would approve the development* of the site for anyone *other than Frank R. Saia.*" *Cpl.* ¶¶ 93, 94. The Defendants' conduct targeted at Plaintiffs and specifically Frank R. Saia is designed to threaten, harass, and intimidate Plaintiffs amounting to improper economic coercion intended to prevent and deprive Plaintiffs of their vested property rights for the

benefit of another developer.  *Cpl.* ¶ 134-5; M.G.L. c. 40A § 9.  The Individual Defendants conduct

demonstrates that they would take any action to block Mr. Saia's, but not another's, lawful

development of this property, including commencing a time barred Enforcement Action grounded on

void construction deadline.  Defendants' cases discussing *physical* threats and intimidation were

decided prior to *Buster* finding that economic coercion alone satisfies the Act.

       **H.**     **The Individual Defendants are Not Entitled to Immunity.**

       **1.**     **Qualified Immunity.**

"Government officials performing discretionary functions generally are shielded from

liability for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known."  *Mihos v. Swift*, 358 F.3d 91,

101-1-3 (1st Cir. 2004) *quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Plaintiffs can

overcome the defense by showing i) that his allegations establish a statutory or constitutional

violation, ii) that the right was clearly established; and iii) that a reasonable official would have

known that his actions violated the statutory or constitutional right at issue.  *Mihos*, 358 F.3d at 102.

The inquiry starts with whether the facts *as alleged* violate the protected rights.  *Id.*

First, the *Complaint* alleges numerous statutory and constitutional violations concerning the

Individual Defendants' conduct, including Taking and Equal Protection violations.  Second, as

summarized above, these rights both statutory (*i.e.* M.G.L. c. 40A §§ 9, 7, 6, M.G.L. c. 183A) and

constitutional are clearly established.  Third, a reasonable public official would have known that his

conduct violated Plaintiffs' property and equal protection rights secured by either federal or state law

by enforcing a repealed condition, in direct conflict with the laws of Massachusetts and not within

the City's authority to adopt, outside the statute of limitations, to terminate vested property rights,

and even if valid confiscates Plaintiffs' property without compensation one's property.  Furthermore,

the City has no power to control the form of ownership or to determine who develops their own land.

*CHR* and *Olech, supra.*  At this stage of the litigation, the Individual Defendants are not entitled to

qualified immunity making them individually liable.  Denial of qualified immunity does not translate into a victory; rather, it simply means that the case may go forward.  *Mihos*, 358 F.3d at 98 *citing Hope v. Pelzer*, 536 U.S. 730, 736 (2002).

       **2.**        **Martin and Casey are Not Entitled to Prosecutorial Immunity.**

       Absolute prosecutorial immunity under a § 1983 claim is not without limits.  First, a prosecutor will be subject to liability when he has acted in the "clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 356-7 (1978).  Second, absolute immunity protects only discretionary not non-discretionary functions.  *Jordan v Sinsheimer*, 403 Mass. 586-8 (1988) *citing Imbler v Pachtman*, 424 U.S. 409, 430 (1976).  Here, the attorneys have acted in a clear absence of all jurisdiction and they had no discretion to enforce a repealed deadline or to deny building permits for property that achieved protected status.  *See also Wheeler* and *Acorn Ponds*.  As set forth above: i) there is no authority under the HRA to adopt a deadline that is in direct conflict with § 9; ii) the prior City Council *repealed* the deadline in September 1987 rendering it no longer applicable and making the Enforcement Action jurisdictionally infirm; iii) the condition is not set forth in the Special Permit and is not a matter of public record; iv) the property achieved protected status upon the issuance of the Special Permit in January 1987 requiring the issuance of permits to complete construction; v) the deadline is confiscatory and arbitrary by taking a previously authorized and constructed condominium complex and evicting tenants from Unit 4 without compensation; vi) the Enforcement Action time barred; and vii) has an improper motive to deny Plaintiffs their property and equal protection rights for the benefit of another developer.  Accordingly, there is a clear absence of all constitutional and statutory jurisdiction to commence the Enforcement Action.  Hence, they are not entitled to absolute immunity, and lose their qualified immunity.[8]

---

[8]  Although not discussed by Defendants, the unnamed City Councilors are not entitled to legislative immunity because they did not "enact" any legislation, and the authorization to commence the Enforcement Action is an administrative acts.  *See, e.g., Cutting v. Muzzey*, 724 f.2d 259 (1st Cir. 1984) (members of planning board were not entitled to absolute immunity when imposing conditions on developer because of racial animus).  If the action

## CONCLUSION

For the reasons set forth above, this court should i) order the City Council Members to acknowledge service and ii) deny the Individual Defendants' motion to dismiss in its entirety.

Dated: May 2, 2005                                    Attorney for Saia Defendants

By: */ss/ Stephen V. Saia*
Stephen V. Saia, BBO No. 562009
Law Offices of Stephen V. Saia
70 Old Cart Path Lane
Pembroke, MA 02359
(781) 826-8401

## RULE 7.1(D)
## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(D), Plaintiffs request oral argument on defendants' motion to dismiss. Oral argument will assist this Court in deciding the issues raised by the pending motion and the procedural background concerning this action.

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2005, I delivered a copy of the above document to:

Nancy Frankel Pelletier, Esq.                        Electronic Notification
Robinson Donovan, P.C.
1500 Main Street, Suite 1600
P.O. Box 15609
Springfield, MA 01105

Dated: May 2, 2005                                    By: */ss/ Stephen V. Saia*

---

singles out specifiable individuals and affects them differently from others, it is administrative. *Cutting*, 724 F.2d at 261. Moreover, "when local zoning officials do more than adopt *prospective*, legislative-type rules and take the next step into the area of *enforcement*, they can claim only the executive qualified immunity appropriate to that activity." *Scott v. Greenville County*, 716 F.2d 1409, 1423 (4th Cir. 1983). The City Councilors did not "enact" any legislation and the Enforcement Action violates well-established law, including Plaintiffs' equal protection rights.

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS
## WESTERN DIVISION

|  |  |
|---|---|
| FRANK R. SAIA, individually and as Administrator of the FRANK R. SAIA DEFINED BENEFIT PENSION PLAN, LIMITED DIVIDEND CORPORATION OF WESTFIELD, and CITY VIEW COMMONS CONDOMINIUM TRUST,<br><br>        Plaintiffs,<br><br>v.<br><br>CITY OF WESTFIELD, ZONING BOARD MEMBERS (John and Jane Does #1-10), CITY COUNCIL MEMBERS (John and Jane Does #1-10), CHARLES KELLOGG, (former Inspector of Buildings of the City), DONALD C. YORK (Superintendent of Buildings), JAMES BOARDMAN (Community Development Director), DAN REARDON (Director of Public Health), PAUL J. CASEY (Assistant City Solicitor), and PETER A. MARTIN (Assistant City Solicitor), all Defendants named individually and in their official capacity,<br><br>        Defendants. | Civil Action No. 04-30143-MAP |

## AFFIDAVIT of
## Attorney Stephen V. Saia

| | |
|---|---|
| STATE OF MASSACHUSETTS | ) |
| | )ss. |
| COUNTY OF PLYMOUTH | ) |

I, Stephen V. Saia, counsel to Plaintiffs depose and say under penalty of perjury under the laws of the Commonwealth of Massachusetts that the Exhibits attached hereto are true and accurate copies of the documents and filed herewith in support of *Plaintiffs' Opposition to Defendants' Motion to Dismiss.*

Dated: May 2, 2005                    By: /ss/ *Stephen V. Saia*