*County:*
*Case No:*  **Miscellaneous Case No. 227190**
*Date:*  **July 23, 1997**
*Parties:*  **RALPH T. MEUSE and ALICE K. MEUSE vs. TOWN OF READING**
*Decision Type:* **DECISION ON PARTIAL SUMMARY JUDGMENT**

Plaintiffs own two abutting lots of registered land on Auburn Street in Reading, lots A1 and A2 on Land Court Plan 11306B, a copy of which is attached hereto; the plan is dated September 11, 1926. Their house sits on lot A1 and the other is vacant, except for part of a garage which straddles the common boundary. Lot A1 contains about 6,176 square feet and lot A2 5,999 square feet. Lot A1 has street frontage of 82.02 feet (combined Bancroft Avenue and Highland Street) and Lot A2 75.78 feet. Each lot is now substandard for zoning purposes, both as to lot size and frontage. Plaintiffs allege that when they bought the lots in 1969 the then applicable zoning required lots of only 5,000 square feet (their complaint does not address the frontage question and incorrectly states the only problem is lot size). Plaintiffs allege they

- 2-

bought the lots with the expectation of being able to construct a single family house on the vacant lot, but that expectation was frustrated by an amendment to the zoning by-law, which required a special permit to develop a non-conforming lot. They further allege they tried three times, unsuccessfully, to obtain a special permit and also tried, unsuccessfully, to secure a town meeting vote legitimizing the vacant lot. Plaintiffs appealed here one of the special permit denials, and in Miscellaneous Case No. 152692 (case 152692), I upheld the board. That decision was affirmed by the Appeals Court, 33 Mass. App. Ct. 1106 (1992) and the Supreme Judicial Court denied further appellate review, 413 Mass. 1106 (1992).
    Plaintiffs allege the application of the by-law to lot A: has no reasonable relation to the public health, safety, and welfare, is arbitrary, discriminatory, and unreasonable, and deprives them of their property without compensation, in violation of the United States and Massachusetts Constitutions. They seek, under count I, a declaration under G. L. c. 240, s. 14A that the by-law as applied to lot A: is invalid. They also seek, under count II, a declaratory judgment under G. L. c. 231 A that there has been a temporary taking for the time lot A: has been rendered unusable for the purposes intended by them, for which taking they seek damages. Finally, if it should be held under count I that the by-law is valid, plaintiffs seek, under count II, a declaratory judgment that they have been deprived of all economically beneficial use of lot A2 and an award of damages as a result. Plaintiffs demand a trial by jury on all issues.
    Defendant moved for summary judgment. The complaint was not verified. In addition to such of the allegations in the complaint as were admitted by defendant, the following Rule 56 material is in the record: two affidavits by Jonathan Edwards, the town's town planner. I also take judicial notice of the decision in case 152692 and incorporate its findings and rulings in

- 3-

this decision. Counsel for both parties argued the motion on November 6, 1996.
    I find and rule as follows:
    1. Plaintiffs allege they bought both lots in 1969. That fact does not appear in case 152692, but I note that their certificate of title, number 129315, is dated April 3, 1969. It lists plaintiffs as owners as tenants by the entirety and

describes the lots separately. I find plaintiffs acquired their lots on April 3, 1969. The title history of the lots before plaintiffs' acquisition is not in the record. The plan referred to in their certificate of title is dated 1926 and it shows the two lots as they exist today.

    2. When plaintiffs acquired their lots, the lots were in a Residence A1 district. That required a minimum lot size of 10,000 square feet and minimum frontage of eighty feet.

    3. In March 1970, the by-law was revised and renumbered. Plaintiffs' lots, however, remained in the Residence A1 district. Part I, Section VI, "Area Regulations in Residence Districts," as contained therein, was as follows:

    "1.    In Residence Al Districts and Residence B Districts no principal building shall be erected unless there by [sic] provided for each such building a lot area of not less than 10,000 square feet, except as provided in Section IV. [Section IV related to apartment buildings and required larger lot areas.]"

    "6.    Paragraph[ ] 1 . . . of this Section shall not apply to lots of less than the required frontage and area duly recorded by plan or deed at the Registry of Deeds before this by-law is adopted."

