## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS
## WESTERN DIVISION

| | |
|---|---|
| FRANK R. SAIA, individually and as Administrator of the FRANK R. SAIA DEFINED BENEFIT PENSION PLAN, LIMITED DIVIDEND CORPORATION OF WESTFIELD, and CITY VIEW COMMONS CONDOMINIUM TRUST,<br><br>            Plaintiffs,<br><br>v.<br><br>CITY OF WESTFIELD, ZONING BOARD MEMBERS (John and Jane Does #1-10), CITY COUNCIL MEMBERS (John and Jane Does #1-10), CHARLES KELLOGG, (former Inspector of Buildings of the City), DONALD C. YORK (Superintendent of Buildings), JAMES BOARDMAN (Community Development Director), DAN REARDON (Director of Public Health), PAUL J. CASEY (Assistant City Solicitor), and PETER A. MARTIN (Assistant City Solicitor), all Defendants named individually and in their official capacity,<br><br>            Defendants. | Civil Action No. 04-30143-MAP |

## PLAINTIFFS' OBJECTION TO THE REPORT AND RECOMMENDATION

Stephen V. Saia, Esq.
Law Offices of Stephen V. Saia
70 Old Cart Path Lane
Pembroke, MA 02359
(781) 826-8401

*Attorney for Saia Defendants*

## PRELIMINARY STATEMENT[1]

The following summary corrects the procedural record.  Originally, the City of Westfield ("City") commenced an action on October 5, 2000 in the Housing Court and sought a preliminary injunction alleging *solely* that Plaintiffs were performing work at City View Commons without a building permit. Plaintiffs performed "board and secure" work to prevent waste of the property which does not require a permit.  The October 5, 2000 complaint, **Ex. 2**, did not seek invade Plaintiffs' condominium property rights nor had Plaintiffs exhausted their administrative remedies.  On November 1, 2000, the Housing Court granted the City a preliminary injunction prohibiting Plaintiffs from performing any work, including board and secure work, at the site.  On November 8, 2001, Plaintiffs submitted an application for a building permit to undertake construction work on Units 2, 5, 6, 7, 13, 16, 17, 18, 19 and 22, and to exhaust their administrative remedies.  Saia submitted the application for building permits because the Housing Court had previously suggested that Plaintiffs – Defendants in the Housing Court action – had not exhausted their administrative remedies by requesting building permits to complete City View Commons.  The Building Inspector then denied the permits and Plaintiffs appealed.  On January 2, 2002, the ZBA upheld the denial of permits claiming that the request was in violation of the injunction (even though it is a prerequisite to exhausting administrative remedies, *Gilbert, infra*), and the court had indicated that Saia needed to apply for such permits) and that the appeal was filed late.  **Ex. 3.**

On January 4, 2002, the City filed its *First Amended Complaint* ("Enforcement Action" or "*FAC*").  **Ex. 4.**  On January 22, 2002 pursuant to court order and by agreement of the parties (the City and Plaintiffs) to preserve a timely appeal of the ZBA's decision, Plaintiffs were allowed to file a timely

---

[1]  The Report inaccurately states that Plaintiffs' counterclaim was dismissed on July 30, 2002.  The Housing Court granted the motion to dismiss *without prejudice* to defendants in the enforcement action right to replead.  On May 24, 2004 the City filed its *Second Amended Complaint*.  On October 7, 2004 Saia filed *Defendants' Answer and Counterclaim*.  All matters concerning Saia's *Counterclaim* have been stayed pending resolution of cross motions for summary judgment on various issues identified by the Housing Court in its May 25, 2006 order that it intends to revisit.  **Ex. 1.**  Briefs were submitted on August 23, 2006, with responses due October 23, 2006.  On August 12, 2006, Governor Romney signed emergency legislation allowing transfer of zoning matters to a new permit session of the Land Court to allow for greater consistency in land use matters by courts with experience in such matters.  *See* Chapter 205 of the Acts of 2006, *An Act Relative to Streamlining and Expediting the Permitting Process in the Commonwealth*, §§ 15(a), (b), (c) and/or (d).  On September 11, 2006, Plaintiffs requested that the Housing Court action be transferred to hear the motion for summary judgment.  The request is pending.

complaint seeking judicial review of the ZBA's denial.  **Ex. 5.**  On February 1, 2002 and at the direction of the Housing Court, Plaintiffs' filed their ZBA Appeal in the Housing Court.  The *FAC* sought declaratory and injunctive relief.  **Count II** claims that i) a condominium development is not an allowed "*use*" within a Rural Residential Zone; ii) the continued presence of the structures in various stages of completion constitutes a violation of the City's current zoning ordinance which the Saia Defendants and Allen as subsequent purchasers are required to abate, and that the condominium must comply with subdivision control law.  This count was the *first time* that the *City* sought to terminate Saia's, and other property rights alleging that the Special Permit had lapsed in 1991.[2]

These allegations are the core of the Enforcement Action to compel the abandonment and destruction of the detached single-family homes all lawfully permitted and constructed pursuant to valid permits issued by the City in January 1987 and Building Permits in 1988.  Even completed homes like Unit 4 and continuously occupied must be vacated and destroyed.  The City contends that the Special Permit lapsed.  It did not lapse.  It was acted on by the prior developers pursuant to lawfully issued permits by the City.  Also, after its repeal in September 1987, the property is no longer subject to the construction deadline, even if initially valid.  The Special Permit remained valid and the City issued Building Permits in 1988 in furtherance of the Special Permit.  Furthermore, the entire condominium property regardless of its stage of completion achieved protection as legal non-conforming use in **1988** upon the commencement of construction entitling Plaintiffs to permits *as of right* to complete construction.  Finally, a condominium is not a "use."  It is a form of ownership created pursuant to M.G.L. c. 183A that the City is powerless to control, are permitted in any district, and which does not have to comply with subdivision control law.  M.G.L. c. 183A §§ 5(c), 15.