    4. Part I, Section VII, "Frontage Regulations in Residential Districts" as contained in the March 1970 zoning read in part as follows:

    "1. In Residence A1 and Residence B Districts no lot shall have a

-   4-

frontage of less than eighty (80) feet on the frontage street."
There is no exception language in Section VII similar to Section VI(6).

    5. In February 1978, responding to the adoption of present chapter 40A, the town revised its by-law. The zoning district for plaintiffs' lots was designated Residence S-10 and the dimensional requirements were as described in case 152692, minimum lot size 10,000 square feet and minimum frontage 80 feet, that is, no change from the then applicable requirements. (In 1995 the zoning district became S-15, requiring 15,000 square feet and 100 feet frontage, but that change is not of significance here.)

    6. The 1978 by-law contained Section 6.3.1.3., set forth in case 152692, providing the possibility of a special permit for one-family construction notwithstanding the existence of adjoining land in common ownership. That was the provision under which plaintiffs sought, and were denied, a special permit in case 152692. That provision provided in relevant part:

"The Board of Appeals may grant a Special Permit to build upon a nonconforming lot for one family use in any district permitting such use provided the applicant establishes:

    a.    at the time of its recording [sic] or endorsement, whichever occurred sooner, the lot conformed to the then existing requirements;

    b.    the lot was held in common ownership with adjoining land on February 2, 1978;

    [c] ....

-   5-

    d.    the area and frontage of the lot are similar to or greater than the area and frontage of a substantial number of built-upon lots which are located wholly or partly within three hundred (300) feet of the property line and in the same district;

    [e and f]. . . ."

    7. Counsel in case 152692 stipulated all the requirements of section 6.3.1.3.

were satisfied, except subsections d and e were disputed. In case 152692, I held subsection e had been satisfied but that subsection d had not.

8. The stipulation in case 152692, just referred to, included subsection a of section 6.3.1.3 of the by-law, and therefore I find that at some point in its history, lot A2 was conforming. Nothing in the evidence before me (including case 152692) establishes when lot A2 first became non-conforming. In particular, the parties have not established whether section VI(6) (paragraph 3 above) or its equivalent, was in effect before 1970.

9. In November 1995, plaintiffs sought to amend Section 6.3.1.3. by essentially adding a new paragraph (g) which would have made the fourth condition (d) inapplicable to any applicant for a special permit where the lot in common ownership was the last undeveloped parcel of property held in common ownership by the applicant. The proposed amendment was opposed by the town's by-law committee and by the town's planning board and was defeated by town meeting.

10. The zoning history of lot A2 can be summarized as follows:
   A. At some time before plaintiffs' acquisition, the lot was conforming.
   B. When the 1970 zoning was passed, paragraph 3 above, lot A2 became, at least as to area, conforming, by virtue of subsection 6 quoted above.

- 6-

   It is not clear whether subsection 6 also made lot A2 conforming as to frontage - the by-law can be read both ways and counsel have not addressed the matter.
   C. When plaintiffs acquired the lot, grandfathering was pursuant to section SA of then chapter 40A, the Zoning Enabling Act, as amended by Section 1 of Chapter 435 of the Acts of 1961. That provided protection for adjoining lots in common ownership for five years. Without knowing the title and zoning history before 1970, one cannot establish when that five years ran out, but it was five years from the date of plaintiffs' acquisition at the latest.
   D. The Zoning Act, as adopted by chapter 808 of the Acts of 1975, became effective in Reading in 1978. At no time since then has chapter 40A provided relief for the common ownership problem plaguing lot A2.[1] The only relief available after 1978 was section 6.3.1.3 of the Reading bylaw, adopted in 1978, paragraphs 5 and 6 above.
   E. Thus, lot A2, possibly, could have been grandfathered in one of two ways:
   1. For five years under old chapter 40A;
   2. By operation of VI(6) of the 1970 by-law, paragraphs 3 and 4 above,

------------------------

[1] The second sentence of the fourth paragraph of G. L. 40A, s. 6, added by ch. 106 of the Acts of 1979, providing five year protection, is inapplicable to lot A2, as it requires a lot of at least 7,500 square feet.