Despite its claim that the permit lapsed in 1991, the City has taxed and continues to tax the property as a condominium.  Cpl ¶91. The fact that the City has at all times taxed the property as a condominium, recorded a tax taking for failure to pay condominium taxes in November 1992, even after

---

[2] **Count I,** like complaint filed on October 5, 2000, seeks relief for the failure to obtain building permits.  **Count III** addresses the completed home known as Unit 4 occupied by Gene Spear alleging that the Certificate of Occupancy issued to the prior developer SBH in December 1989 is invalid.  The City approved this septic system.  Cpl. ¶59.

the purported lapse of the Special Permit in 1991, issued a building permit to reroof Unit 4 on September 5, 2001 (Cpl ¶87), and that Unit 4 has been continuously occupied since December 1989, further shows that the Special Permit did not lapse and that the condominium property rights did not evaporate. The City even expects to recover the outstanding condominium property taxes from Plaintiffs even though it has denied all use of the property.[3] The Supreme Judicial Court ("SJC") has also stated that the City cannot allow the condominium property which it lawfully permitted, taxed and now has taken to fall into a state of disrepair. *Town of Milford v. Boyd, Jr.*, 434 Mass. 754, 759 (2001). Rather, the entire property is protected as a legal non-conforming use.

This action does not concern removing a *commercial* "use" (*e.g.* a gas station) in a residential district. These are 25 previously authorized detached *single family homes* approved for development in an Agricultural District which are now in a *single family* Rural Residential District. **Ex. 6.** The 25 homes are simply clustered on 25 acres; rather than one home on each acre. The density and the clustering were lawfully permitted by the City in September 1987 and achieved protected status in 1988 upon the commencement of construction. Thus, they are conforming homes and conforming uses authorized by the City that statutorily do not have to comply with subdivision control law. The *Report* ignores that the *FAC* is grounded on a non-existent deadline that the City *repealed* in September 1987. Accordingly, it is no longer applicable to the Special Permit (even if initially valid – which it is not), is not a matter of public record and unenforceable as a matter of law. The prior developers acted on these permits within two years as required by M.G.L. c. 40A § 9 to prevent lapse and achieve permanent protection as a legal non-conforming use in 1988. The *Report* fails to address that enforcing a repealed condition is a fundamental Due Process violation. The *Report* also fails to address that the deadline strips the property of vested rights attained in 1988.

On May 24, 2004, the City filed its *Second Amended Complaint* and added numerous additional parties (including owners and banks like Beal Bank) that had condominium property interests in City

---

[3] *Lopes v. City of Peabody*, 430 Mass. 305 (1999) (temporary or permanent taking of property, the owner is not required to pay property taxes).

View Commons.  Like the *FAC*, the *Second Amended Complaint* is based on the legally untenable position that the City can enforce a *repealed* condition in conflict with statutory and constitutional guarantees.  The City seeks to deprive the Defendants (the current owners and mortagees who had nothing to do with the construction of the project) of all their condominium property interests and reasonable economic expectations without any legitimate government interest or compensation in violation of M.G.L. c. 40A §§ 6, 7, 9; M.G.L. c. 183A §§ 5(c), 15; 42 U.S.C. § 1983 under federal and state constitution,[4] and the Massachusetts Civil Rights Act.

## ARGUMENT

First, Plaintiff's have alleged "extraordinary circumstances" and that Individual Defendants' conduct rises to the level of serious Due Process and fundamental procedural irregularities.  Here, the Housing Court lacks subject matter jurisdiction requiring that Plaintiffs bring these claims in a court of competent jurisdiction before the statute of limitations expires on the claims against the Individual Defendants.  Next, the Individual Defendants are enforcing a construction deadline that the City itself *repealed* in September 1987.  That which the City contends was incorporated *only* by reference into the Special Permit issued in January 1987 was repealed by reference in September 1987.  The *repeal* of that condition by the City in September 1987 without reenacting it or expressly making it applicable to the Special Permit renders it moot and unenforceable as a matter of law; thereby, rising to the level of a fundamental procedural irregularity.  *Chiplin Enterprises, Inc. v. City of Lebanon*, 712 F.2d 1524, 1528 (1st Cir. 1983).  Plaintiffs could never be on notice that the City would enforce a *repealed* deadline regardless of what the City Solicitor claims in its 1994 memorandum.  The condition defendants seek to enforce simply does not exist after September 1987.  It is no longer applicable to the Special Permit.  It cannot continue to run for the purpose of lapsing the Special Permit in 1991.  And it cannot be enforced approximately 14 years *after its repeal* as the basis for the City's *FAC* filed on January 4, 2002.

Similarly, the defendants are pressing an action that is patently time-barred.  The six year statute of limitations set forth in M.G.L. c. 40A § 7 applies where, as here, permits have been issued and acted on

---

[4]  Plaintiffs assert Takings, Due Process and Equal Protection violations.

by the prior developers.  The plain language of M.G.L. c. 40A § 7 and decisions by the SJC make clear

that the statute of limitations commences to run upon the issuance of the original permit that authorized

construction – the Special Permit issued in January 1987 - and expired six years later in January 1993

well before the City commenced its original complaint on October 5, 2000 or its *FAC*  on January 4,

2002.  M.G.L. c. 40A § 7; *Cape Resort Hotels, Inc. v. Alcoholic Licensing Board of Falmouth*, 385 Mass.

205, 217-218, n8 (1982); *Lord v. Zoning Board of Appeals of Somerset*, 30 Mass. App. 226, 567 N.E.2d

954 (1991).  Maintaining such an action without any jurisdictional basis to terminate vested property

rights, rises to the level of serious Due Process and Equal Protection violations requiring that this Court

not abstain.  *Wheeler, infra.*

Second, if the Court is going to abstain on federalism grounds, then it should simply abstain.  It

should not go any further and opine on important matters without the fully developed factual and legal

record before it, especially where it admits that the factual record needs to be clarified, has misapplied the

facts and reached inaccurate conclusions of law concerning: i) whether Plaintiffs can challenge the

enforcement of a repealed ordinance and/or assert that the property is protected; ii) when the three year

statute of limitations commences for 42 U.S.C. § 1983 claims; and iii) *res judicata* with respect to the

1994 action.

As the *Report* recognizes, the First Circuit has repeatedly emphasized the local nature of zoning

disputes and has cautioned federal courts against sitting "as a super zoning board or a zoning board of

appeals."  *Raskiewicz v. Town of New Boston*, 754 F.2d 38, 44 (1st Cir.), *cert denied*, 474 U.S. 845 (1982).

A meaningful separation between federal and state jurisdiction in this area requires that federal courts

remain aloof while the land use disputes are played out in local courts.  *Creative Environments, Inc. v.

Estabrook*, 680 F.2d 822, 833 (1st Cir.), *cert. denied*, 459 U.S. 989 (1982); *P.L.S. Partners W. Med. Ctr.