- 7-

while that was in effect. In any event, it certainly became nonconforming in 1978 and has remained so ever since.

11. Under the current zoning by-law, paragraph 4.2.1, property in a Residence S-15 district (locus) may be used as of right for these principal uses: one family

dwelling, school, church, public utilities, agriculture, horticulture, and floriculture. Allowed accessory uses are: home occupation, roadside stand, and enclosed storage.

    12. Neither party has addressed count I, plaintiffs' claim that the zoning by-law as applied to lot A2 is invalid, and therefore I shall not. The parties have argued whether plaintiffs are barred by res judicata and have also argued taking issues to some degree.

    13. Defendant argues plaintiffs are barred by claim preclusion from maintaining this action. Restatement (Second! of Judgments (1982) s.s. 24(1) and 25 provide as follows:

    Section 24(1):

> "(1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar (see s.s. 18, 19), the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose."

    Section 25:

> "The rule of s. 24 applies to extinguish a claim by the plaintiff against the defendant even though the plaintiff is prepared in the second action
> (1) To present evidence or grounds or theories of the case not presented in the first action, or
> (2) To seek remedies or forms of relief not demanded in the first action."

    14. Plaintiffs were able to make the invalidity and taking claims pressed here

- 8-

simultaneously with case 152692. Massachusetts Continuing Legal Education, Inc., Massachusetts Zoning Manual, s. 11.27 (Revised Edition 1995):

> "s. 11.27 Invalid Ordinance or Bylaw A board of appeals has no authority to declare an amendment of a zoning ordinance or bylaw invalid. (citation omitted). Challenges to the underlying zoning ordinance or bylaw may be brought by the landowner under the provisions of G. L. c. 240, s. 14A in the Land Court. (citations omitted).
>
> Such a challenge may properly be brought to or simultaneously with an appeal from the decision of a municipal board on the landowner's request for zoning relief. (citations omitted)."

    15. Bendetson v. Bldg. Inspector of Revere, 36 Mass. App. Ct. 615 (1994) is relevant here, although I concede its differences. The underlying claim plaintiffs assert is that they should be allowed to construct a residence on their vacant lot. See Bendetson at 620: "All of these arguments arise out of and attempt to characterize the same set of operative facts -- the actual use of the property in question." Plaintiffs' legal theories are that the board of appeals improperly denied them a special permit (the issue expressly addressed in case 152692), that the by-law requiring the special permit was invalid, and that, if the by-law be valid, taking damages are in order. Plaintiffs assert different legal theories and different remedies as to the same claim, their right to construct on the vacant lot. Bendetson at 618-619, and cases cited therein. Plaintiffs are splitting their claims.

    16. Plaintiffs, citing Lopes v. Peabody, 417 Mass. 299, 303 (1994), argue there have been "changed circumstances" arising after the hearing of case 152692, namely developments in taking jurisprudence in Lucas v. South Carolina Coastal Council, 112 S. Ct. 2886 (1992) and subsequent cases, which render it inappropriate

to bar plaintiffs. Passing the

- 9-

question whether such changes in decisional law are "changed circumstances," the concept of bylaw invalidity was familiar when case 152692 was begun, October 29, 1990, and there was a significant body of takings law before Lucas. Both those points are supported by the fact, of which I take judicial notice, that plaintiffs' counsel here was from its filing in 1989 counsel for the successful plaintiff in Lopes v. Peabody, Misc. No. 139663 (Land Court March 31, 1995) (Cauchon, C.J.), 417 Mass. 299 (1994), in which invalidity and takings arguments were asserted from the first.