Of Rhode Island, Inc. v. Cranston*, 696 F. Supp. 788, 794 (R.I. 1988) (same).  Unfortunately, the *Report*

injects numerous factual and legal errors of law into the record that should be stricken from the *Report*

allowing the Housing Court action to proceed if the federal court abstains.[5]  These errors of fact and law demonstrate a fundamental misunderstanding of zoning matters as well as improperly merging the separate and distinct condominium property interests involved and created under M.G.L. c. 183A.

> A.      **Abstention is Improper.**

The allegations in the Complaint are not simply an abuse of power or bad faith refusal to follow state law.  There are "extraordinary circumstances" under *Younger v. Harris*, 401 U.S. 37 (1971) and *Creative Environments, Inc. v. Estabrook*, 680 F.2d 822 (1st Cir. 1982) that preclude abstention.  First, the Housing Court lacks jurisdiction to hear the federal constitutional takings claims, as well as other related claims against the Individual Defendants.  Even *Matney* cited in the *Report* recognizes that the City must proceed in a "*proper court of law …*"  *Matney v. City of North Adams,* 359 F. Supp. 2d 20, 23 (D. Mass. 2005).  Only the Superior Court and the Land Court, not the Housing Court have jurisdiction over constitutional challenges to the *validity* of a zoning by-law.  *Mastriani v. Building Inspector of Monson*, 19 Mass. App. Ct. 989 (1985).[6]  The Housing Court is "a court of limited jurisdiction with its expertise in the area of housing." *LeBlanc v. Sherwin Williams Co*., 406 Mass. 888, 897 (1990).  Plaintiffs' claims are required to be brought in a court of competent jurisdiction to prevent the expiration of the statute of limitations, which the *Report* improperly finds commences in January 1987, September 1987, or October 5, 2000.  **Report at 20**.

Second, abstention also is not proper because the Individual Defendants are violating well-established federal law and substantive constitutional guarantees subjecting them to personal liability by: i) maintaining and enforcing a construction deadline condition contained in an ordinance *repealed* by the City in September 1987 rendering it moot or unenforceable in 1987 as a matter of law, a Due Process

---

[5]  In addition, the Court improperly states that Plaintiffs concede that when the City deleted Ordinance 846 and changed the district from an Agricultural District to a Rural Residential District, condominiums were not allowed in a Rural Residential District.  *See* **Report at 5**.  This statement is factually and legally inaccurate.  Plaintiffs *never* agreed that condominiums are not allowed.  The Report cites the City's position.  They are allowed in any district. M.G.L. c. 183A.  Even Attorney Martin in his 1994 memo concedes that condominiums are allowed in any district.
[6]  *Coggin v. City of Westfield*, Misc. Case No. 299903 at 1 (Land Court) (Jan. 27, 2006) (denying the City of Westfield's motion to dismiss the Land Court action consolidating the Housing Court ZBA appeal with the Land Court action, finding that the Housing Court lacks jurisdiction over challenges to the validity of an ordinance).

violation; ii) enforcing a repealed deadline against a subsequent purchaser that is not a matter of public record in any document on file at the registry of deeds; iii) seeking to destroy the detached single-family homes and terminate Plaintiffs' condominium property rights that achieved **permanent** protected status upon the commencement of construction by the prior developers in 1988; iv) maintaining an enforcement action that is patently time-barred by the six year statute of limitations which expired in January 1993 pursuant to M.G.L. c. 40A § 7; and v) maintaining an action that has an improper purpose and violates Plaintiffs' Equal Protection rights by pressuring Plaintiffs to abandon their property interests for the benefit of another developer.

"While restraint is warranted when a litigant complains *only* that zoning officials have violated state or municipal law, *Chiplin Enterprises v. City of Lebanon*, 712 F. 2d 1524, 1527 (1st Cir. 1983) … *different considerations* … [are] present where [as here] recognized fundamental constitutional rights are abridged by official action or state regulation.  *Creative Environments, Inc. v. Estabrook*, 680 F.2d 822, 832 n. 9 ( 1st Cir.), *cert. denied*, 459 U.S. 989 (1982); *Simmons v. Dickhaut,* 804 F.2d 182, 185 (1st Cir. 1986) ("It is decisive that the harm complained of is … the .. denial [of] a substantive, constitutional right"); *see also P.L.S. Partners*, 696 F. Supp. at 794 (same).

The critical inquiry, which the *Report* does not address - indeed, the only relevant inquiry is whether the Individual Defendants' *interpretation* of the ordinance conflicts with any of the constitution's substantive guarantees.  *P.L.S. Partners*, 696 F. Supp. at 794.  Here, the Defendants interpretation of the construction deadline conflicts with federal and state constitutional guarantees.  The *Report* fails to address that the City is enforcing a *repealed* condition without reenacting it, and seeks to terminate vested property rights guaranteed under federal and state law.  Recovery against the Defendants will not be addressed by the Housing Court because it refused to join them and may expire if this Court abstains.

### 1.    Due Process Violations and Equal Protection Violations

The Enforcement Action has no jurisdictional basis.  The City *repealed* Ordinance 846 in its entirety in September 1987 rendering the purported construction deadline, which is not expressed in the Special Permit and not a matter of public record in any document, no longer applicable to the Special

Permit and unenforceable.  A change or amendment to a zoning ordinance renders enforcement of the prior ordinance moot, and deprives the court of jurisdiction to hear the City's Enforcement Action. *Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d, 1310 (11th Cir. 2000).[7] The change in the status of the land referenced by *Report* repealed the condition in September 1987 *eliminating* the onerous condition, granting the prior developers more rights, and preventing the City from enforcing it.  After September 1987, the condition no longer exists and cannot as the Individual Defendants contend continue to run for the limited purpose of expiring in 1991.  The *Report* cannot give deference to the City's interpretation of its ordinance when that ordinance no longer exists.  It must acknowledge that the repeal deprives the City of the ability to proceed.  Enforcement of a non-existent condition is a Due Process violation.  An unrecorded and repealed condition cannot apply to Plaintiffs, regardless of the City deeming it still effective.

The Special Permit, however, remained valid but no longer contained the condition.  The City then issued numerous permits in June 1988 in furtherance of the Special Permit without regard to the repealed condition.  The prior developer acted on those permits, recorded a Master Deed, and commenced construction within the two year timeframe of M.G.L. c. 40A § 9 to prevent lapse of the Special Permit and which grants the property permanent vested rights in 1988.  The prior developers did not warehouse or fail to exercise their rights, they actively prevented lapse of the Special Permit by commencing construction within two years and investing over $2.0 million in the property in reliance on the permits starting 15 homes, completing one, installing a private road and underground utilities servicing all homes. Defendants without any jurisdictional basis have proceeded to enforce a *repealed* law to terminate vested rights of bona-fide purchasers in a court that lacks jurisdiction.