17. However, a claim as to validity or taking involves the town, as distinguished from the board of appeals. The town was not a party to case 152692. Restatement (Second) of Judgments (1982) s.s. 27-29 suggest that since the town was not a party to case 152692, preclusive effect is to be found, if at all, under issue preclusion (as opposed to claim preclusion), in which event there is no preclusion, since the invalidity and taking issues were not taken up in case 152692. To state the matter differently, where an argument was not considered in an earlier proceeding in which a plaintiff lost as plaintiff there, the Restatement provides for the possibility of plaintiff being barred in the current proceeding (for claim splitting) only where the parties are the same. The present situation is a hybrid. The defendant board in case 152692 acted for the town within the context of G. L. c. 40A, s. s. 12 and 14. However, the board and the town are different parties, so I conclude that plaintiffs are not barred by claim preclusion. When plaintiffs brought their s. 17 claim to annul the decision of the board, if they wished as an alternative to assert invalidity and taking arguments they could have joined the town as a defendant, Mass. R. Civ. P. 20, but they were not required to do so under Rule 19. It is unfortunate they did not do so, as we would not be as we are here, faced with invalidity and takings claims years later.

- 10-

18. In light of their unsuccessful application for a special permit, paragraph 6 above, and their unsuccessful attempt to have the zoning by-law amended, paragraph 9 above, plaintiffs' taking claim is ripe for determination. Daddario v. Cape Cod Comm'n., No. 07329 (Supreme Judicial Court July 11, 1997) (Wilkins, C.J., Abrams, Lynch, & Fried, J.J.) at 4-6.

19. There has not been a categorical taking of lot A2. There has been no physical taking and the operation of the Reading zoning by-law has not left plaintiffs without any economically viable use of lot A2. It may be used for agriculture, horticulture, and floriculture and it has value as an accessory to plaintiffs' house lot; in particular, that may be seen from the fact that the garage serving the house lot now in part occupies lot A2. See MacNeil v. Avon, 386 Mass. 339, 343 (1982); Chaume v. Zoning Bd. of Appeals of Fitchburg, 27 Mass. App. Ct. 113536 (1989).

20. The town argues there is a taking of an interest only if the interest was vested in the property owner as a matter of state property law and not within the power of the state to regulate under common law nuisance doctrine, citing Lucas v. South Carolina Coastal Council, 112 S.Ct. 2886 (1992.) The town's argument is that, since under either old or present G. L. c. 40A lot A2 is not grandfathered, plaintiffs' alleged interest in developing it as a single-family lot is not vested as a matter of state property law. The town misreads Lucas here. What is meant is that a property owner is not entitled to compensation where the proposed use prohibited by the challenged regulation would otherwise be impermissible under state nuisance or other common law land use principles. See Lucas at 2900-01; Lopes v. Peabody, 417 Mass. 299, 306-307 (1994). There is nothing in the common law which would prevent plaintiffs from putting a single-family house on lot A2 and nuisance law is inapplicable here.

- 11-

21. The town suggests "any arguable loss in economically viable use of [lot A2] suffered by the Meuses results not from any local restraints but rather because state zoning law
does not provide any grandfathering protection for lots under 7,500 square feet of area held in common ownership with adjoining land. Any potential taking claim the Meuses may have, therefore, is against the state." That is an intriguing but unsuccessful argument. Under the allocation of responsibilities established by the General Court, permission to build is a local function, manifested by a building permit. The rules governing that (zoning in particular) are local, by and large. What stops plaintiffs is the local by-law and if it results in a regulatory taking, the claim is therefore against the town. The state could provide grandfathering but the fact it has not does not constitute a taking. Perhaps the federal government, under the supremacy
clause, could constitutionally mandate a zoning exemption covering these facts; does the town suggest there is a taking claim against the United States because there is no such exemption?

22. A regulation which does not deprive a property owner of all economically beneficial use of his land may nonetheless constitute a regulatory taking based on a balancing of the character of the governmental action, the regulation's economic impact on the property as a whole, and the extent to which the regulation has interfered with the property owner's distinct investment-backed expectations. See Leonard v. Brimfield, 423 Mass. 152, 154 (1996), cert. denied, 136 L. Ed. 2d 513.

23. Neither the Rule 56 material before me nor the arguments of the parties permits decision of plaintiffs' validity claim or the fact-intensive matters just discussed. Among other things the parties have not addressed whether plaintiffs may properly pursue a claim based solely on lot A2, without reference to lot A1. Summary judgment is inappropriate at this point

- 12-

(except as to the specific matters resolved above), but with a more complete record it might become appropriate.


*Judge:*   **/s/ Peter W. Kilborn**
Chief Justice


See attached text for map




End Of Decision