Plaintiffs also allege serious Equal Protection violations in that the Enforcement Action was commenced for an improper purpose to pressure Plaintiffs to abandon their property interests for the

---

[7]  *see also Bernstein v. Chief Bldg. Inspector & Bldg. Commr of Falmouth*, 52 Mass. App. Ct. 422, 427 (2001) (a special permit *did not lapse* where the developer complied with requirements of M.G.L. c. 40A § 9 and commenced construction within two years, authority to complete construction continues indefinitely despite an extended pause in construction; further, a construction deadline *must be expressed* in the Special Permit itself to be valid).

benefit of another developer. *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) makes clear that Plaintiffs may bring a "class of one" Equal Protection claim by alleging that the agency has "intentionally treated [him] differently from others similarly situated and that there is no rational basis for the difference in treatment." Plaintiffs have alleged that the Enforcement Action has an improper purpose directed at Mr. Saia because he has made "too many enemies" and the "City wants the project rezoned and developed by a developer other than Frank R. Saia." *Cpl.* ¶¶ 93, 94.[8] The *Report* does not address these serious allegations of improper conduct which did not mature until filing of the *FAC* on January 4, 2002.

### 2.    Plaintiffs Have Permanent Vested Property Rights

The decisions in *Heritage Park, Cohasset Heights* and *McDermott* make clear that a construction deadline is void under state law, and that the property achieved protected status as a legal non-conforming use in 1988 upon the commencement of construction *not* completion.[9] The *Report* fails to address any of this well-established statutory and decisional law binding on this Court which makes clear that the Individual Defendants interpretation of a repealed deadline deprives Plaintiffs of vested rights under state and federal law. In *Heritage Park Dev. Corp. v. Town of Southbridge*, 424 Mass. 71 (1997), the SJC squarely holds that a construction deadline after the grant of final approval as here approval is void because it interferes with vested rights. Chapter 40A affords broad protection to developers and "under our system of law a board *cannot act at the expense of a vested property right created by the legislature*." *Heritage Park*, 424 Mass. at 76. (Emphasis added). *Heritage Park* squarely holds that that the City cannot adopt nor enforce any provision, *including a construction deadline, a performance deadline or automatic rescission*, that modifies or terminates the statutory protections of M.G.L. c. 40A §§ 6 or 9 for vested property rights and protection as a non-conforming use. The City cannot deprive Plaintiffs of the zoning protection the prior developers secured under state law in 1987 upon the issuance of the Special Permit and the permanent vested rights it secured in 1988 when the developers acted on those permits. *Id.*

---

[8]  *see also CHR General, Inc. v. Newton,* 387 Mass. 351, 439 N.E.2d 788 (1982) (City cannot control the form of ownership or the developer).

[9]  Decisions by a state's highest and intermediate courts are controlling, and a federal court is not to disregard them unless it is convinced by other persuasive data. *See West v. American Tel. & Tel. Co.*, 311 U.S. 223, 236-7 (1940).

Where the language of a statue is clear, courts must give effect to its plain and ordinary meaning and the courts need not look beyond the words of the statute itself. *Massachusetts Broken Stone Company v. Town of Weston*, 430 Mass. 637, 640 (2000). The plain language of section 9[10] expressly identifies two *disjunctive conditions* (*i.e.* "substantial use" *or* "*in the case of construction*," where construction has "***begun***") that prevent lapse of the Special Permit *and* grant permanent legal non-conforming use protection. The Legislative intent of statutory zoning freezes, the two year anti-lapse provision, and non-conforming use protection is to protect the investment of owners, developers and subsequent purchasers who rely on validly issued permits from forfeiting that investment once construction has begun. *Heritage Park*, 424 Mass. at 76.

In *Cohasset Heights, LTD v. Zoning Board of Appeals of Cohasset*, 53 Mass. App. Ct. 116 (2001), the Appeals Court held that the *issuance* of special permit and *commencement of construction* under M.G.L. c. 40A § 9 (not completion) marks the beginning of protection as a prior non-conforming use. Property rights vest upon construction and the Special Permit does not lapse. *"Section 9 does not require that construction under a special permit, once commenced, be prosecuted continuously to completion; again, if the Legislature had wished to include such a requirement, it certainly knew how to do so." Bernstein v. Eladio R. Gore*, Misc. Land Ct. No. 242005 (Jan. 12, 1999) (emphasis added). Thus, the construction deadline for the vesting of property rights is *facially invalid* under state law, even if it survived its repeal in September 1987. The City cannot change the time period for the vesting of property rights from the commencement of construction within two years as guaranteed by the Legislature to completion of construction, nor can it deem that such rights evaporated. The construction deadline, *even* if it survived the City's repeal and remained incorporated by reference into the Special Permit (which is doubtful), is void under § 9, *Heritage Park*, *Cohasset Heights* and *Bernstein*. The City's has no authority to enact such a condition under the Home Rule Amendment, which requires that by-laws be consistent with the constitution and general laws of the state. The Individual Defendants have no

---

[10] Section 9 provides that: "a special permit granted under this section **shall lapse [within] two years** … from the grant thereof, **if** a substantial use thereof has not sooner commenced…..**or, in the case of a permit for construction, if construction has not begun** by such date except for good cause." (emphasis added).

authority to enforce such a condition.  Plaintiffs have protected property rights created by state law which are guaranteed under the federal constitution.  *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).

The Appeals Court in *McDermott v. Board of Appeals of Melrose* citing to *Cohasset Heights*, directly addressed the "substantial use" exception in M.G.L. c. 40A § 9 in connection with a special permit and reversed summary judgment for the board of appeals by the trial court, holding that a special permit granted by the town under M.G.L. c. 40A § 9 "*did not lapse*" once there is a substantial use within two years from the issuance of the Special Permit.  *McDermott*, 59 Mass. App. Ct. 457, 461-2 (2003) (*Cohasset Heights* implicitly rejected proposition that a special permit lapses despite use.  It is the use or construction that must commence within two years to prevent lapse).  *McDermott's* analysis is directly analogous to the commencement of construction exception in § 9.

Here, the issuance of the Special Permit in January 1987 and *commencement of construction* in 1988 within two years triggers the anti-lapse provision or *condition* in M.G.L. c. 40A § 9 (as well as the substantial use exception) preventing the Special Permit to construct City View Commons from lapsing as interpreted by the Individual Defendants, and entitling the Plaintiffs as subsequent owners to complete the project as of right.  Once the prior developers satisfied the anti-lapse commencement of construction condition in section 9 in **1988**, the Special Permit cannot lapse and the entire property is exempt from zoning changes.  The prior developers do not then also have to satisfy the City's construction deadline condition, which according to the City requires the *completion of construction* to prevent lapse and to achieve protection as a legal non-conforming use.  Such a condition is void.  The prior developers also do not have to comply with a repealed condition.  The prior developers only have to comply with the clear unambiguous language of M.G.L. c. 40A § 9 to prevent lapse of the Special Permit.

The City's five year *completion* condition is in direct conflict with the Legislative requirement in M.G.L. c. 40A § 9.  The issuance of the Special Permit alone marks the beginning of protection as a prior non-conforming use from subsequent zoning changes.  *Cohasset Heights,* 53 Mass. App. Ct. at 118-119. "Under section 9 it is the *use [or the commencement of construction as here]* that must commence within two years *to prevent lapse*, rather than … *[completion]*. *McDermott*, 59 Mass. App. Ct. at 462 (emphasis

added).  Like *McDermott*, the prior developers here *commenced construction* "in conformance with the special permit and thereby *satisfied the requirements of section 9.*"  *Id.* at 462 *citing Bernstein*, 52 Mass. App. Ct. at 427 (emphasis added).  If construction is *commenced*, the requirements of section 9 are satisfied to prevent the Special Permit from lapsing.  *Id.*  Thus, the Individual Defendants' interpretation that the deadline is valid and requires completion to prevent lapse is without legal merit.[11]

Third, the construction deadline is an illegal condition even if it survived the repeal because it functions to prohibit the development which the City previously authorized.  *See V.S.H. Realty, Inc. v. Zoning Board of Appeals of Plymouth*, 30 Mass. App. Ct. 530, 533-4 (1991) (finding that special permit conditions *that function to prohibit the use under the guise of regulation*, *or are beyond the developer's control*, as here (a dramatic economic downturn in the real estate market), are arbitrary and unreasonable, and therefore illegal) *citing SCIT, Inc. v. Planning Bd. of Braintree*, 19 Mass. App. Ct. 101, 110 n. 16 (1984); *Castle Hill Apartments Limited Partnership v. Planning Board of Holyoke*, 65 Mass. App. Ct. 840, 847 (2006) (affirming summary judgment for the developer where the local planning board in approving a project exceeded its authority by imposing a condition requiring that landowner completely redesign the interior and exterior of each multifamily building to add multiple entrances; where the *board failed to produce any evidence or articulate any reason for the condition in its decision approving the project* that the health, safety, convenience, or general welfare of the city, or the surrounding neighbors would be improved thereby; and *where the proposed condition would profoundly impact the density of the project*).

Like *V.S.H. Realty* and *Castle Hill*, the impact of a construction deadline is dramatic.  The application of the repealed deadline: a) retroactively eliminates the project and *strips the project of protected status authorized by the City as if it never existed* requiring subsequent owners to tear down

---

[11]  *See also AWL Power Inc. v. City of Rochester*, 813 A.2d 517, 523 (N.H. 2002) (Addressing virtually the identical situation here, including the economic downturn in late 1980's that delayed completion of the project and rezoning of the project, finding a developer's proposed condominium development and many of the proposed single-family houses achieved permanent protection as legal non-conforming uses "[b]ecause the developer [like the prior developers here] met all the conditions of the common law for *substantial construction* [M.G.L. c. 40A § 9 only requires *commencement*, but clearly there was also a substantial investment of over $2.0 million] *we hold* that its ***right to complete the entire housing plan*** approved on August 31, 1987, ***permanently vested***.") (emphasis added).

single-family homes which lie in a single-family district, does not account for economic situations beyond the developers' control making the deadline arbitrary and capricious; and b) "goes far beyond the conditions modifying lighting, adding fencing, and requiring drainage plans previously upheld as reasonable." *See Castle Hill*, 65 Mass. App. Ct. at 847; *Y.D. Dugout, Inc. v. Bd. of App. of Canton*, 357 Mass. 25, 31, n7 (1970). The City has never articulated any reason related to health, safety or welfare that the deadline serves.

Fourth, under federal law, where the regulation, like the City's interpretation of the construction deadline here, amounts to a permanent physical occupation *or confiscation of property **previously authorized***, there is a categorical taking in violation of federal law. *Steinbergh v. City of Cambridge*, 413 Mass. 736, 741 (1992) *citing Wheeler v. City of Pleasant Grove*, 664 F.2d 99, 100 (5th Cir. 1981), *cert. denied*, 456 U.S. 973 (1982) (an ordinance that confiscated landowner's right to construct *previously authorized* apartment complex *is an unconstitutional categorical taking* for which the city must compensate, and that such an ordinance is also clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare); *Wheeler v. City of Pleasant Grove,* 896 F.2d 1347, 1351 (11th Cir. 1990) (same).[12]

Like *Wheeler* and *Acorn Ponds*, the City authorized this project. The prior developers received a valid Special Permit, Building Permits and a Certificate of Occupancy from the City to construct the project. *Cpl* ¶27, 55-6, 62-3. The prior developers acted on these permits, invested over $2.0 million in the project and commenced construction. A downturn in the economy prevented the project from being completed. Protected status and permanently vested rights under the Constitution cannot be stripped by a construction deadline that was repealed and waived by the City in 1987, and in conflict with the vesting provisions of M.G.L. c. 40A § 9. Plaintiffs have permanently protected legal non-conforming status under state and federal law as of 1988. Like *Wheeler* and *Acorn Ponds*, which sought to revoke permits

---

[12] *See also Acorn Ponds at North Hills v. Inc. Vill. Of North Hills*, 623 F. Supp. 688, 692 (E.D.N.Y. 1985) (finding that the issuance of numerous building permits to construct a condominium complex and that some of its buildings were completed and others were substantially started in accordance with the permits issued by the Village created a property right protected by the Constitution); *Maher v. City of New Orleans*, 516 F.2d 1051, 1065, *reh. denied*, 521 F.2d 815 (5th Cir.1975), *cert. denied*, 426 U.S. 905 (1976) (if a regulation is confiscatory in nature, it is a taking).

previously authorized and acted on, the Individual Defendants here are resurrecting a *repealed* condition

to terminate Plaintiffs' vested property rights. Such conduct is evidence of fundamental procedural

irregularities that violate Due Process because there is no ordinance or deadline to enforce. Revoking that

which was permitted and acted on, violates the Fifth Amendment because it results in the confiscation of

all Plaintiffs' condominium property rights.

The prior developers also recorded a Master Deed and Condominium Trust subjecting the

property to the provisions of M.G.L. c. 183A which expressly preclude the City from eliminating the

condominium or requiring compliance with subdivision control law. Chapter 183A §§ 5(c) and 15, are

free of ambiguity - only the owners can eliminate the condominium, and a condominium is not subject to

subdivision control law.[13] The City simply does not have to power to control the form of ownership,

compel the dissolution of the Condominium Trust or require that the condominium comply with

subdivision control law. M.G.L. c. 183A §§ 5(c), 15; *CHR General, Inc. v. Newton,* 387 Mass. 351, 439

N.E.2d 788 (1982) (finding that zoning deals basically with use, *without regard to ownership*, and that

neither the condominium form of ownership or the one who is the operator of that use are in the city's

power to regulate.

### B.    The Rulings Concerning the Statute of Limitations and Res Judicata are Flawed

The *Report*'s recommendation concerning i) Plaintiffs' ability to assert their claims, ii) when the

statute of limitations on Plaintiffs' section 1983 claims commences, and iii) *res judicata* are factually and

legally inaccurate and should be stricken as clearly erroneous. First, with respect to Plaintiffs' ability to

assert constitutional claims or challenge the City's Enforcement Action not filed until January 4, 2002,

neither *Gove v. Zoning Board of Appeals of Chatham*, 444 Mass. 754 (2005) nor *Lingle v. Chevron

U.S.A., Inc*, 544 U.S. 528 (2005) apply. **Report** **21-2.** *Gove* is factually distinguishable. This action is

not the traditional regulatory taking set forth in *Gove* where the owner *without being issued any permits*

---

[13] Chapter 183A § 5(c) states: "The common areas and facilities shall remain undivided and no unit owner or *any other person* shall bring any action for partition or division of any part thereof … . *Any covenant or provision to the contrary shall be null and void*." (Emphasis added). Chapter 183A § 15 states: "The subdivision control law *shall not apply* to the division of a building [development] into units."

becomes subject to more restrictive zoning limiting the development of their land, and then claims a regulatory taking for the diminished value because they *intended* to develop their property under the old ordinance.   Unlike *Gove*, the City here issued valid permits that were acted on by the prior developers preventing the Special Permit from lapsing under the clear language of M.G.L. c. 40A § 9 *and* granting the property permanent vested rights – rights that the City or the Individual Defendants cannot abrogate as a matter of well-established law.   Nor can the City deem that such property rights evaporated.   Such a conclusion is in direct conflict with Massachusetts law, and traditional common law vesting principles, that property rights vest upon reliance on validly issued permits.   Plaintiffs' have legitimate property interests under state law.   Moreover, the character of City's action is not limited; rather, it destroys the property interests resulting in a **total** taking or confiscation of all the condominium property rights previously authorized by the City, which have significant market value.   *Gove,* 444 Mass at 765-66.

The *Report* fails to acknowledge that the property achieved protected status as a legal non-conforming use in 1988 and since then has permanently vested rights under state and federal law that cannot be invaded or abrogated by the City or the Individual Defendants.   The City has no legitimate interest in issuing valid permits in 1987 and 1988, inducing reliance on those permits, having the developers enter into irrevocable financial commitments for construction, and having banks mortgage those condominium interests only to have those property interests confiscated by the operation of a repealed construction deadline.   Plaintiffs have an absolute right to assert that the property achieved protected status under state law, and to challenge the City's attempt to enforce a *repealed* ordinance that, even if valid, is an "as applied" taking of Plaintiffs' previously authorized use of the property in violation of the Constitution.   *Gove,* 444 Mass at 765-66.

Second, the three year statute of limitations for all other condominium property interests other than Unit 18 commences on January 2, 2002, the date the ZBA upheld the denial of the application for building permits.   Here, the *Report* improperly combines the separate and distinct condominium property interests created pursuant to M.G.L. c. 183A in its analysis of both the statute of limitations and *res judicata*.   **Report at 22.**   The filing of a Master Deed, however, pursuant to M.G.L. c. 183A divides

interests formerly held by one entity, the prior developers, in fee simple into separate and distinct real

estate interests.  *Aldrich v. Add, Inc.,* 437 Mass. 213 (2002) *citing Bernstein v. Chief Bldg. Inspector &*

*Bldg. Comm'r of Falmouth*, 52 Mass. App. Ct. 422, 427 (2001) ("Our decisions have recognized

*condominium units* and *common areas* to be *adjacent* parcels of land."); M.G.L. c. 183A.  While "zoning

decisions are likely to have some similar impact on a condominium's common arrears, *this does not*

*preclude unit owners from protecting their own interests*."  *Bernstein*, 52, Mass. App. Ct. at 427

(emphasis added).  The Master Deed defines City View Commons, Inc. (CVCI is the prior developer,

owner and managing agent) and the units as separate entities.  The City View Commons Condominium

Trust is a separate entity under M.G.L. c. 183A responsible for the common areas, including litigation.  It

is a necessary party in any litigation concerning the common land and may only act on behalf of all unit

owners.  *Golub v. Milpo*, Inc. 402 Mass. 397 (1988); M.G.L. c. 183A § 10(b)(4).  The *Report*

misunderstands the separate and distinct real estate interests, including the trust and all the unit owners, as

one entity and in privity.

The *Report* misapplies the *Gilbert* test citing *only* to the general standard that the three year

statute of limitations begins to run "upon the invasion of the plaintiff's interests," and offers a series of

dates as to why Plaintiffs § 1983 claims are time-barred.  *See, e.g., **Report** **at 20** (stating that the three

year statute of limitations has long since expired and commences either in January 20, 1987, September

1987, October 29, 1999, and October 5, 2000).  None of these dates commences the statute of limitations.

*Gilbert* and the other cases cited in Plaintiffs' opening brief make clear that the three-year statute of

limitations for brining tort actions under § 1983 commences on the denial of Plaintiffs' permit request

(January 2, 2002 in this case) and expires on the "*third anniversary of the denial of their permit*

*application*," which is January 2, 2002.  *Gilbert v. City of Cambridge*, 932 F.2d 51, 57 (1st Cir. 1991)

(emphasis added).  Plaintiffs applied for building permits to complete construction on November 8, 2001

for all the distinct and separate property interests.  Cpl. ¶54.  On November 14, 2001, York informed

Plaintiffs that he denied the application.  Plaintiffs appealed the denial, and the ZBA issued its decision on

January 2, 2002 upholding the denial of permits for all homes other than Unit 18; thereby, exhausting

their administrative remedies – requirement for any adjudication of those interests. *See* Plaintiffs opening

brief. Under *Gilbert*, the three year statue of limitations, commenced on January 2, 2002, making the

complaint filed August 4, 2004 timely. None of the other dates referenced in the report are relevant.

Plaintiffs' knowledge of the City Solicitor's 1994 memorandum that the City "deemed" that the

construction rights of the prior owners had evaporated is irrelevant to when the statute of limitations for §

1983 claims commences, *res judicata*, or for any other issue in this case. **Report at 22**. *Gilbert* is clear.

The statute of limitations expires only after permits were sought and denied. Unit 18's constitutional

claims may have expired against the City, but the other owners and the claims by the Condominium Trust

certainly have not. They had to seek and be denied permits a necessary requirement to exhaust

administrative remedies. The SJC has also made clear that the **opinion** of the City solicitor in 1994,

wherein it deems the *repealed* condition still enforceable and that the property rights had evaporated, is

not the status of the law. *Building Inspector of Malden v. Werlin Realty, Inc.*, 349 Mass. 623 (1965). The

statutory framework and the case law cited above are the status of the law not his opinion. His opinion,

which does not cite a single case, cannot be reconciled with the above statutory and decisional law

resulting in fundamental Due Process and Fifth Amendment violations.[14]

Next, the prior developers did nothing wrong. The Plaintiffs have done nothing wrong. They are

bonafide purchasers. Even if the construction deadline is initially valid (a doubtful contention in light of

the above statutory and decisional law) and survived its repeal (also doubtful), the construction deadline

has no effect "as applied" to Plaintiffs because it is unrecorded. A purchaser is entitled to rely on the

public records and that any restriction on the use or a condition that runs with the property must be

recorded in the Hampden County Registry of Deeds. *M. Dematteo Construction Co. v. Bd. of Appeals of

Hingham*, 3 Mass. App. Ct. 446 (1975). This is true even where the landowner knows that the planning

board had approved the plan based on those conditions, but the town failed to record the conditions. *Id.* at

---

[14]  The Housing Court order on summary judgment cited in the *Report* also cannot be reconciled with the above
statutory and decisional law. Even prior opinions by Judge Abraskin cannot be reconciled with the Housing Court's
order. *See Szyluk v. City of Chicopee Board of Appeals*, Misc. Case No. 89-LE-3476-C, at 4 (Housing Court) (1989)
(finding that a special permit acted on within two years where construction has begun does not lapse).

459 *citing Pembroke v. R&P Realty Corp.*, 348 Mass. 120 (1964).  Thus, the opinion of the City Solicitor is again irrelevant.  The *Report* fails to address this well-established law.

Third, the report recognizes that "certain factual matters need to be clarified," yet it proceeds to make various recommendations that are inconsistent with the facts and law.  **Report at 24.**  The *Report* states that Saia and the Plan's ownership of Unit 18, along with its 4% interest in the common areas but without control of the trust, could have raised the same constitutional claims in the 1994 action.  **Report at 24-5**.  It also claims that Saia is in no different position than he was in 1994, and that the Plan and the Condominium Trust, and Limited Dividend "are obviously in privity."  **Report at 25.**  That statement is simply wrong.  It concludes that the 1994 stipulation of dismissal, which involved *only* Unit 18 and *did not* join the City (a necessary party for a takings claims) or the Individual Defendants, bars *all* claims by other unit owners, the Condominium Trust, the Plan, and Limited Dividend.  This analysis is fatally flawed and should be stricken.

As with the statute of limitations, the *Report* improperly combines the separate and distinct condominium property interests created pursuant to M.G.L. c. 183A, including the Condominium Trust.  Res judicata requires i) the identity or privity of the parties to the present and prior action, ii) identity of the cause of action, and iii) prior final judgment on the merits.  *Petrillo*, 65 Mass. App. Ct. 453, 457 (2006).  Similarly, issue preclusion prevents relitigation of an issue determined in an earlier action where the same issue arises in a later action based on a different claim, between the same parties or their privies. *Id.*  The issue in the prior adjudication must be identical and the party must be identical.  The Individual Defendants have the burden of establishing the elements of either claim or issue preclusion.  *Id.* at 458.  They have failed to meet that burden.

First, the *Report* disregards the separate and distinct property interests.  *Aldrich, Bernstein, Golub* and M.G.L. c. 183A make clear that each of the unit owners and the Condominium Trust are distinct and separate parties, with different property interests.  The Condominium Trust is a also necessary party that must be joined to adjudicate the rights of the common land.  *Golub, supra.*  Furthermore, the unit owners are separate parties with respect to their ownership interests.  They have property interests that are

*adjacent*, not identical to each other.  They too must be joined in any action and have the right to protect their interests.  *Bernstein*, 52, Mass. App. Ct. at 427.  Second, it mischaracterizes the "causes of action" in the 1994 action and the parties to that action.  The 1994 action involved only Unit 18 and involved only the appeal of a denial of building permits pursuant to M.G.L. c. 40A § 17.  None of the other owners or the Condominium Trust that have an interest in the condominium had exhausted their administrative remedies or were joined in that action.  The Condominium Trust at that time was controlled by CVCI, the defunct prior developer, and could not be joined by Saia.  Other developers, including SBH and Dane Builders, had interests in the property that could not be joined.  M.G.L. c. 183A which divides the property interests does not support the suggestion in the *Report* that in 1994, the stipulation of dismissal applied to i) CVCI the prior developer, ii) SBH or other developers that had interests in the condominium; or iii) the Condominium Trust which must be a party for any binding effect on the common land.

The subsequent acquisition of these separate property interests in the condominium to gain control of the trust to complete construction (based on an agreement between Saia and the City), does not make those interests, which could not have been joined and were not parties to the prior judgment, *now* subject to the stipulation of dismissal applicable to Unit 18 only.  This analysis turns the concept of privity backwards.  Privity refers to mutual or successive relationship to the *same property rights*, as in grantor to grantee.  If the Plan had transferred its interest in Unit 18 to another entity, then that entity would be in privity with the Plan and subject to the stipulation of dismissal.  The Plan, however, acquired *different property interests* that were *not* subject to the 1994 action, and not in the Plan's control at the time of the 1994 action.  It is axiomatic that a judgment against one party who has an interest in land is ineffective against all other parties with an interest in the same land unless they were joined.  For preclusive effect to flow from the prior action, Saia had to be in privity with the prior owners, the Condominium Trust or exercise control over them **at the time** of the 1994 action.  *Raymond Bourque v. Cape Southport Associates, Inc.*, 60 Mass. App. Ct. 271, 274-5 (2004) *citing Gonzalez v. Banco Central Corp.*, 27 F.3d 751 (1st Cir. 1994).  In 1994, Saia exercised no control over the Condominium Trust, the common land or any of the other owners of the condominium property interests.  He simply owned Unit

18.  The preclusion argument fails because the *property interests* are not identical, and the Plan could not represent those interests in 1994.  *Id.* at 274-5.[15]

Third, the 1994 action did not involve the City or any constitutional claims.  The 1994 action *did not* name the City, only the zoning board was a party to this appeal of the denial of building permits for *only* Unit 18.  The City is a required party for any § 1983 claim, which must be joined but was not to assert invalidity and taking claims.  *Meuse v. Town of Reading*, Misc. Case No. 227190, ¶17 Land Court (July 23, 1997) (specifically addressing the issue of *res judicata* finding that a zoning board appeal – like the 1994 action -where the town could have been joined as a defendant but was not joined has no preclusive effect on claims later asserted against the town for invalidity or constitutional violations).  The validity of a by-law or a taking involves the *City* as distinguished from the ZBA.  *Id.* at ¶ 17.  Further, there is no requirement to join the City in the 1994 action which is solely a ZBA appeal for unit 18.  *Id.* Because, the City is a required party for the constitutional claims and was not joined in the 1994 action, the stipulation of dismissal has no preclusive effect on the current claims against Individual Defendants, or for that matter the counterclaims against the City in the Housing Court.  The claim preclusion argument also fails because the Individual Defendants cannot establish that that the causes of action are identical to the present action.  *Petrillo*, 65 Mass. App. Ct. at 458 (discussing differences between causes of action concerning denial of permits, non-conforming use protection, declaratory relief, and validity of ordinances).[16]

If the stipulation has any preclusive effect, it is against Unit 18.[17]  The statute of limitations also may have expired with respect Unit 18's ability to seek compensation under 42 U.S.C. § 1983.  That does

---

[15]  On or about August, 26, 1996 based upon the agreement with the City in connection with the 1994 action to gain control of the condominium trust, the Plan received an assignment of the development rights from the shareholders of CVCI and as such the Plan stands in the shoes of the former developer responsible for completing the project. Cpl at ¶ 89.  The *Report* overlooks this allegation.  In addition to the development rights, the Plan acquired 5 Units that were retained by CVCI and not conveyed to developer in 1988 (Lots 1, 21, 22, 23, 24, and 25) by deed dated September 3, 1996.

[16]  *Meuse v. Town of Reading*, Misc. Case No. 227190, ¶17 Land Court (July 23, 1997) (same discussing differences in causes of action between appealing the denial of building permits pursuant to M.G.L. c. 40A § 17, and determining the validity of an ordinance, which involve different parties, the City is not the ZBA).

[17]  Plaintiffs intend to move to vacate that prior judgment.

not mean that the other property interests at City View Commons, had exhausted their rights or that their

constitutional were adjudicated in the prior action. They were not. The other property interests did not

exhaust their administrative remedies until January 2, 2002. The City did not commence its enforcement

action to terminate the condominium and all property interests until January 4, 2002. And Plaintiffs did

not learn of the improper motives of the Enforcement Action until sometime in 2002 and again in 2004,

taking timely action against the Individual Defendants.

## CONCLUSION

For the reasons set forth above, this court should not abstain. Alternatively, if the court abstains it

should remove the factual and legal errors contained in the *Report* concerning: i) Plaintiffs' counterclaim

which was has been repled and that Plaintiffs conceded that condominiums are not allowed – they are

allowed in any district; ii) Plaintiffs ability to assert their claims (*i.e.*, *Gove* does not apply); iii) the

timeframe for commencement of the statute of limitations; and iv) its discussion of res judicata.

Dated: September 25, 2006      Attorney for Saia Defendants

                By: /ss/ *Stephen V. Saia*
                Stephen V. Saia, BBO No. 562009
                Law Offices of Stephen V. Saia
                70 Old Cart Path Lane
                Pembroke, MA 02359
                (781) 826-8401

## RULE 7.1(D)
## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(D), Plaintiffs request oral argument on findings in the Report and
Recommendations. Oral argument will assist this Court in deciding the issues raised and clarify the
factual and procedural background concerning this action.

## CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2006, I delivered a copy of the above document to:

Nancy Frankel Pelletier, Esq.      Electronic Notification
Robinson Donovan, P.C.
1500 Main Street, Suite 1600
P.O. Box 15609
Springfield, MA 01105

Dated: September 25, 2006                    By: /ss/ *Stephen V. Saia*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS
## WESTERN DIVISION

| | |
|---|---|
| FRANK R. SAIA, individually and as Administrator of the FRANK R. SAIA DEFINED BENEFIT PENSION PLAN, LIMITED DIVIDEND CORPORATION OF WESTFIELD, and CITY VIEW COMMONS CONDOMINIUM TRUST,<br><br>        Plaintiffs,<br><br>v.<br><br>CITY OF WESTFIELD, ZONING BOARD MEMBERS (John and Jane Does #1-10), CITY COUNCIL MEMBERS (John and Jane Does #1-10), CHARLES KELLOGG, (former Inspector of Buildings of the City), DONALD C. YORK (Superintendent of Buildings), JAMES BOARDMAN (Community Development Director), DAN REARDON (Director of Public Health), PAUL J. CASEY (Assistant City Solicitor), and PETER A. MARTIN (Assistant City Solicitor), all Defendants named individually and in their official capacity,<br><br>        Defendants. | Civil Action No. 04-30143-MAP |

## AFFIDAVIT of
## Attorney Stephen V. Saia

| | |
|---|---|
| STATE OF MASSACHUSETTS | ) |
| | )ss. |
| COUNTY OF PLYMOUTH | ) |

      I, Stephen V. Saia, counsel to Plaintiffs depose and say under penalty of perjury under the laws of

the Commonwealth of Massachusetts that the Exhibits attached hereto are true and accurate copies of the

documents and filed herewith in support of *Plaintiffs' Objection to the Report and Recommendation.*

Dated: September 25, 2006            By: */ss/ Stephen V. Saia*